**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

MICHAEL DIAZ,

                    Plaintiff,

      -against-

PORTFOLIO RECOVERY ASSOCIATES, LLC

AND

MALEN & ASSOCIATES, PC

               Defendants.

-----------------------------------------------------------------

**INDEX No.:10-CV-3920**
**(ERK)(CLP)**

**Hon. Edward Korman**
**Hon. Cheryl Pollack**

 

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MALEN &**
**ASSOCIATES, PC's MOTION TO DISMISS**

 

BY: SCHLANGER & SCHLANGER, LLP

/s/Daniel A. Schlanger, Esq
Daniel A. Schlanger, Esq. (ds-9330)
Schlanger & Schlanger, LLP
Attorneys for Plaintiff
1025 Westchester Avenue, Suite 108
White Plains, New York 10604

## Table of Contents

I.      PRELIMINARY STATEMENT ............................................................................ 1

II.     FACTS AND PROCEDURAL POSTURE .................................................... 2

III.    ARGUMENT ........................................................................................ 5

1.      The FDCPA's Requirement That A Collection Action Be Brought In The Judicial District Where The Consumer Signed The Contract Or Resides Does Not Provide License To File Time-Barred Lawsuits ........................................................................................ 5

2.      *King* Did Not Overturn Any Prior Precedent ............................................ 6

3.      Plaintiff Is Not Proposing The Retroactive Application Of A New Rule ............................. 11

4.      CPLR § 202 Applies In Cases Where The Plaintiff Could Not Have Obtained Jurisdiction Over The Defendant In Plaintiff's Home State ............................................. 12

5.      Malen's Infinite Tolling Argument ............................................................ 13

6.      Plaintiff's *Miller* Claim Is Independent Of Plaintiff's *Kimber* Claim ................. 16

7.      Plaintiff Has Adequately Plead A Violation of NYGBL § 349 ............................... 19

8.      Plaintiff Has Adequately Plead A Violation Of Judiciary Law §487 ....................... 20

        CONCLUSION ........................................................................................ 21

CASES

American Trucking Associations, Inc. v. Smith, 110 S. Ct. 2323, 2331 (1990) ......................... 11

Americorp. Securities, Inc. v. Sager, 239 A.D.2d 115 (1st Dept. 1993) ...................................... 13

Antone v. General Motors Corp., Buick Motor Div., 64 N.Y.2d 20, 27 (1984)................. 6, 9, 10

Avery v. First Resolution Management Corp., 568 F.3d 1018 (9th Cir. 2009) ............................ 15

Baptist v. Global Holding and Inv. Co., L.L.C., 2007 WL 1989450 (E.D.N.Y. 2007) ................. 3

Bolduc v. Richards, 101 N.H. 303, 142 A.2d 156 (1958) ........................................................... 14

Chevron Oil Co. v. Huson, 404 U.S. 97 (1971) .......................................................................... 11

Cohen v. JP Morgan Chase & Co, 498 F.3d 111 (2nd Cir. 2007) ............................................... 19

Gaisser v. Portfolio Recovery Associates, 571 F. Supp.2d 1273 (S.D. Fla. 2008)................. 13, 14

Garr v. U.S. Healthcare, Inc., 22 F.3d 1274, 1280 (3d Cir.1994)............................................... 17

Global Fin. Corp., v. Triarc Corp., 93 N.Y.2d 525, 528,693 N.Y.S.2d 479,480 (1999) .............. 10

GML, Inc. v. Cinque & Cinque, P.C., 9 N.Y.3d 949, 950 (2007)........................................ 7, 8, 12

Goins v. JBC & Associates, P.C., 352 F.Supp.2d 262 (D.Conn. 2005) ........................................ 3

Gurnee v. Aetna Life and Cas. Co., 55 N.Y. 2d 184, 192)(1982) ............................................... 11

Harrington v. CACV of Colo., LLC (D.Mass.2007) 508 F.Supp.2d 128, 133............................ 15

Hurwitch v. Adams, 52 Del. 247, 252, 155 A.2d 591, 594 (1959).................................... 7, 14, 15

In re Taihem F., 222 A.D.2d 322 (1st Dept. 1995)...................................................................... 12

Insurance Co. of N. Am. v. ABB Power Generation, 91 N.Y.2d 180, 187-188 (1997) ........... 8, 12

International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc. 36 N.Y.2d 121, 126 (1975) ................. 12

Kimber v. Federal Financial Corporation, 668 F.Supp. 1480 (M.D.Ala. 1987)............................ 3

McCorriston v. L.W.T., Inc., 536 F.Supp.2d 1268, 1276 (M.D.Fla.2008)................................... 14

Miller v. Upton, Cohen & Slamowitz, 687 F. Supp.2d 86 (E.D.N.Y. 2009)........................... 3, 17

Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2nd Cir. 2003) ................................... 3, 17

People v. Favor, 82 N.Y.2d 254 (1993)................................................................................. 11, 13

Phifer v. Home Savers Consulting Corp., 2007 WL 295605, at *5 (E.D.N.Y. 2007)................. 20

Portfolio Recovery Associates v. King, 14 N.Y.3d 410 (2010) ........................................... Passim

Portfolio Recovery Associates, LLC v. Diaz, Index No: 124815-cv-09 ........................................ 2

Ramirez v. Mansions Catering, Inc., 74 A.D. 3d 490 (1st Dept. 2010) ...................................... 13

Resurgence Financial, LLC v. Chambers, 92 Cal. Rptr. 3d 844 (Cal. App. Super. 2009) . 5, 14, 16

Spicer v. Pier Sixty LLC, 269 F.R.D. 321 (SDNY 2010)........................................................... 11

Sykes v. Mel Harris and Associates, LLC, F.Supp.2d, 2010 WL 5395711 (S.D.N.Y. 2010)...... 20

TPZ Corp. v. Dabbs, 25 A.D.3d 787,808 N.Y.S.2d 746,749 (2d Dep't 2006) .......................... 10

Verizon Directories Corp. v. Continuum Health Partner, Inc., 2009 N.Y.Slip.Op. 30907 (2009). 9

Williams v. Congregation Yetev Lev, 2004 WL 2924490, *7, 2004 U.S. Dist (S.D.N.Y. 2004).. 7

STATUTES

15 USC §1692i..................................................................................................................... 5

CPLR §202......................................................................................................................Passim

Delaware Code Annotated, title 10, §8117...................................................................... 7, 16

Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ..................................Passim

Judiciary Law §487............................................................................................... 1, 3, 21

N.H. Rev. Stat. § 508:9 .................................................................................................. 13, 15

New York General Business Law §349.................................................................. 1, 3, 19, 20, 21

**RULES**

FRCP R. 15(a)(1)(A) .................................................................................................... 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------

MICHAEL DIAZ,

                     Plaintiff,

        -against-

PORTFOLIO RECOVERY ASSOCIATES, LLC

AND

MALEN & ASSOCIATES, PC

                    Defendants.

------------------------------------------------------------------

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MALEN & ASSOCIATES, PC's MOTION TO DISMISS**

**INDEX NUMBER: 10-CV-3920 (ERK)(CLP)**

Michael Diaz, Plaintiff in this action, by and through his counsel, Schlanger & Schlanger, LLP, respectfully submits this Memorandum of Law in Opposition of Defendant's Motion to Dismiss. For the reasons set forth below, Plaintiff respectfully submits that Defendant's Motion is without merit and should be denied in its entirety.

## I.      PRELIMINARY STATEMENT

Plaintiff asserts claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*; New York General Business Law §349, and Judiciary Law §487. The core of Mr. Diaz's claims is that Defendants Portfolio Recovery Associates, LLC ("PRA") and Malen & Associates, PC ("Malen") filed a consumer collection action against him in New York Civil Court (Kings County), that was time-barred pursuant to New York's borrowing statute, CPLR §202; and also that Defendant Malen & Associates falsely represented that its attorneys had meaningfully reviewed the pleadings in that lawsuit when they had not. Mr. Diaz alleges that these actions were willful and are part of Defendants' business model of routinely and intentionally filing large numbers of time-barred claims and claims that no attorney has meaningfully reviewed in New York's state courts, secure in the knowledge that the vast and overwhelming majority of the tens of thousands of consumers that Defendants' sue in New York will lose by default or, in the

1

rare instances where the defendant appears, will appear *pro se* and lack the knowledge and resources to challenge Defendants' deceptive and unfair practices.

Malen now seeks dismissal, primarily on grounds that Defendants' state claims against Mr. Diaz were purportedly timely because they were brought prior to the Court of Appeals' decision in <u>Portfolio Recovery Associates v. King</u>, 14 N.Y.3d 410 (2010). According to Malen (which represented PRA in <u>King</u> and represented PRA in the underlying state court action in the case at bar), <u>King</u> overturned the "accepted rule" that debt collectors were exempt from CPLR §202 (*Defendant's Memorandum* at p. 5) and that CPLR §202 "only applied...[pre-<u>King</u>] to commercial transactions wherein it was alleged that there was a breach of contract and the contract contained a choice of law provision". *Defendant's Memorandum* at 4, Fn.1.

In fact, as the discussion in <u>King</u> makes clear, the Court of Appeals did not overturn or upset any precedent.  Neither the text nor the Court's interpretation of CPLR §202 has undergone any significant change since long before Defendant filed its flatly time-barred claim. Defendant's Motion should be dismissed in its entirety.

## II.  FACTS AND PROCEDURAL POSTURE

On November 27, 2009, Defendant PRA, represented by Malen, filed a Summons and Complaint against Diaz in Kings County Civil Court, titled <u>Portfolio Recovery Associates, LLC v. Diaz</u>, Index No: 124815-cv-09 (hereinafter, "the State Action").  The State Action sought recovery of a purported debt on a Providian credit card account for $5394.42, including statutory pre-judgment interest.  PRA, by and through its attorneys, Malen, asserted that this account had been assigned to PRA, that default had occurred, and statutory interest of 9% had begun accruing "from 12/30/05". State Action Complaint (attached hereto as Exhibit 1) at ¶4.

Mr. Diaz put in a *pro se* Answer timely, and then retained the undersigned.  On June 10, 2010, by and through counsel, Mr. Diaz filed an amended Answer and Motion to Dismiss alleging, *inter alia*, failure to properly serve Mr. Diaz; that Mr. Diaz did not owe PRA any

2

money; and that pursuant to CPLR §202, the action was, on its face, time barred.

On June 17, 2010, PRA dismissed its claims against Mr. Diaz with prejudice by stipulation.

On August 25, 2010, Plaintiff filed the instant action, alleging violations of the FDCPA, NYGBL §349 and Judiciary Law §487, *inter alia*, on grounds that Defendants had filed a time barred claim against him (the "*Kimber* claim"[1]); that Defendants had filed a state court complaint against him that was misleading in that it was signed by an attorney but had not been meaningfully reviewed by an attorney (the "*Miller* Claim"[2]); had misstated the amount, character and/or legal status of the purported debt; had filed a lawsuit when it "knew or should have known that there was no factual basis for its action"; and that Defendants had misreported information regarding Plaintiff's account to the credit bureaus.[3] Amended Complaint Submitted as a Matter of Course Pursuant to FRCP R. 15(a)(1)(A), at ¶¶42(a) through (d) (hereinafter "Amended Complaint").

With regard to the fact that the State Action against Mr. Diaz was time-barred, and had not been meaningfully reviewed by any attorney prior to filing, the Complaint herein alleged in significant detail, that these violations, far from isolated instances, were part of a larger, willful policy and practice by Defendants of filing massive numbers of such pleadings in New York's civil courts. Plaintiff's Amended Complaint states, *inter alia*:

> ■ Upon information and belief, PRA and Malen's filing of time-barred debt in the State Action against Diaz, far from being an isolated instance, is part of a policy and practice pursuant to which Defendants intentionally file time-barred claims knowing that the vast majority of claims filed will result in default judgments or will be contested by unsophisticated pro-se consumers who are unaware of CPLR § 202 and its impact upon the statute of limitations. (¶22)

---

[1] See Kimber v. Federal Financial Corporation, 668 F.Supp. 1480 (M.D.Ala. 1987) and progeny, see e.g. Goins v. JBC & Associates, P.C., 352 F.Supp.2d 262 (D.Conn. 2005); Baptist v. Global Holding and Inv. Co., L.L.C., (E.D.N.Y. 2007).
[2] See Miller v. Upton, Cohen & Slamowitz, 687 F. Supp.2d 86 (E.D.N.Y. 2009)("Miller III") following remand from Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2nd Cir. 2003)(J. Sotomayor)("Miller I"). See discussion, *infra*, at p.16-19.
[3] This credit-reporting related claim is hereby withdrawn in light of the settlement Plaintiff has reached with PRA, which handled the credit reporting on Plaintiff's account.

- All pleadings in the state action were signed by Jeffrey Wolstein, Esq. of Malen. (¶23)

- Upon information and belief, this action was one of approximately 10,904 consumer collection actions filed by Malen in 2009 in the New York City's Civil Courts. (¶24)

- Mr. Wolstein's name is one of only three Malen attorneys listed on the signature block of the Complaint. (¶25)

- Upon information and belief, Mr. Wolstein signed thousands of Complaints filed in the New York City Civil Courts in 2009. Indeed, upon information and belief, Mr. Wolstein signed significantly more than 1/3 of the approximately 10,904 Complaints filed in New York City's Civil Courts by Malen in 2009. (¶26)

- In addition to its prodigious filings in the New York City Civil Courts, Malen filed at least approximately 2000 additional Complaints in other Civil Courts (and their analogs) throughout New York State. (¶27)

- Upon information and belief, Mr. Wolstein signed significantly more than 1/3 of these approximately 2,000 or more Complaints filed in New York State Civil Courts outside of New York City. (¶28)

- Indeed, because these figures do not include any filings in Nassau (state) District Court,  the state court jurisdiction in which Malen's main office is located, nor any filings in the many Courts whose dockets are not listed on ECOURTS, the actual number of consumer collection filings by Malen in 2009 was, on information and belief, significantly higher than 13,000. (¶29)

- Upon information and belief, Mr. Wolstein did not meaningfully review the Complaint filed against Mr. Diaz, and the facts alleged therein, prior to signing same and causing it to be filed with the Kings County Civil Court. (¶30)

- Upon information and belief, Mr. Wolstein's failure to review Mr. Diaz' Complaint prior to filing it, far from an anomaly, is part of the business plan developed by Defendants, who have found that meaningful pre-filing review is not as profitable as submission of pleadings without review, in light of the fact that the overwhelming majority of consumer collection actions are won on default or against unsophisticated pro-se litigants who are, as a practical matter, incapable of meaningfully challenging even the most deficient, boilerplate consumer collection pleading. (¶31)

4

- ... each of the four unfair and deceptive practices listed above in Paragraph 42 (a) through (d) [of the Complaint] is a recurring practice that Defendants have taken, not just against Mr. Diaz, but against large numbers of consumers as part of a policy and practice that is designed and has the effect of increasing Defendants' profits by increasing the number of consumer accounts handled, lowering the cost of handling each account, and increasing Defendants' success rate with regard to consumer accounts. (¶50)

On November 8, 2010, Plaintiff and Defendant PRA reached a settlement as to PRA only, resulting in the dismissal of all claims as against PRA and the discontinuance of the lawsuit as against PRA. On November 24, 2010, Malen, the remaining Defendant, filed the instant Motion to Dismiss.

## III.   ARGUMENT

### 1. The FDCPA's Requirement That A Collection Action Be Brought In The Judicial District Where The Consumer Signed The Contract Or Resides Does Not Provide License To File Time-Barred Lawsuits

In response to Mr. Diaz's contention that Malen violated the FDCPA by filing a state collection action that was time barred pursuant to CPLR §202, Malen argues that it cannot be faulted because the FDCPA required the action to be brought in New York. *Defendant's Memorandum* at 4 (citing 15 USC §1692i, which requires that actions be brought "only in the judicial district... in which such consumer signed the contract sued upon; or . . . in which such consumer resides at the commencement of the action.")

Malen's argument is non-sensical. Plaintiff's *Kimber* claim is based on *when* Malen filed its collection suit, not *where*. Plaintiff does not contend that Malen should have brought the lawsuit in another jurisdiction, only that Malen filed in New York after the statute of limitations had run pursuant to CPLR §202. Resurgence Financial, LLC v. Chambers, 92 Cal. Rptr. 3d 844, 847-848 (Cal. App. Super. 2009)(debt buyer's consumer collection suit was time-barred under Delaware law despite the debt buyer's protestations that it was required to bring its suit in California under FDCPA §1692i.)

5

Moreover, it is well established that CPLR §202 applies even where the lawsuit could not have been brought in the original creditor's "home state". <u>Insurance Co. of N. Am. v. ABB Power Generation</u>, 91 N.Y.2d 180, 187-188 (1997)("the purposes underlying the borrowing statute [CPLR § 202] do not require that amenability to suit be demonstrated before an action can be said to accrue in a particular jurisdiction . . . It matters not that jurisdiction is unobtainable over a defendant in the foreign jurisdiction or that the parties have contracted to be venued in this State").

Finally, Plaintiff notes that opposing counsel raised this precise argument in <u>King</u> and was rejected. <u>King</u>, Respondent's Brief In Response To *Amicus Curiae* Briefs (attached hereto as Exhibit 2), pp. 10-17; <u>King</u>, <u>supra,</u> 14 N.Y.3d at 417-418.

## 2.  <u>King</u> Did Not Overturn Any Prior Precedent

Malen next argues that it did not violate the FDCPA because, while its lawsuit would now be time-barred under <u>King</u>, this decision constituted a radical reversal of "universally" adopted precedent. See *Defendant's Memorandum* at 4 ("This litigation comes down to one issue – whether CPLR §202 applied to the collection of a *consumer debt* from a New York resident prior to the decision in <u>King.</u>")(emphasis in original).

Malen faces several problems in attempting to cast <u>King</u> as overturning some prior rule under which "state courts only applied CPLR §202 to commercial transactions. . ." and pursuant to which debt buyers were entitled to New York's six year statute of limitations, "regardless of the location of the original creditor". *Defendant's Memorandum* at 5.[4]

---

[4] Bizarrely, Malen contends that PRA was not only limited to "commercial transactions" but to "commercial transactions wherein it was alleged that there was a breach of contract and the contract contained a choice of law provision in favor of a foreign jurisdiction". As is clear from the text of CPLR §202 and decades of precedent, CPLR §202 has nothing whatsoever to do with whether a contract contains a choice of law provision, nor is it specific to contract claims. See, e.g. <u>Antone v. General Motors Corp., Buick Motor Div.</u>, 64 N.Y.2d 20, 28 (1984).

First, Malen concedes that, "the Court of Appeals stated (in King) that it was not changing the law". *Defendant's Memorandum* at 7.   Malen would thus have this court reject the Court of Appeals' own assessment of the state of the law pre-King.

The Court's discussion in King relies entirely on existing precedent. Strikingly absent from the Court's discussion is any contrary precedent which it is overturning, any ambiguity in the statute which has been subject to conflicting interpretations, or the announcement of any new principle:

> Portfolio, as the assignee of Discover, is not entitled to stand in a better position than that of its assignor. We must therefore first ascertain where the cause of action accrued in favor of Discover. Here, it is evident that the contract causes of action accrued in Delaware, the place where Discover sustained the economic injury in 1999 when King allegedly breached the contract. Discover is incorporated in Delaware and is not a New York resident. Therefore, the borrowing statute applies and the Delaware three-year statute of limitations governs.

> That does not end the inquiry, however, because in determining whether Portfolio's action would be barred in Delaware, this Court must "borrow" Delaware's tolling statute to determine whether under Delaware law Portfolio would have had the benefit of additional time to bring the action (*see GML, Inc. v. Cinque & Cinque, P.C.*, 9 N.Y.3d 949, 951, 846 N.Y.S.2d 599, 877 N.E.2d 649 (2007)). Delaware's tolling statute-Delaware Code Annotated, title 10, §8117-provides that

>> "[i]f at the time when a cause of action accrues against any person, such person is out of the State, the action may be commenced, within the time limited therefor in this chapter, after such person comes into the State in such manner that by reasonable diligence, such person may be served with process. If, after a cause of action shall have accrued against any person, such person departs from and resides or remains out of the State, the time of such person's absence until such person shall have returned into the State in the manner provided in this section, shall not be taken as any part of the time limited for the commencement of the action."

> Section 8117 was meant to apply only in a circumstance where the defendant had a prior connection to Delaware, meaning that the tolling provision envisioned that there would be some point where the defendant would return to the state or where the plaintiff could effect service on the defendant to obtain jurisdiction (*see Williams v. Congregation Yetev Lev*, 2004 WL 2924490, *7, 2004 U.S. Dist LEXIS 25432, *22 (S.D.N.Y. 2004)). Indeed, Delaware's highest court has held that the literal application of its tolling provision "would result in the abolition of the defense of statutes of limitation in actions involving nonresidents" (*Hurwitch v. Adams*, 52 Del. 247, 252, 155 A.2d 591, 594 (1959)).

There is no indication that King ever resided in Delaware, nor is there any indication from the case law that Delaware intended for its tolling provision to apply to a nonresident like King. Therefore, we conclude that Delaware's tolling provision does not extend the three-year statute of limitations. Moreover, contrary to Portfolio's contention, it is of no moment that Portfolio was unable to obtain personal jurisdiction over King in Delaware; this Court has held that it is not inconsistent to apply CPLR 202 in such a situation (*see Insurance Co. of N. Am. v. ABB Power Generation,* 91 N.Y.2d 180, 187-188, 668 N.Y.S.2d 143, 690 N.E.2d 1249 (1997)).

Applying Delaware's three-year statute of limitations, the instant action should have been commenced not later than 2002. Because the contract claims were not brought until 2005, they are time-barred in Delaware, where the causes of action accrued, and therefore they are likewise time-barred in New York upon application of the borrowing statute. This holding is consistent with one of the key policies underlying CPLR 202, namely, to prevent forum shopping by nonresidents attempting to take advantage of a more favorable statute of limitations in this state (*see Antone v. General Motors Corp., Buick Motor Div.,* 64 N.Y.2d 20, 27-28, 484 N.Y.S.2d 514, 473 N.E.2d 742 (1984)).

Id. at 416-418.

Second, there is simply nothing in the statute (the text of which is tellingly nowhere to be found in Malen's motion papers) that could conceivably be construed to create the purported "debt buyer exemption". Rather, §202 states:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

The statute, on its face, thus applies without regard to whether the underlying transaction is commercial in nature, regardless of whether or not there is a choice of law clause in any contract between the parties, and regardless of whether or not the claim has been assigned subsequent to the cause of action having accrued.

Third, the Court of Appeals applied §202 to a non-commercial dispute in Antone v. General Motors Corp., Buick Motor Div., 64 N.Y.2d 20 (1984), a products liability case in which a consumer alleged that a car bought second hand was defective. Indeed, Malen's only citation

8

in support of its contention that §202 was limited to commercial transactions, <u>Verizon</u>

<u>Directories Corp. v. Continuum Health Partner, Inc.</u>, 2009 N.Y. Slip. Op. 30907 (S.Ct. April 21,

2009), cites to <u>Antone</u> – a consumer case.  Although, the <u>Verizon</u> case happens to involve a

commercial transaction, it contains no language that would suggest that the court viewed CPLR

§202 as limited to such transactions.

Given the above, it is not surprising that in the five state court cases cited by Malen as

demonstrating the purported pre-<u>King</u> exemption debt buyers enjoyed from CPLR §202

(*Defendant's Memorandum* at 5-6), there is no indication that any party raised the borrowing

statute as an issue.

Rather, these five opinions -- three of which are unpublished and involved pro se

defendants, merely recite the general rule that the statute of limitations for a breach of contract in

New York is six years, and make no reference at all to §202.  To read these as addressing issues

never raised or discussed by the court, and thus *sub silencio,* establishing a "universal" rule as to

the interpretation of the statute never mentioned, is absurd.

As for Malen's reference to the Third Department's ruling in <u>King</u> that was later

overturned by the Court of Appeals, it cannot be construed as creating a debt buyer exemption to

CPLR §202.  Rather, the Third Department considered and discussed only the issue of whether

to apply a credit card agreement's choice of law provision to statute of limitations questions and

made no mention of or reference to CPLR §202.

Indeed, both Defendant Malen and opposing counsel in the instant case, argued to the

Court of Appeals in <u>King</u> that the reason that the Third Department failed to discuss CPLR§202

was that it had been raised for the first time by Amici for Mr. King before the Court of Appeals.[5]

---

[5] *Portfolio Recovery Associates, PLLC against Jared King, Index No.: 05/323,* Respondent's Brief In Response To *Amicus Curiae* Briefs (attached hereto as Exhibit 2) at p.3-9; and *Portfolio Recovery Associates, PLLC against Jared King, Index No.: 05/323,* Respondent's Brief (attached hereto as Exhibit 4) at p. 21-22.

In light of this, opposing counsel's contention that Defendant herein was guided by the Third Department's (*sub silencio*) analysis of §202 is laughable.

Finally, Malen's attempt to rely upon a brief comment in the Joint Report of the Civil Court and Consumer Affairs Committees of the New York City Bar on a proposed consumer protection statute (the Consumer Credit Fairness Act) to the effect that "as a result" of King, the statute of limitations in some New York actions is three years, not six, is unavailing. *Defendant's Memorandum* at 7-8.

To the extent this Court finds the view of the two Committee's persuasive, it need not divine their position from a single sentence in a Report on proposed legislation. These two New York City Bar Committees (and the New York City Department of Consumer Affairs') addressed the issue in great detail in their amicus brief in King, and forcefully stated their view that CPLR §202 dictated the use of the original creditor's "home state" statute of limitations under existing precedent. King, *Joint Brief for Amici Curiae New York City Bar Association and the New York City Department of Consumer Affairs*, attached hereto as Exhibit 3.[6]

---

[6] The issue was addressed head-on by the two Committees in their *amicus* submission in King:

### POINT I
### SUMMARY JUDGMENT IN THIS CASE WAS IMPROPER BECAUSE THE LOWER COURTS FAILED TO APPLY CPLR § 202 IN DETERMINING WHETHER THE STATUTE OF LIMITATIONS HAD RUN.

The trial court and the Third Department failed to apply or even mention CPLR § 202 in deciding and affirming summary judgment in Plaintiff's favor, which was improper as a matter of law because the statute of limitations had long since run on Plaintiff's claims. . .

[W]hen an out-of-state plaintiff sues in New York on a cause of action that accrued outside of the state, "CPLR 202 requires the cause of action to be timely under the limitations periods of both New York and the jurisdiction where the cause of action accrued." *Global Fin. Corp., v. Triarc Corp.*, 93 N.Y.2d 525, 528,693 N.Y.S.2d 479,480 (1999).

. . . Importantly, in debt buyer cases, the residency of the original creditor at the time of the injury is what controls in deciding which state's statute of limitations applies to a cause of action because an assignee assumes all defenses and counterclaims that can be asserted against the assignor. *TPZ Corp. v. Dabbs*, 25 A.D.3d 787, 789,808 N.Y.S.2d 746,749 (2d Dep't 2006) ("[A]n assignee never stands in any better position than his assignor ...and takes an assignment subject to any pre-existing liabilities .... ") (internal quotations and citations omitted).

Opposing counsel and Malen, having opposed this *amicus* submission in <u>King</u>, are well aware of the Committees' actual position, and Defendant's mischaracterization is disingenuous.

**3.   Plaintiff Is Not Proposing The Retroactive Application Of A New Rule**

Malen advocates at great length against what it attempts to characterize as the "retroactive application" of the supposed new law brought down in <u>King</u>.

Plaintiff is not arguing for the retroactive application of any law.  CPLR §202's text has not changed since 1963, and the Court of Appeals decision in <u>King</u> was an entirely unremarkable application of existing precedent.

Malen concedes that the threshold inquiry in determining whether a Court decision announces a "new rule" (and thus, whether the "new rule" is to be applied retroactively to pending cases) is whether the decision "overrul[es] clear past precedent on which litigants may have relied, or . . . decid[es] an issue of first impression whose resolution was not clearly foreshadowed. <u>Chevron Oil Co. v. Huson</u>, 404 U.S. 97 (1971) cited at *Defendant's Memorandum* at p. 9. <u>People v. Favor</u>, 82 N.Y.2d 254 (1993).[7]

Courts have sharply limited the definition of what constitutes a "new rule" to ensure that the category "remains a relatively narrow one, lest the exception swallow up what has always been considered the normal rule in legal methodology – i.e. that cases should be decided on the basis of the law as it exists at the time of decision." <u>People v. Favor</u>, 82 N.Y.2d 254, 263 (1993).

---

. . .For the above reasons, amicus urges the court to apply CPLR §202 to the instant case and to reverse the Appellate Division decision.

Exhibit 3, at pp 11-14.  Although the undersigned is currently a member of the New York City Bar's Civil Courts Committee, he joined the Committee after the issuance of both the Joint Report on the Consumer Credit Fairness Act.

[7] Malen cites exclusively to federal cases addressing whether decisions interpreting federal law announce new rules and, if so if the "new rule" is to be applied retroactively. As the instant case involves interpretation of a state law, it is state law on retroactively that applies.  <u>American Trucking Associations, Inc. v. Smith</u>, 110 S. Ct. 2323, 2331 (1990); <u>Spicer v. Pier Sixty LLC</u>, 269 F.R.D. 321 (SDNY 2010). Because the New York Court of Appeals has cited the federal standard with approval (see, e.g. <u>Gurnee v. Aetna Life and Cas. Co.</u>, 55 N.Y. 2d 184, 192)(1982) and because the instant case involves a Court of Appeals decision that could not be deemed a "new rule" under any conceivably applicable standard, this Court need not definitively reach this issue.

Specifically, although a "judicial holding overruling established precedent should, in most instances, be considered a "new" rule, the Court of Appeals has held that:

> "[a] judicial decision construing the words of a statute [for the first time] does not constitute the creation of a new legal principle". Further, retroactivity should not be in question when a court's ruling <u>merely applies previously established principles in a new factual setting or settles a question in a manner that was clearly foreshadowed.</u>

<u>Id.</u> at 263; see also <u>Ramirez v. Mansions Catering, Inc.,</u> 74 A.D. 3d 490 (1st Dept. 2010); <u>Americorp. Securities, Inc. v. Sager,</u> 239 A.D.2d 115 (1st Dept. 1993); <u>In re Taihem F.,</u> 222 A.D.2d 322 (1st Dept. 1995).

In this case, the Court, at most, was applying established law regarding the application of CPLR §202 and the "elementary ancient law that an assignee never stands in any better position than his assignor." <u>International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.</u> 36 N.Y.2d 121, 126 (1975). <u>King, supra,</u> 14 N.Y.3d at 416. For this reason, the Court of Appeals' discussion in <u>King</u> does not discuss any tension in the existing case law, much less overturn any existing precedent.

**4. CPLR § 202 Applies In Cases Where The Plaintiff Could Not Have Obtained Jurisdiction Over The Defendant In Plaintiff's Home State**

Malen next argues that "CPLR §202 is not applicable when the state where the action accrued did not have personal jurisdiction over defendants" *Defendant's Memorandum* at 11.

This contention was explicitly rejected by the Court of Appeals, in <u>Insurance Co. of N. Am. v. ABB Power Generation,</u> 91 N.Y.2d 180, 187-188 (1997), which held that "CPLR §202 requires that a court, when presented with a cause of action accruing outside New York, should apply the limitation period of the foreign jurisdiction if it bars the claim. . . . <u>It matters not that jurisdiction is unobtainable over a defendant in the foreign jurisdiction</u> or that the parties have contracted to be venued in this State.")(emphasis added). This holding has been reiterated in several other Court of Appeals cases. For example, in <u>GML, Inc. v. Cinque & Cinque, P.C.,</u> 9 N.Y.3d 949, 950 (2007), the Court of Appeals held:

It is irrelevant whether defendants are . . .subject to suit in Tennessee and unnecessary to determine whether defendants were subject to personal jurisdiction in Tennessee. A conclusion to the contrary would cause the statute of limitations to be tolled indefinitely against these defendants. We do not believe that the Legislature intended this result in enacting CPLR §202.

Id. at 950.

In King, Malen & Associates and its current counsel raised the same argument on behalf of PRA, and the Court of Appeals, citing ABB Power stated, "[C]ontrary to Portfolio's contention, it is of no moment that Portfolio was unable to obtain personal jurisdiction over King in Delaware; this Court has held that it is not inconsistent to apply CPLR §202 in such a situation". King, supra, 14 N.Y.3d at 417.

**5.  Malen's Infinite Tolling Argument**

Malen also argues that CPLR §202 does not apply because Mr. Diaz was never subject to subject to service in New Hampshire.  Malen's argument incorrectly assumes that New Hampshire's tolling statute, N.H. Rev. Stat. § 508:9, applies even where the defendant is a non-resident who cannot, as a matter of law, be sued in New Hampshire.[8]  Although the undersigned has found no New Hampshire case directly on point, a federal district court recently addressed this issue in a case involving one of the Defendants herein, and rejected Malen's argument.

In Gaisser v. Portfolio Recovery Associates, 571 F. Supp.2d 1273 (S.D. Fla. 2008) -- a case not cited, discussed, or distinguished by Malen -- the consumer claimed that PRA and its attorneys had violated the FDCPA by filing on time-barred debt.  As here, PRA and its collection attorneys argued that the state collection action was timely because the New Hampshire statute of limitations that would otherwise apply was tolled indefinitely under N.H. Rev. Stat § 508:9. The Court flatly rejected the argument, holding that the New Hampshire tolling provision did not

---

[8] N.H. Rev. Stat. § 508:9 states:  "If the defendant in a personal action was absent from and residing out of the state at the time the cause of action accrued, or afterward, the time of such absence shall be excluded in computing the time limited for bringing the action."

apply, and would lead to an "absurd result", where the consumer had not ever resided in New

Hamphsire. Id. at 1278.

In so holding, Gaisser reviewed the relevant case New Hampshire caselaw and found its

thrust to be contrary to Malen's position:

> [T]he Supreme Court of New Hampshire addressed whether the tolling provision applied to a case filed in New Hampshire, arising from a car accident that occurred in New Hampshire, where the defendant was not present in the state. See Bolduc v. Richards, 101 N.H. 303, 142 A.2d 156 (1958). The plaintiff could have obtained substituted service on the defendant through a statute permitting service on the Motor Vehicle Commissioner. In considering the plaintiff's argument that tolling should apply irrespective of the substituted service statute, the court expressed concern that interpreting the provision to toll the statute indefinitely "would lead to ... unfortunate consequences," and could not have been the intent of the New Hampshire Legislature. Id. at 158. Other courts considering similar situations have refused to apply tolling statutes such that the limitations period is indefinitely tolled. See McCorriston v. L.W.T., Inc., 536 F.Supp.2d 1268, 1276 (M.D.Fla.2008) (quoting Hurwitch v. Adams, 155 A.2d 591, 594 (Del.1959)) (refusing to apply the Delaware tolling provision in a way that would "indefinitely toll lawsuits filed in states other than Delaware, notwithstanding that those lawsuits were filed against account holders who were never in Delaware," because this would "effectively 'result in the abolition of the defense of statutes of limitation in actions involving non-residents,' an absurd result.").
>
> *Because the three-year New Hampshire statute of limitations applied to the debt, and the period was not tolled under the statute, Defendants have not shown the state suit was timely filed.* Accordingly, the Motions to Dismiss on this ground are without merit.

Id. at 1278 (emphasis added).

In Resurgence Financial, LLC v. Chambers, 92 Cal. Rptr. 3d 844 (Cal. App. Super. 2009),

the Court, likewise interpreted Delaware's analogous tolling provision and concluded as follows:

> Section 8117 suspends the limitations period for actions that are brought in Delaware courts during the time that Delaware courts do not have jurisdiction over the defendant. The purpose of section 8117 is to protect persons seeking to file suit in Delaware from defendants who have made filing suit in Delaware difficult or impossible. In this case, Resurgence asserts that it is not a Delaware corporation, does not "reside there," and could not legally have filed an action in Delaware based on federal and state law. (See 15 U.S.C. § 1692 et seq. (Fair Debt Collection Practices Act); Civ.Code, § 1788 et seq. (Rosenthal Fair Debt Collection Practices Act). Instead, Resurgence was required to file suit in

California. (See Harrington v. CACV of Colo., LLC (D.Mass.2007) 508
F.Supp.2d 128, 133.) Thus, Chambers was always subject to suit in the only
forum where she was amenable to suit. *There is no reason for the Delaware
legislature to extend the limitations period with respect to actions that are not
filed in Delaware and could not be filed in Delaware. Accordingly, section 8117
can be most reasonably read to apply only to actions that are actually filed in a
Delaware court or actions that could have been filed in a Delaware court.*

Id. at 847-848 (emphasis added). See also Hurwitch v. Adams, 155 A.D.2d 591, 592 (Del.

1959)(holding that "there was no tolling of the one-year statute of limitations because of the fact

that the defendants were non-residents").

Malen's reliance on the Ninth Circuit's decision in Avery v. First Resolution Management

Corp., 568 F.3d 1018 (9th Cir. 2009), is misplaced. In Avery, the Ninth Circuit held that under

Oregon's borrowing statute, the reference in N.H. Rev. Stat. § 508:9 to tolling when a party was

"outside the state" referred to the party being outside New Hampshire, not Oregon.

The Avery Court went to great lengths to emphasize the narrowness of its holding and stated

outright that it did reach or express any opinion on whether New Hampshire courts would apply

the tolling provision to non-residents that, pursuant to the FDCPA could not be sued in New

Hampshire.  Specifically, Malen fails to alert the Court during its lengthy discussion of Avery,

that the Court issued an amended decision which was identical to its previous decision but for the

following, highly relevant, limiting footnote:

Several advocacy groups filed a brief as amici curiae in support of Avery's petition
for rehearing en banc, suggesting that our opinion overlooks the ramifications of
allowing perpetual tolling against out-of-state debtors under New Hampshire's tolling
provision. We do not purport to construe definitively the scope of New Hampshire's
tolling provision or to determine conclusively its effect when lawsuits are filed
outside New Hampshire courts. Rather, we address only the narrow statutory
argument Avery has made: that under Oregon's choice of law regime, "the state"
referred to in N.H. REV. STAT. ANN. § 508:9 is Oregon when a lawsuit is filed in
Oregon but New Hampshire law otherwise governs.

*We express no opinion on arguments Avery did not raise, including, without
limitation: (1) whether New Hampshire courts would construe N.H. REV. STAT.
ANN. § 508:9 to allow perpetual tolling against an out-of-state defendant on a cause
of action that could not, as a matter of law, be brought in New Hampshire courts, see
15 U.S.C. § 1692i (requiring debt collectors to bring action on debt against a*

consumer *in the judicial district where the consumer signed a contract or where the consumer resides);* or (2) whether a credit card agreement would be unconscionable under New Hampshire law if it led to perpetual tolling when the debt collector was free to sue the card holder at any time in the card holder's home jurisdiction.

Avery, 568 F.3d 1019, 1020 at Fn. 1 (emphasis added).

Of course, unlike the plaintiff in Avery, Plaintiff herein does not contend that as a matter of New York law, the text of the New Hampshire Statute must be interpreted a certain way. Rather, Plaintiff contends that under New Hampshire Law (which is "borrowed" pursuant to CPLR §202), the action was time barred.

In sum, as Resurgence found with regard to Delaware's § 8117, New Hampshire's § 508:9, "can be most reasonably read to apply only to actions that are actually filed in a [New Hampshire] court or actions that could have been filed in a [New Hampshire] court." Resurgence, supra, 92 Cal.Rptr.3d at 848. Malen has failed to point to a single court, state or federal, in New Hampshire or elsewhere that has adopted a contrary position.

**6. Plaintiff's *Miller* Claim Is Independent Of Plaintiff's *Kimber* Claim**

Malen argues at several points that the failure of Plaintiff's Kimber claim would, in effect, end the lawsuit. See, e.g. *Defendant's Memorandum* at p.4. This is incorrect. Plaintiff alleged four different FDCPA violations, three of which are still in play following Plaintiff's settlement with PRA. The complaint states, that Defendants violated the FDCPA, *inter alia*, by:

a.     Collecting, threatening and/or attempting to collect on a time-barred debt, whose statute of limitations had clearly already run, in violation of §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).
b.     Filing a Complaint against Mr. Diaz in the State Action that was deceptive and misleading in that it was signed by an attorney but was not in fact meaningfully reviewed by an attorney, in violation of §§ 1692e, 1692e(3), 1692e(5), 1692e(10), and 1692f.
c.     [Withdrawn].[9]
d.     Taking legal action against Mr. Diaz when it knew or should have known that there was no factual basis for its action, without conducting the minimum due diligence required under New York law regarding frivolous pleadings, and misstating the amount, character and/or legal status of Mr. Diaz' debt, in violation of §§ 1692e, 1692e(2), 1692e(5), and 1692e(10), 1692f, and 1692f(1).

---

[9] As noted previously, in light of the settlement with PRA, Plaintiff withdraws the credit reporting claim set forth in ¶42(c) of the Complaint.

Complaint at ¶ 42(a) through (d).

Plaintiff's claim that the Complaint was not meaningfully reviewed by an attorney prior to Malen's signing and filing it with the Court, set forth in Paragraph 42(b) of the Complaint, (and also referenced in the broader allegations of 42(d) of the Complaint) does not hinge or depend in any way on whether the claims set forth in Complaint were time barred. It hinges upon Plaintiff's failure to have an attorney meaningfully review the Complaint and its allegations prior to filing, regardless of whether the allegations turned out to be true and properly brought. "[A] shot in the dark is no less sanctionable because it happens to hit the mark." Miller v. Upton, Cohen & Slamowitz, 687 F.Supp.2d 86, 102 ("Miller III"), citing Garr v. U.S. Healthcare, Inc., 22 F.3d 1274, 1280 (3d Cir.1994)).

Rather, as the Court explained in Miller III (which applied then-Judge Sotomayor's decision in Miller I), the relevant inquiry is whether the volume of accounts handled and the procedures in place to review the accounts allowed for meaningful attorney review prior to issuance of the state court complaint:

> In its previous review of this case, the Second Circuit held that UCS may be liable if the evidence demonstrated that UCS "reviewed the collection files with such speed that no independent judgment could be found to have been exercised, and then issued form collection letters with the push of a button." Miller I, 321 F.3d at 306. The credible evidence presented at trial has yielded no facts to demonstrate the exercise of independent attorney judgment in connection with Miller's file; indeed, this Court now concludes that, with respect to Miller's case, UCS's attorney review practices prior to both the issuance of the debt-collection letter signed by Slamowitz and the commencement of legal action were inadequate for FDCPA purposes, thus rendering misleading these communications with Miller.

Id. at 95-96.

Without the benefit of discovery, Plaintiff has nonetheless collected data that suggests precisely the sort of mass robo-filing of thousands of boilerplate collection complaints by a law firm with a small number of lawyers that the Second Circuit and, on remand, the district court found problematic. See, e.g. Miller III, at 100 (finding FDCPA liability where "[t]he volume of

17

business at UCS, coupled with practices followed in the Miller matter, supports the conclusion that debt collection letters and litigation documents were regularly mass-produced at UCS by non-lawyers at the push of a button.")

For example, the Amended Complaint alleges that:

- "[Malen attorney] Wolstein signed thousands of Complaints filed in the New York City Civil Courts in 2009. Indeed, upon information and belief, Mr. Wolstein signed significantly more than 1/3 of the approximately 10,904 Complaints filed in New York City's Civil Courts by Malen in 2009.

- In addition to its prodigious filings in the New York City Civil Courts, Malen filed at least approximately 2000 additional Complaints in other Civil Courts (and their analogs) throughout New York State.

- Upon information and belief, Mr. Wolstein signed significantly more than 1/3 of these approximately 2,000 or more Complaints filed in New York State Civil Courts outside of New York City.

- Indeed, because these figures do not include any filings in Nassau (state) District Court, the state court jurisdiction in which Malen's main office is located, nor any filings in the many Courts whose dockets are not listed on ECOURTS, the actual number of consumer collection filings by Malen in 2009 was, on information and belief, significantly higher than 13,000.

Amended Complaint at ¶¶ 26-29.

Far from the conclusory one-sentence allegation that Malen describes in its motion papers (*Defendant's Memorandum* at 17-18), Plaintiff alleges that Malen's failure to meaningfully review the Complaint prior to filing is part of its business model of flooding the state courts with unreviewed pleadings in order to take thousands of default judgments and collect upon them; more specifically it alleges that no more than three attorneys at the firm filed over 13,000 Complaints during the year in question, that Mr. Wolstein signed and caused to be filed a minimum of four thousand, three hundred and thirty three (4,333) Complaints that year; and, on information and belief, alleges that the number was significantly higher.

The Court's finding in <u>Miller</u> is, in essence, the allegation in the instant case. Opposing counsel herein, who represented the defendants in <u>Miller</u> over the course of seven years, through an appeal to the Second Circuit, and the bench trial at which the consumer prevailed on these allegations, cannot seriously contend that Plaintiff has failed to state a claim.

## 7. Plaintiff Has Adequately Plead A Violation of NYGBL § 349

Malen argues that it has not violated NYGBL §349 because (a) "the defendant was following the state of the law at the time it filed the State Action" (*Defendant's Memorandum* at 16); and (b) because, even if State Action was unlawful under CPLR §202, a consumer would have "reasonably believe[d] that he would be subjected to suit in New York under the New York statute of limitations. *Defendant's Memorandum* at 17.

Malen's argument fails. First, Malen ignores Plaintiff's *Miller* claim, which -- as discussed *supra* at Section III(6) -- alleges deceptive conduct that is independent of whether or not the State Action was commenced timely.

Second, as argued at length above, the State Action was outside the statute of limitations at the time it was filed. *Supra* at III(1) – (5).

Finally, Malen's suggestion that even if the State Action was time-barred and thus violated the FDCPA, a consumer could not reasonably have expected Malen to comply with CPLR §202 is also without merit. The test for whether an act is misleading is objective, and a consumer may reasonably expect that applicable laws will be complied with. <u>Cohen v. JP Morgan Chase & Co</u>, 498 F.3d 111 (2nd Cir. 2007)(collecting cases and holding that a consumer stated a claim under § 349 by alleging that certain mortgage fees barred under other statutes were deceptive because a consumer may "reasonably assume that all fees charged by a respected financial institution such as Chase were legal.").

To the extent that Malen is arguing that Plaintiff's claim fails because Mr. Diaz did not rely on Malen's deceptive act, this contention is similarly unavailing.  Reliance is not required under

§ 349. Phifer v. Home Savers Consulting Corp., 2007 WL 295605, at *5 (E.D.N.Y.

2007)("Plaintiff need not allege reliance - they need only show that the deceptive act caused the

injury.")

Plaintiff has adequately stated a claim under NYGBL §349.

## 8. Plaintiff Has Adequately Plead A Violation Of Judiciary Law §487

Malen argues that Plaintiff has alleged only a single instance of deceptive conduct by Malen

associate attorney Jeffrey Wolstein and, as such, the allegations "do not demonstrate a sufficient

intent to deceive the court or a party, nor do they demonstrate a sufficiently chronic and extreme

pattern of legal delinquency. . ." *Defendant's Memorandum* at 18.

Malen's argument fails. Unlike the cases to which it cites, Plaintiff has alleged in some

detail that the misconduct that occurred in the underlying state action was not an isolated

instance, but rather was part of a broader pattern and practice of deception, involving the filing of

thousands of Complaints that had been "robosigned" without meaningful and/or which were

time-barred on their face under CPLR §202. See, e.g. Amended Complaint at ¶22; ¶31; ¶50.

This is precisely the sort of patter of recurring, bad, conduct that was recently held to

sufficiently make out a claim in Sykes v. Mel Harris and Associates, LLC, -- F.Supp.2d ----,

2010 WL 5395712 (S.D.N.Y. 2010)(J. Chin, Circuit Judge), in which New York consumers

alleged in a class action, *inter alia*, that a collection law firm had submitted thousands of

"affidavits of merit" that falsely purported personal knowledge of consumers' accounts, and

submitted other false statements to the Courts, stated:

> Judiciary Law §487 provides that any attorney who has engaged in "any deceit or
> collusion, or consents to any deceit or collusion, with intent to deceive the court
> or any party" is guilty of a misdemeanor and liable for damages. N.Y. Jud. L. §
> 487. Plaintiffs1 allegations regarding the fraudulent affidavits and other filings
> provide adequate support for this claim against the Mel Harris defendants. Thus,
> the Mel Harris defendants1 motion to dismiss the Judiciary Law claim is denied.

Id. at *10.

As in Sykes, Plaintiff in the instant case has alleged that the collection law firm defendant floods the New York Courts with cursory, boiler plate pleadings containing false statements. Indeed, Malen elsewhere admits that its conduct in the instant case is part of a larger patter, arguing that if liability is established it will have "catastrophic" effects on thousands of collection cases. *Defendant's Memorandum* at p.10.

Plaintiff has adequately stated a cause of action under Judiciary Law §487.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that Defendant's motion be denied in its entirety.

Respectfully,

Daniel A. Schlanger, (DS-9330)
Schlanger & Schlanger, LPP
Attorneys for Plaintiff
1025 Westchester Avenue, Suite 108
White Plains, New York 10605

To:
Tom Leghorn, Esq.
Jill Alward, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639

21