**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

MICHAEL DIAZ ,

                  Plaintiff,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC
and
MALEN & ASSOCIATES, P.C.

                  Defendants.

-----------------------------------------------------------X

**AFFIRMATION IN SUPPORT
OF OPPOSITION TO
DEFENDANT MALEN &
ASSOCIATES, PC's MOTION
TO DISMISS**

**Index: 10-cv-3920**
**Hon. Edward Korman**
**Hon. Cheryl Pollack**

DANIEL A. SCHLANGER, an attorney duly licensed to practice law in the State of New York, does hereby affirm under the penalty of perjury, as follows:

1. I am a partner at Schlanger & Schlanger, LLP, counsel for the above Plaintiff, Michael Diaz.

2. I make this Affirmation solely for the purpose of placing before this Court various exhibits in support of Plaintiff's Opposition to Defendant Malen & Associates, PC's Motion to Dismiss.

3. The facts and legal arguments relevant to this Opposition have been set out in Plaintiff's Memorandum of Law.

4. The following exhibits are hereby attached and made part of the record:

    1. State Action Complaint (Portfolio Recovery Associates, LLC v. Diaz, Index No: 124815-cv-09);

    2. Respondent's Brief In Response To *Amicus Curiae* Briefs, *Portfolio Recovery Associates, PLLC against Jared King, Index No.: 05/323;*

    3. Respondent's Brief, *Portfolio Recovery Associates, PLLC against Jared King, Index No.: 05/323,*

4. Joint Brief for *Amici Curiae* New York City Bar Association and the New York City Department of Consumer Affairs, *Portfolio Recovery Associates, PLLC against Jared King, Index No.: 05/323.*

For the reasons set forth more fully in Plaintiff's Memorandum of Law in Opposition to Defendant Malen & Associates, PC's Motion to Dismiss, Defendant's motion should be denied in its entirety.

Dated: White Plains, New York
January 7, 2011

Respectfully,

Daniel A. Schlanger, Esq.

2

# EXHIBIT 1

t

## CONSUMER CREDIT TRANSACTION
### IMPORTANT!! YOU ARE BEING SUED!!!!

### THIS IS A COURT PAPER-A SUMMONS

**DON'T THROW IT AWAY!! TALK TO A LAWYER RIGHT AWAY! PART OF YOUR PAY CAN BE TAKEN FROM YOU (GARNISHEED). IF YOU DO NOT BRING THIS TO COURT, OR SEE A LAWYER, YOUR PROPERTY CAN BE TAKEN AND YOUR CREDIT RATING CAN BE HURT!! YOU MAY HAVE TO PAY OTHER COSTS TOO!!! IF YOU CAN'T PAY FOR YOUR OWN LAWYER BRING THESE PAPERS TO THIS COURT RIGHT AWAY. THE CLERK (PERSONAL APPEARANCE) WILL HELP YOU!**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS

SUMMONS

**124815**

------------------------------------------------

PORTFOLIO RECOVERY ASSOCIATES, LLC

Index No.:
File No. 0421E 218438
Client Acct No: XXXXXXXXXXXX2089

Plaintiff
-against-

MICHAEL DIAZ



------------------------------------------------
Defendant(s)

The basis of venue designated is: County in which defendant(s) resides
65 N 8TH ST BROOKLYN NY 11201

Plaintiff's Address:
140 Corporate Blvd
Norfolk, VA 23502

To the above named defendant(s)
    YOU ARE HEREBY SUMMONED and required to appear in the Civil Court of the City of New York, County of KINGS    at the office of the Clerk of the said Court at: 141 Livingston Street Brooklyn, NY 11201 in the County of KINGS    City and State of New York, within the time provided by law as noted below and to file your answer to the complaint with the Clerk: upon your failure to answer, judgment will be taken against you for the sum of $ 5394.42    with interest thereon from 11/10/09 together with the costs and disbursements of this action.

Nov 10, 2009

MALEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
123 Frost Street, Suite 203
Westbury, New York 11590
(516) 334-3500 Ext: 5947





Paul Mahler, Tim Murtha, Jeffrey Wolstein

NOTE: The law provides that: (a) If this summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY days after such service; or (b) If this summons is served by delivery to any person other than you personally, or is served outside the City of New York, or by publication, or by any means other than personal delivery to you within the City of New York, you are allowed THIRTY days after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

This is an attempt to collect a debt, any information obtained will be used for that purpose.
We are a Debt Collector.

**FILED**

**NOV 27 2009**
**CIVIL COURT**
**KINGS COUNTY**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS                                    INDEX #:
-------------------------------------------X
PORTFOLIO RECOVERY ASSOCIATES, LLC    OUR FILE #: 0421E -218438

                Plaintiff,
                -against-                      COMPLAINT
MICHAEL DIAZ,

                                    Plaintiff's Address:
                Defendant(s)          140 Corporate Blvd
-------------------------------------------X    Norfolk, VA 23502

PLAINTIFF BY ITS ATTORNEYS, MALEN & ASSOCIATES, P.C. COMPLAINING OF the Defendant(s),
allege(s) upon information and belief:

1. Plaintiff is a Corporation licensed to do business in New York.
   PROVIDIAN NATIONAL BANK (the Assignor) assigned account to PORTFOLIO RECOVERY ASSOCIATES, LLC.
   Plaintiff's New York City Department of Consumer Affairs license number is 1096994.

2. Defendant MICHAEL DIAZ resides or has its principal place of
   business at: 65 N 8TH ST BROOKLYN NY 11201

3. Upon Information and belief the transaction of business occurred within KINGS County.

4. CAUSE OF ACTION NUMBER ONE:
   Defendant(s) executed an agreement wherein Assignor agreed to extend credit or cash advance on a revolving basis which
   credit or advance was to be paid in monthly installments. There remains due and owing the sum of $ 4002.04 plus interest of
   $ 1392.38 at the statutory rate of 9.00%, from 12/30/05, for a total of 5394.42.

5. That no portion of the aforementioned sum has been paid, although duly demanded.

6. CAUSE OF ACTION NUMBER TWO:
   Plaintiff repeats each allegation contained in paragraphs 1 through 5, inclusive.

7. Defendant(s) agreed to pay for attorney fees up to the reasonable value of $ .00.

8. CAUSE OF ACTION NUMBER THREE:
   Plaintiff repeats each allegation contained in paragraphs 1 through 7, inclusive.

9. An account was taken and stated showing a balance of $ 5394.42 due and owing to Plaintiff by Defendant(s), no part of
   which has been paid, although duly demanded, which Defendant(s) did not object to.

   WHEREFORE Plaintiff demands judgment against Defendant(s) in the sum of $ 5394.42 on the first cause of action; the sum
of $ .00 on the second cause of action; the sum of $ 5394.42 on the third cause of action; together with interest from
the date of this complaint along with costs and disbursements.

DATED: Nov 10, 2009
       Westbury, New York

                        Paul Mahler, Tim Murtha, Jeffrey Wolstein

YOURS, etc.
MALEN & ASSOCIATES, P.C.
Attorneys for Plaintiff        <u>This is an attempt to collect a debt. Any information obtained will be</u>
123 Frost Street, Suite 203         <u>used for that purpose. We are a Debt Collector.</u>
Westbury, N.Y. 11590
(516) 334-3500 Extension: 5948
NYC License #:1249723

05/04/2010   16:51   1710782/101        NORTHSIDE RX                    PAGE   04/04

ID
Civil Court of the City of New York          Index No: **CV-124815-09/KI**
County of Kings

PORTFOLIO RECOVERY ASSOCIATES, LLC               **ANSWER IN PERSON**
            -against-                          **CONSUMER CREDIT TRANSACTION**
MICHAEL DIAZ

Defendant, MICHAEL DIAZ, at 65 N 8TH ST, Brooklyn, NY 11201, answers the Complaint as follows:

Dated : 04/30/2010                    *court generated this form*
(Check all that apply)

1   **XX** General Denial: I deny the allegations in the complaint
        **SERVICE**
2   **XX** I did not receive a copy of the summons and complaint
3   ___ I received the Summons and Complaint, but service was not correct as required by law.
        **DEFENSES**
4   ___ I do not owe this debt
5   ___ I did not incur this debt. I am the victim of identity theft or mistaken identity.
6   ___ I have paid all or part of the alleged debt.
7   **XX** I dispute the amount of the debt.
8   **XX** I do not have a business relationship with Plaintiff.  ( Plaintiff lacks standing.)
9   ___ The NYC Department of Consumer Affairs shows no record of plaintiff having a license to collect a debt.
10  ___ Plaintiff does not allege a debt collection license number in the Complaint.
11  ___ Statute of Limitations ( the time has passed to sue on this debt: more than six years.)
12  ___ The debt has been discharged in bankruptcy.
13  ___ The collateral (property) was not sold at a commercially reasonable price.
14  **XX** Unjust enrichment (the amount demanded is excessive compared with the original debt.)
15  ___ Violation of the duty of good faith and fair dealing.
16  ___ Unconscionability (the contract is unfair.)
17  **XX** Laches (plaintiff has excessively delayed in bringing this lawsuit to my disadvantage.)
18  ___ Defendant is in the military.
19  ___ Other:
    **OTHER**
20  ___ Please take notice that my only source of income is _____, which is exempt from collection.
    **COUNTERCLAIM**
21  ___ Counterclaim(s): $        Reason:

This case is scheduled to appear on the calendar as follows:May 20, 2010 in Part 11 - Self Represented,
Room 1101 at 9:30 AM Both sides notified: _____

To:
        Malen & Associates PC
        123 Frost Street, Suite 203
        Westbury, NY 11590-

**EXHIBIT 2**

*Appellate Division, Third Department Case No. 503411*
*Greene County Clerk's Index No. 05/323*

# Court of Appeals

## STATE OF NEW YORK

➤➤◄◄

PORTFOLIO RECOVERY ASSOCIATES, PLLC,

*Plaintiff-Respondent,*

*against*

JARED KING,

*Defendant-Appellant.*

## RESPONDENT'S BRIEF IN RESPONSE TO
## *AMICUS CURIAE* BRIEFS

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
*Attorneys for Plaintiff-Respondent*
*Portfolio Recovery Associates, PLLC*
3 Gannett Drive, 4th Floor
White Plains, New York 10604
914-323-7000

*Of Counsel:*

Robert A. Spolzino

*Date Completed: February 24, 2010*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

PRELIMINARY STATEMENT............................................................... 1

SUMMARY OF ARGUMENT ............................................................... 1

I

      AMICI'S ARGUMENT THAT CPLR 202 REQUIRES THE APPLICATION OF DELAWARE'S THREE-YEAR STATUTE OF LIMITATIONS IS NOT AVAILABLE TO THE DEFENDANT AS THE DEFENDANT NEVER RAISED THAT ARGUMENT BELOW ....... 3

II

      THE CHOICE OF LAW CLAUSE DOES NOT DETERMINE THE STATUTE OF LIMITATIONS......................................................... 9

III

      SUMMARY JUDGMENT WAS PROPERLY GRANTED BECAUSE THE RECORDS, EVEN AS SUPPLEMENTED IN THIS COURT, FAILS TO ESTABLISH THAT THE PLAINTIFF'S CLAIM ACCRUED IN DELAWARE......................................................... 10

    A.  Because the Plaintiff's Claim is Governed by the Fair Debt Collection Practices Act, it Accrued in New York or Connecticut ...... 11

    B.  The Plaintiff's Claim Did Not Accrue in Delaware ............................. 12

    C.  The Record Does Not Establish a Basis for Borrowing the Delaware Statute of Limitations ........................................................... 17

i

IV

      EVEN IF THE DELAWARE STATUTE OF LIMITATIONS APPLIES, THIS ACTION IS NEVERTHELESS TIMELY UNDER THE TOLLING PROVISIONS OF THAT STATUTE ................................ 20

V

      THE CLAIM WAS TIMELY UNDER NEW YORK'S SIX-YEAR STATUTE OF LIMITATIONS ................................................. 24

VI

      THE PLAINTIFF ESTABLISHED ITS STANDING AS ASSIGNEE OF THE CREDITOR ................................................................ 26

CONCLUSION ................................................................. 28

# TABLE OF AUTHORITIES

## Federal Cases

*Capelle v. Trinity M. E. Church,*
  5 F.Cas. 38 [D.Del. 1875]....................................................................21

*Martinez v. Albuquerque Collection Services,*
  867 F.Supp. 1495 [D.N.M. 1994]..........................................................11

*Wiener v. Bloomfield,*
  901 F.Supp. 771 [S.D.N.Y. 1995] ........................................................11

## State Cases

*Affronti v. Crosson,*
  95 N.Y.2d 713 [2001]............................................................................7

*Alvarez v. Prospect Hosp.,*
  68 N.Y.2d 320 [1986]..........................................................................19

*Applehead Pictures LLC v. Perelman,*
  55 A.D.3d 348 [1st Dept 2008] ............................................................19

*Beresovski v. Warszawski,*
  28 N.Y.2d 419 [1971]..........................................................................26

*Bingham v. New York City Transit Auth.,*
  99 N.Y.2d 355 [2003]............................................................................3

*Brossman v. Federal Deposit Ins.,*
  Co., 510 A.2d 471 [1986] ....................................................................21

*Childs v. Brandon,*
  60 N.Y.2d 927 [1983]..............................................................22, 23, 26

*Crawford v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,*
  35 N.Y.2d 291 [1974]............................................................................8

*Doin v. Champlain Bluffs Dev. Corp.,*
  68 A.D.3d 1605 [3d Dept 2009]...........................................................19

iii

*Doyle v. Bascom,*
    38 A.D.2d 645 [3d Dept 1971]...................................................... 23

*Education Resources Inst., Inc. v. Piazza,*
    17 A.D.3d 513 [2d Dept 2005] ..................................................... 10

*Friends of Animals, Inc. v. Associated Fur Mfrs., Inc.,*
    46 N.Y.2d 1065 [1979] ................................................................ 19

*Global Financial Corp. v. Triarc Corp.,*
    93 N.Y.2d 525 [1999]........................................................*passim*

*GML, Inc. v. Cinque & Cinque, P.C.,*
    9 N.Y.3d 949 [2007] .................................................................... 22

*Green v. Disbrow,*
    79 N.Y. 1 [1879] .......................................................................... 25

*Insurance Co. of N. Amer. v. ABB Power Generation, Inc.,*
    (91 N.Y.2d 180 [1997] ..................................................... 14, 17, 22

*Jensen v. General Elec. Co.,*
    82 N.Y.2d 77 [1993] .................................................................... 13

*Martin v. Dierck Equip. Co.,*
    43 N.Y.2d 583 [1978] .................................................................... 9

*North Fork Bank v. Hamptons Mist Mgt. Corp.,*
    225 A.D.2d 595 [2d Dept 1996] ................................................... 23

*People ex rel. Roides v. Smith,*
    67 N.Y.2d 899 [1986] .................................................................... 6

*Post v. 120 East End Ave. Corp.,*
    62 N.Y.2d 19 [1984] ..................................................................... 5

*Richardson v. Fiedler Roofing,*
    67 N.Y.2d 246 [1986] .................................................................... 6

*Ripley v. Storer,*
    309 N.Y. 506 [1956].................................................................... 8

*Rosenfeld v. Hotel Corp. of America,*
   20 N.Y.2d 25 [1967]................................................................ 13

*Rubin v. Dairymen's League Co-operative Ass'n,*
   259 App.Div. 23[3d Dept 1940],........................................... 25

*Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Company, Inc.,*
   866 A.2d 1 [2005]................................................................... 21

*Matter of Smith, Barney, Harris, Upham & Co. v. Luckie,*
   85 N.Y.2d 193 [1995]............................................................. 20

*Sprague v. Hosmer,*
   82 N.Y. 466 [1880]................................................................. 27

*Tanges v. Heidelberg N. Am.,*
   93 N.Y.2d 48 [1999]............................................................... 10

*Votta v. Votta Enterprises, Inc.,*
   249 A.D.2d 536 [2d Dept 1998]............................................. 23

*Wells Fargo Bank Minnesota N.A. v. Mastropaolo,*
   42 A.D.3d 239 [2d Dept 2007]............................................... 26

*Zuckerman v. City of New York,*
   49 N.Y.2d 557 [1980]...................................................... 19, 23

**Federal Statutes**

15 U.S.C. § 1692 et seq............................................................. 11

15 U.S.C. § 1692i....................................................................... 11

15 U.S.C. § 1692n...................................................................... 11

**State Statutes**

CGSA § 52-576..............................................................11, 12, 18

CPLR 202................................................................................*passim*

CPLR 206(d).............................................................................. 24

CPLR 207................................................................................................ 25

CPLR 213.................................................................................................. 4

CPLR 213(2) ...................................................................................... 4, 24

CPLR 503(f)........................................................................................... 17

Del. Code Ann., tit. 10, § 8106 ................................................................ 2

Del. Code. Ann., tit. 10, § 8117 ......................................................... 20, 21

**Other Authorities**

1 Weinstein-Korn-Miller, N.Y. Civ. Prac. ¶ 202.04, at 2-61 ....................... 13

Cohen & Karger, The Powers of the New York Court of Appeals
    [3d ed.], § 105, at 627 ...................................................................... 8

# PRELIMINARY STATEMENT

The plaintiff-respondent, Portfolio Recovery Associates, LLC, submits this brief in opposition to the amicus curiae briefs that have been submitted by Professor Michael J. Hutter, Camba Legal Services, Inc., *et al.,* and the New York City Bar Association, *et ano.*, pursuant to the order of this Court dated January 14, 2010, and the AARP, pursuant to the order of this Court dated February 11, 2010.

# SUMMARY OF ARGUMENT

This is an action to collect a debt. The plaintiff is the assignee of Discover Bank, the creditor. Contrary to the implication of the brief submitted by amicus AARP, there is no allegation that the plaintiff has done anything improper or has engaged in any abusive practice. The plaintiff simply commenced this lawsuit to collect a debt in the venue prescribed for doing so by New York law.

The defendant-appellant, Jared King, does not dispute that he incurred the debt (other than finance charges and late fees) and does not claim that he has paid it. Rather, he has defended this action by arguing that the plaintiff does not have standing to assert the claim and that the action is barred by the

statute of limitations.  Amici argue, principally, that New York's "borrowing statute", CPLR 202, requires the application of Delaware's three-year statute of limitations (*see* Del. Code Ann., tit. 10, § 8106), and thus renders the action untimely.  The defendant, who is a New York resident, and who lived in Connecticut at the time he incurred the debt that is the subject of this action, did not raise this argument before the Supreme Court or the Appellate Division.

For the reasons that follow, the plaintiff submits that the Court should not consider the arguments made by amici with respect to the Delaware statute of limitations.  If the Court does consider those arguments, however, the plaintiff submits that the Delaware statute is, on this record, inapplicable, but that, if it is, the action is timely under the tolling provisions of that statute.  The plaintiff further submits that the action is timely under New York law and that the plaintiff has established its standing to assert the claim.  The order of the Appellate Division should, therefore, be affirmed.

# I

## AMICI'S ARGUMENT THAT CPLR 202 REQUIRES THE APPLICATION OF DELAWARE'S THREE-YEAR STATUTE OF LIMITATIONS IS NOT AVAILABLE TO THE DEFENDANT AS THE DEFENDANT NEVER RAISED THAT ARGUMENT BELOW

Amici argue that New York's "borrowing statute", CPLR 202, requires that Delaware's three-year statute of limitations be applied to the plaintiff's claim because the claim accrued in that state. The defendant, however, never argued before the Supreme Court or the Appellate Division that Delaware's statute of limitations should apply on that basis. Rather, the defendant argued for the application of the Delaware statute of limitations solely on the basis of the choice of law provision in the parties' contract.

An appellate court, and, particularly, the Court of Appeals, does not address arguments that were never raised in the courts below (see *Bingham v. New York City Transit Auth.*, 99 N.Y.2d 355, 359 [2003] ["As we have many times repeated, this Court with rare exception does not review questions raised for the first time on appeal"]), particularly where, as here, resolution of the issue depends on facts that could have been litigated below, but were not. The Court should therefore decline to consider the argument made by amici.

3

The defendant's statute of limitations defense, as asserted in his answer (*Appendix at 7-13*), was premised initially on his argument that the plaintiff's claim was barred by New York's six-year statute of limitations (*see* CPLR 213[2]), because the claim had accrued on either the date of his last purchase or the date of his last payment on the account (*see Answer ¶ 14, Appendix at 9*). This argument, which is also made by amici Camba Legal Services and the Association of the Bar, is addressed in Point V, below.

When the defendant's answer raised CPLR 202 as a potential source for the application of a statute of limitations other than New York's, it did so by asserting that CPLR 202 required the application of Connecticut's six-year statute of limitations (*Answer ¶¶ 15-16, Appendix at 9-10*). As the defendant had admitted in his answer, that is where he resided both at the time of the relevant credit card transactions "and even after I cancelled our agreement" (*Answer ¶ 3, Appendix at 7*). Although the defendant mentioned Delaware's three-year limitations period in his answer (*Answer ¶ 17, Appendix at 10*), he did not assert any basis for applying that statute of limitations.

The defendant first proposed a rationale for the application of the Delaware statute of limitations in his opposition to the plaintiff's motion for

4

summary judgment. His argument, however, was not that the plaintiff's claim had accrued in Delaware, as amici assert now. Rather, the defendant's sole argument for the application of the Delaware statute was the choice of law provision in the defendant's agreement with Discover Bank. The defendant stated: "It is the defendant's position that the statute of limitations in this case applies because the contract into which the defendant and Discover Card entered called for the agreement to 'be governed by the laws of the State of Delaware and applicable federal laws'" (*Appendix at 29*). Nowhere in the defendant's opposition to the summary judgment motion does he assert that CPLR 202 requires the application of the Delaware statute of limitations or that the Delaware limitations period should apply for any reason other than the choice of law clause in the contract. His opposition to the plaintiff's summary judgment motion, moreover, makes no factual assertions that would even suggest the need to address any of the factual issues relevant to amici's CPLR 202 argument.

The circumstances in which the Court of Appeals will consider arguments not raised below are generally limited to three: (1) where statutory law has changed during the pendency of the appeal (*see Post v. 120 East End Ave. Corp.*, 62 N.Y.2d 19, 28-29 [1984]); (2) where the new argument could not have been addressed by a "factual showing or legal

5

counterstep that might have been made if the argument had been tendered below" (*see People ex rel. Roides v. Smith*, 67 N.Y.2d 899, 901 [1986]); and (3) where the issue is one of pure statutory interpretation (*see Matter of Richardson v. Fiedler Roofing*, 67 N.Y.2d 246, 250 [1986]). The first and third circumstances are inapplicable here. The only question is whether the second circumstance applies. It does not.

Amici's argument for the application of the Delaware statute of limitations pursuant to CPLR 202 is predicated on the factual assertion that the plaintiff's claim accrued in Delaware. That assertion does not rest, however, on the defendant's residence or his activities. The defendant is a resident of New York, who lived in Connecticut both at the time he entered into the contract at issue and when he incurred the debt that is sought to be collected here. There is nothing in the record that even suggests that he had any connection to the State of Delaware.

Rather, amici's argument depends entirely upon its assertion that the plaintiff's claim arose in Delaware because Discover Bank, which assigned its contractual rights to the plaintiff, incurred the loss in that state. There are no facts in the record before the Supreme Court or the Appellate Division, however, upon which a court could conclude that the plaintiff's claim accrued in Delaware.

6

The facts related to where Discover Bank incurred the loss are material evidentiary facts. Evidentiary facts cannot be considered for the first time on appeal (*see Affronti v. Crosson*, 95 N.Y.2d 713, 720 [2001]). Moreover, they are facts that could have been litigated below, but were not, because the defendant never raised below the argument that amici are making for the first time before this Court.

Discover Bank is not the plaintiff here and is not otherwise a party to this action. As a result, its state of incorporation and principal place of business are not set forth in the complaint. Moreover, since the defendant raised the Delaware statute of limitations only on the basis of the contractual choice of law provision, there was no occasion for the plaintiff to research or introduce into the record at the summary judgment stage any facts related to Discover Bank. As a result, there were no such facts before the Supreme Court. Once the Supreme Court granted the plaintiff's motion for summary judgment, the record was closed and there was no further reason for the plaintiff to inquire into or attempt to incorporate those facts into the record.

This Court has since permitted the plaintiff to introduce into the appendix a copy of Discover Bank's internet home page, which states, insofar as is relevant here, that Discover Bank is chartered in Delaware and that it is "located" at a particular address in Greenwood, Delaware (*see*

7

*Appendix at 64*).  As a general rule, however, the Court will rely on new facts introduced into the record only "where the information so supplied is of an incontrovertible character and in many cases is itself a matter of record" (Cohen & Karger, The Powers of the New York Court of Appeals [3d ed.], § 105, at 627).  As the Court has put it, new facts may be raised where the evidence is "in its nature incontrovertible" (*Ripley v. Storer*, 309 N.Y. 506, 518 [1956]) and "the plaintiff does not deny the existence of [the alleged facts] or claim that the quoted text is inaccurate or incomplete" (*Crawford v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 35 N.Y.2d 291, 299 [1974]).  Here, the relevant facts are neither.

Research has not revealed an instance where the Court's discretion to consider new facts for the first time on appeal has been exercised with respect to a web page.  This is not, moreover, a situation in which the web page is simply an easy way to access information of which the parties are indisputably aware.  The plaintiff here, not being Discover Bank, knows nothing more about Discover Bank's corporate operations than the web page expresses.  In fairness, therefore, the plaintiff's consent to the inclusion of the copy of the web page in the appendix cannot be read as anything more than a recognition that the web page is accurately reproduced.  It does not, in the circumstances here, make the material set forth on the web page

8

"incontrovertible" and a matter of record, such that the Court should take it into consideration in addressing the merits of an argument made for the first time in this Court.   Neither does the statement that Discover Bank is "located" in Delaware establish that its principal place of business is in that state.

The facts upon which amici's argument rests, therefore, were never litigated before either the Supreme Court or the Appellate Division.   They could have been litigated there, if the defendant had raised the argument that amici make now, but he did not.   As a result, this Court should not consider amici's CPLR 202 argument for the first time on appeal.

## II

## THE CHOICE OF LAW CLAUSE DOES NOT DETERMINE THE STATUTE OF LIMITATIONS

As Professor Hutter concedes, the Appellate Division correctly concluded that the general choice of law clause contained in the parties' contract does not determine the applicable statute of limitations and thus is not a basis for the application of the Delaware limitations period here.   The statute of limitations "pertain[s] to the remedy rather than the right (*Martin v. Dierck Equip. Co.,* 43 N.Y.2d 583, 588 [1978]) and is therefore a

"procedural" issue governed by the law of the forum state (*see Tanges v. Heidelberg N. Am.*, 93 N.Y.2d 48, 58-59 [1999]).   As a result, absent evidence of the parties' specific intent to the contrary, the statute of limitations is not governed by a choice of law clause (*see Education Resources Inst., Inc. v. Piazza*, 17 A.D.3d 513 [2d Dept 2005]).   There is no evidence of such intent here.

## III

### SUMMARY JUDGMENT WAS PROPERLY GRANTED BECAUSE THE RECORD, EVEN AS SUPPLEMENTED IN THIS COURT, FAILS TO ESTABLISH THAT THE PLAINTIFF'S CLAIM ACCRUED IN DELAWARE.

Even if the Court considers the arguments made by amici, the order of the Appellate Division should be affirmed because the defendant failed to establish that the plaintiff's claim accrued in Delaware, as it must before Delaware's statute of limitations can apply pursuant to CPLR 202.

The statute of limitations that is borrowed under CPLR 202 is the statute of limitations of the state in which the claim accrued. Under CPLR 202, a claim accrues at "the time when, and the place where, the plaintiff first had the right to bring the cause of action" (*Global Financial Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 [1999]).   Applying this definition here, the claim accrued either in New York or Connecticut, since, under the

federal statute regulating consumer debt collections, those are the only states in which this action could have been commenced. Consequently, the statute of limitations to be borrowed under CPLR 202, if any, is Connecticut's six-year statute of limitations (*see* CGSA § 52-576), not Delaware's three-year statute. Even if the federal statute were inapplicable, however, there is no evidentiary basis upon which to conclude that the claim accrued in Delaware and, consequently, no basis in the record to "borrow" Delaware's statute of limitations.

## A. Because the Plaintiff's Claim is Governed by the Fair Debt Collection Practices Act, it Accrued in New York or Connecticut.

The Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) governs various aspects of the consumer debt collection process. It pre-empts state laws that are inconsistent with it (*see* 15 U.S.C. § 1692n; *Martinez v. Albuquerque Collection Services*, 867 F.Supp. 1495, 1501 [D.N.M. 1994]). Under that statute, an action to collect a consumer debt must be brought "in the judicial district or similar legal entity -- (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action" (15 U.S.C. § 1692i). Even suggesting to the consumer that the action could be brought elsewhere would be a violation of federal law (*see Wiener v. Bloomfield*, 901 F.Supp. 771, 775 [S.D.N.Y. 1995]).

11

Here, the defendant lived in Connecticut at the time he entered into the contract with Discover Bank (*see Answer, ¶ 3, Appendix at 7*) and he lived in New York at the time the action was commenced (*see Answer, ¶ 2, Appendix at 7*). Under the Fair Debt Collection Practices Act, therefore, this action could not have been brought in Delaware or, in fact, in any state other than New York or Connecticut.   Since a claim accrues for purposes of CPLR 202 at "the time when, and the place where, the plaintiff first had the right to bring the cause of action" (*Global Financial Corp. v. Triarc Corp.,* 93 N.Y.2d at 528) the plaintiff's claim accrued in one of those states. The action is timely under New York's six-year statute of limitations (*see Point V, below*). The only statute of limitations that can be borrowed under CPLR 202, Connecticut's, also provides for a six-year limitations period (*see* CGSA § 52-576). Whichever statute of limitations applies, therefore, the action is timely and the plaintiff's motion for summary judgment was properly granted.

**B.   The Plaintiff's Claim Did Not Accrue in Delaware.**

Amici's argument that the claim accrued in Delaware because Discover Bank is incorporated in that state and is "located" there, is predicated on the Court's statement in *Global Financial* that a claim accrues "where the plaintiff resides and sustains the economic impact of the loss",

12

which is typically the state in which the plaintiff is incorporated or has its principal place of business (93 N.Y.2d at 529-530). This argument is incorrect when applied to a consumer debt collection case such as this, for two reasons. First, the argument is inconsistent with the legislative intent of CPLR 202 as the Court determined it in *Global Financial*. Second, the Court's acceptance of this argument would lead precisely to the kind of involved and uncertain factual inquiry that the Court sought to avoid in *Global Financial*.

The CPLR is construed in accordance with the intent of the Legislature (*see Jensen v. General Elec. Co.*, 82 N.Y.2d 77, 88 [1993]; *Rosenfeld v. Hotel Corp. of America*, 20 N.Y.2d 25, 29 [1967]). As the Court stated in *Global Financial*, "[i]n using the word "accrued" in CPLR 202 there is no indication that the Legislature intended the term 'to mean anything other than the generally accepted construction applied throughout CPLR Article 2 - the time when, and the place where, the plaintiff first had the right to bring the cause of action' (1 Weinstein-Korn-Miller, N.Y. Civ. Prac. ¶ 202.04, at 2-61)" (93 N.Y.2d at 528). Where that place is not the state in which the lender is incorporated or headquartered, as in a case such as this that is governed by the Fair Debt Collection Practices Act, it would be inconsistent with the Legislature's intent in enacting CPLR 202 to

13

construe it as requiring the "borrowing" of the statute of limitations of the lender's state. Thus, here, the only conclusion consistent with the legislative intent of CPLR 202 is that, if there is to be any borrowing at all, the statute of limitations to be borrowed is Connecticut's six-year statute of limitations, since that is the state in which the defendant admittedly resided at the time he entered into the contract with Discover Bank.

In addition to being inconsistent with the legislative intent of CPLR 202, a decision that the statute of limitations in a consumer debt collection case should be borrowed from the state in which the lender is incorporated or headquartered would lead directly into the factual quagmire that the Court sought to avoid in *Global Financial*. The primary argument the Court rejected in *Global Financial* was that the place in which a contract claim accrues is determined by a "grouping of contacts" analysis. Instead, the Court held that the focus must be on the place where the plaintiff suffered the economic loss. The Court reached this conclusion, in large measure, because had it adopted the "grouping of contacts" analysis urged by the parties, the trial courts would have been burdened with lengthy factual inquiries into what is essentially a procedural matter, the applicable statute of limitations. As the Court stated, quoting, in part, from *Insurance Co. of N. Amer. v. ABB Power Generation, Inc.* (91 N.Y.2d 180 [1997]):

14

> CPLR 202 is designed to add clarity to the law and to provide the certainty of uniform application to litigation. This goal is better served by a rule requiring the single determination of a plaintiff's residence than by a rule dependent on a litany of events relevant to the 'center of gravity' of a contract dispute.

(93 NY2d at 530 [citations and internal quotation marks omitted].)

In the consumer debt collection context, focusing on the lender's location will never provide the certainty in the application of CPLR 202 that the Court sought in *Global Financial*. The desired certainty will result only if a consumer debt claim accrues for purposes of CPLR 202 where the claim can be brought under the Federal Debt Collection Protection Act, which is the state in which the debtor resided when the agreement was made or the action was commenced.

A consumer lender is generally a large corporate entity, with facilities in many locations. Such an entity may be incorporated in one state, have its corporate headquarters in another, its lending operation in a third, its receivables collected in a fourth and its banking relationships in a fifth. Relying on the state in which the plaintiff is incorporated and headquartered as being "usually" where the economic loss is incurred (93 N.Y.2d at 529) is thus of limited value in this context. Instead, in order to address *Global Financial* in those cases in which the statute of limitations is potentially dispositive, the parties will need to present evidence with respect to that

15

issue, thus requiring them to inquire into and present detailed factual information regarding the operations of the lender.  The result will be a costly and time-consuming diversion from the real issues in the case.

While clarity could be achieved by holding that a consumer debt collection claim accrues in the state in which the lender is incorporated, doing so would subject the real, practical, economic issue of the timeliness of a claim to determination on the basis of what is, essentially, a historical anachronism.  In today's financial world, the state of an entity's incorporation is not necessarily the state in which it operates.  The state of incorporation is significant, in practical terms, only with respect to the organizational rules the entity is required to follow.  It has only a limited impact on the relationship between the lender and the borrower and does not in any way define the state in which the lender "suffers the economic loss" when the debtor fails to pay.  To predicate the statute of limitations on what is, for purposes of the transaction between the lender and the debtor, an insignificant legal fiction is not the way to assess the location of that economic impact, as *Global Financial* requires.

If, as *Global Financial* suggests, a bright line rule is required, that rule can be provided in the context of a consumer debt collection action only by borrowing the statute of limitations of the states in which the claim can be

16

brought – where the borrower resided at the time he or she entered into the agreement or when the action was commenced.  In this way, the parties know with certainty, and without discovery or other extensive litigation proceedings, which statute of limitation should apply.[1]

Such a rule would also be consistent with New York's public policy, established by CPLR 503(f), of requiring that consumer debt collection actions be litigated in the place where the debtor resides when the action is commenced.  If New York wants actions against New York debtors to be commenced in New York, as it does, the Court should not apply New York's borrowing statute in a way that encourages plaintiffs to sue where the borrower no longer resides, just to avoid that statute.

## C.   The Record Does Not Establish a Basis for Borrowing the Delaware Statute of Limitations.

If the Court does not apply a strict rule based on the requirements of the Fair Debt Collection Practices Act, it is impossible to determine on this record where Discover Bank "suffered the economic loss" at issue here. There is simply no evidence, either in the record that was made before the Supreme Court or the Appellate Division, or even considering the additional

---

[1] The Court's conclusion in *ABB* that "[i]t matters not that jurisdiction is unobtainable over a defendant in the foreign jurisdiction" (91 N.Y.2d at 188) does not suggest a contrary analysis.  *ABB* was decided before *Global Financial*, was not a consumer debt collection action and involved a California dispute between two New York non-resident entities where the only connection to New York was a forum selection clause.

17

submission before this Court, from which it can be concluded that the plaintiff's claim accrued in Delaware. If anything, the available evidence suggests that the claim accrued in New York or Connecticut, in either of which the applicable limitations period is six years (*see* CGSA 52-576). Accordingly, the Supreme Court properly granted the plaintiff's motion for summary judgment and the Appellate Division correctly affirmed that order.

Amici rely for the evidentiary facts necessary to support their argument as to where the plaintiff's claim accrued on the assumption that those facts are undisputed or, in the case of amicus Camba, on the credit card statements that are in the record, and, specifically, the address set forth on those statements for the defendant to make his payments (*see Appendix at 23-26, 34-40 [Camba's Brief at 8]*). These documents, however, say nothing about Discover Bank's place of incorporation or principal place of business; they are simply addresses to which payments are to be mailed. Thus, there was nothing before the Supreme Court or the Appellate Division that established the relevant facts.

The only information before this Court that arguably provides a basis upon which to conclude that the plaintiff's claim accrued in Delaware is found in the copy of Discover Bank's internet home page that was permitted to be added to the appendix by this Court (*see Appendix at 64*), which states

18

that Discover Bank is chartered in Delaware and is "located" at a particular address in that state. The web page, however, even if it had been before the Supreme Court and the Appellate Division, is insufficient to satisfy the defendant's burden on the plaintiff's motion for summary judgment, of raising a triable issue of fact (see *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 324 [1986]).

The web page is an out-of-court statement and thus, to the extent that it is offered for its truth, is hearsay (see *Doin v. Champlain Bluffs Dev. Corp.*, 68 A.D.3d 1605 [3d Dept 2009]; *Applehead Pictures LLC v. Perelman*, 55 A.D.3d 348 [1st Dept 2008]). A party such as the defendant who is seeking to defeat a motion for summary judgment must submit "evidentiary proof in admissible form" or "demonstrate [an] acceptable excuse for his failure to meet the strict requirement of tender in admissible form" (*Friends of Animals, Inc. v. Associated Fur Mfrs., Inc.*, 46 N.Y.2d 1065, 1067-1068 [1979]). Hearsay is not sufficient to defeat summary judgment (see *Zuckerman v. City of New York*, 49 N.Y.2d 557, 560 [1980]).

As a result, the web page contained in the appendix is not sufficient, in itself, to raise a triable issue of fact in opposition to the plaintiff's motion for summary judgment. Here, moreover, the document is not a statement by the plaintiff, but by Discover Bank, which is not a party to this action. As a

19

result, it cannot be considered an admission that would obviate any hearsay problem. Since even under the standard amici would have the Court adopt for applying the CPLR 202 the lender's place of incorporation must be established, the defendant has failed to carry his burden here. Thus, the Supreme Court correctly granted the plaintiff's motion for summary judgment, and the Appellate Division correctly affirmed that result.

## IV

## EVEN IF THE DELAWARE STATUTE OF LIMITATIONS APPLIES, THIS ACTION IS NEVERTHELESS TIMELY UNDER THE TOLLING PROVISIONS OF THAT STATUTE

When a statute of limitations is "borrowed" pursuant to CPLR 202, the tolling provisions applicable to that statute of limitations are borrowed as well (*see Matter of Smith, Barney, Harris, Upham & Co. v. Luckie*, 85 N.Y.2d 193, 207 [1995]). The Delaware Code contains such a toll (*see* Del. Code. Ann., tit. 10, § 8117). The statute provides as follows:

> If at the time when a cause of action accrues against any person, such person is out of the State, the action may be commenced, within the time limited therefor in this chapter, after such person comes into the State in such manner that by reasonable diligence, such person may be served with process. If, after a cause of action shall have accrued against any person, such person departs from and resides or remains out of the State, the time of such person's absence until such person shall have returned into the State in the manner provided in this section, shall not be taken as any part of the time limited for the commencement of the action.

20

Thus, in Delaware, "[i]t is settled law that the purpose and effect of Section 8117 is to toll the statute of limitations as to defendants who, at the time the cause of action accrues, are outside the state and are not otherwise subject to service of process in the state.  In those circumstances, the statute of limitations is tolled until the defendant becomes amenable to service of process" (*Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Company, Inc.*, 866 A.2d 1, 18 [2005]; *see Brossman v. Federal Deposit Ins. Co.*, 510 A.2d 471, 472 [1986]; *Capelle v. Trinity M. E. Church*, 5 F.Cas. 38, 39 [D.Del. 1875]).

Here, the limited evidence in the record with respect to the defendant's residence establishes only that he was a Connecticut resident at the time he entered into the credit agreement with Discover Bank and that he was a New York resident at time this action was commenced.  The defendant makes two statements in his answer with respect to his residence. First, he admits that his residence at the time of the service of the complaint is, as alleged in the complaint, in Coxsackie, New York.  He then alleges, however, that none of his transactions with Discover Bank occurred while he was a resident there. Rather, he states: "The contract was created in New Haven, Connecticut, where I was a resident when Discover Card and I

entered into our credit card agreement, throughout the period of our agreement and even after I cancelled our agreement" (*see Appendix at 7*). The only reasonable conclusion that can be drawn from this is that the defendant was never a resident of Delaware and, thus, the action was timely when commenced in New York because under Delaware's tolling provision, the limitations period never began to run.

The fact that the defendant became a resident of New York at some point after the debt was incurred but before this action was commenced does not lead to a different conclusion. Although the tolling provisions of a foreign statute of limitations applicable in New York pursuant to CPLR 202 are irrelevant where the plaintiff is amenable to suit in New York (*see GML, Inc. v. Cinque & Cinque, P.C.,* 9 N.Y.3d 949 [2007]), there is nothing in the record from which it can be determined when the defendant moved from Connecticut to New York. Moreover, "[a] defendant who concedes non-residency in New York is presumed to have been absent from the State and, therefore, is required to prove his or her presence here in order to avoid New York's tolling statute" (*Childs v. Brandon,* 60 N.Y.2d 927, 929 [1983]). The defendant did not satisfy this burden here and it is, in fact, impossible to determine on this record when the defendant became a resident of the State of New York.   As a result, *Insurance Co. of N. Am. v. ABB Power*

22

*Generation, Inc.* (91 N.Y.2d 180 [1997]), upon which amicus Camba relies, is inapposite.

Put simply, on its motion for summary judgment here, the plaintiff carried its burden of establishing its entitlement to judgment as a matter of law by demonstrating that the debt was due and that the defendant failed to pay it (*see Votta v. Votta Enterprises, Inc.*, 249 A.D.2d 536 [2d Dept 1998]; *North Fork Bank v. Hamptons Mist Mgt. Corp.*, 225 A.D.2d 595 [2d Dept 1996])). "[W]here the moving party has demonstrated its entitlement to summary judgment, the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for his failure to do so" (*Zuckerman v. City of New York*, 49 N.Y.2d 557, 560 [1980]).

Thus, contrary to Camba's argument, the plaintiff was under no obligation to establish the timeliness of its claim. Rather, "the burden of proving the affirmative defense of the Statute of Limitations rests on the party invoking it" (*Doyle v. Bascom*, 38 A.D.2d 645 [3d Dept 1971]). Because of the presumption of non-residency (*see Childs v. Brandon*, 60 N.Y.2d 927, 929 [1983]), the burden was on the defendant who relies on the Delaware statute of limitations to establish that it has run. The defendant failed to carry that burden here, because the defendant failed to establish that

the tolling provisions of the Delaware statute of limitations do not apply.  As a result, even if the Delaware statute of limitations applies, the order of the Appellate Division should be affirmed.

## V

### THE CLAIM WAS TIMELY UNDER NEW YORK'S SIX-YEAR STATUTE OF LIMITATIONS

Camba and the Association of the Bar argue that the action is untimely, without regard to Delaware law, because it was not commenced within New York's six-year statute of limitations for contract actions, CPLR 213(2) (*see Camba's Brief at 13, n. 14; Brief of the Association of the Bar at 15*).  This action was commenced on April 11, 2005 (*see Appendix at 18*). In support of its motion for summary judgment, the plaintiff asserted that the cause of action accrued on August 31, 1999 (*see Appendix at 19*).

CPLR 206(d) provides that "[i]n an action based upon a mutual, open and current account, where there have been reciprocal demands between the parties, the time within which the action must be commenced shall be computed from the time of the last transaction in the account on either side." Neither this Court, nor any other New York appellate court appears to have addressed the applicability of this provision to an action on a credit card debt. This Court has concluded, however, that an action by a merchant on a

store account does constitute an action on "a mutual, open and current account" (*see Green v. Disbrow*, 79 N.Y. 1 [1879]). Thus, where "there was a 'running account' involved herein, the last transactions in the course of which took place within six years of the commencement of the action, there is no merit to [the statute of limitations] defense" (*Rubin v. Dairymen's League Co-operative Ass'n*, 259 App.Div. 23, 26 [3d Dept 1940], affd 284 N.Y. 32 [1940]). A credit card account is no different.

Here, the record reflects that the defendant's account was open until August 31, 1999 (*see Appendix at 25*) and that there were transactions in the form of finance charge with respect to that account in May, June, July and August of that year, at which time the account was closed (*see Appendix at 23, 25, 40, 42*). The action was, therefore, timely under New York's statute of limitations when it was commenced on April 11, 2005.

In any event, CPLR 207 provides that "[i]f, when a cause of action accrues against a person, he is without the state, the time within which the action must be commenced shall be computed from the time he comes into or returns to the state." Here, the defendant has admitted that he was a resident of Connecticut "throughout the period of our agreement and even after I cancelled our agreement" (*see Appendix at 7*). "A nonresident's absence from the State is implied from his residence without the State, and

25

he has the burden of proving his residence in the State for a sufficient time to bar the action" (*Beresovski v. Warszawski*, 28 N.Y.2d 419, 426 [1971] [internal quotation marks omitted]; *see Childs v. Brandon*, 60 N.Y.2d 927, 929 [1983]). The defendant is thus presumed to have remained "without the state" until sometime immediately prior to the commencement of this action. As a result, New York's statute of limitations is not a defense.

## VI

### THE PLAINTIFF ESTABLISHED ITS STANDING AS ASSIGNEE OF THE CREDITOR

Camba and the Association of the Bar argue that even if the action is timely, summary judgment should have been denied because the plaintiff failed to establish its standing as the assignee of Discover Bank to prosecute this claim (*see Camba's Brief at 15, n. 16; Brief of the Association of the Bar at 24*). While it is true that where the standing of an assignee is challenged, the assignee cannot prevail without establishing its status (*see Wells Fargo Bank Minnesota N.A. v. Mastropaolo*, 42 A.D.3d 239 [2d Dept 2007]), the plaintiff did so here. The affidavits of both the representative of Discover Bank and the representative of the plaintiff establish the assignment (*see Appendix at 27-28*). Although neither affiant states the source of her information, it is implicit in the documents that the source of

their information is the record maintained by Discover Bank with respect to the defendant's account. Thus, the affidavits mirror, in essence, the requirements that were established in May, 2009, subsequent to the plaintiff's motion for summary judgment here, by the Honorable Fern A. Fisher, Deputy Chief Administrative Judge, for the New York City Civil Court (*see Directives and Procedures, Default Judgments on Purchased Debt, available at http://nycourts.gov/courts/nyc/civil/directives.shtml*). Critically, the defendant does not controvert the facts recited in these affidavits. Contrary to the argument made by amici, moreover, the existence of the assignment can be proved by parol evidence, without production of the document (*see Sprague v. Hosmer*, 82 N.Y. 466, 471 [1880]).

## CONCLUSION

The Court should not consider amici's CPLR 202 argument. If it does, however, the argument must be rejected.   The plaintiff's claim did not accrue in Delaware and, even if it did, the action is timely under the tolling provisions of Delaware law.  The action is also timely under New York law and the plaintiff established its standing to assert the claim.  The order of the Appellate Division should, therefore, be affirmed.

Dated:  White Plains, New York
            February 24, 2010

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: _Robert A. Spolzino_
            Robert A. Spolzino, Esq.

Attorneys for Plaintiff/Respondent
Portfolio Recovery Associates, LLC
3 Gannett Drive
White Plains, NY  10604
(914) 323-7000

# EXHIBIT 3

RECEIVED

SEP 0 8 2009

BY:--------------------

## NEW YORK STATE COURT OF APPEALS

---

Portfolio Recovery Associates, LLC.

Plaintiff-Respondent,

-against-

Jared King

Defendant-Appellant

---

To Be Argued by:
Malen & Associates, p.c.
Attorneys for Plaintiff

Requested time: 10 minutes

A.D No.: 503411

---

# RESPONDENT'S BRIEF

---

Timothy J. Murtha, Esq.
Attorney for Plaintiff-Respondent
Malen & Associates, p.c.
123 Frost Street
Westbury, NY 11590
(516) 479-5952

1

# I) TABLE OF CONTENTS

                                                                    Page No.

I)      Table of Contents………………………………….          2

II)     Table of Citations  ……………………………….          4

III)    Preliminary Statement………………………………          6

IV)     Statement of Facts…………………………………..          9

V)      Standard of Review………………………………….          12

VI)     Questions Presented on Appeal………………………          14

VII)    Procedural History…………………………………..          17


VIII) Response to Defendant's Issues Raised…………….18

        1) Plaintiff's action is not barred by the
        Statute of Limitations………………………………18
                i) Action not barred by Statute of Limitations
                ii) Forum Non-Conveniens…………………          19
                iii) Delaware law is not applicable…………..          20
                iv) Statute of Limitations is procedural…………....20
                v) Connecticut Statute of Limitations……………..21
                vi) CPLR 202………………………………...22

        2)Plaintiff provided a clear chain of title
        establishing standing to sue………………………..23

        3) Trial Judge Correctly Granted Summary
                Judgment and Appellate Division correctly upheld the decision
                ………..       21
                a) Plaintiff-Respondent established account stated……..   26
                refused to address arguments………………  28
                b) Plaintiff provided evidence account

was assigned from original creditor.......... 24
d) Defendant failed to establish genuine
issues of fact.......................................29
4) The Supreme Court and Appellate Court decisions  were legally
sufficient. .............................................,30
a) No abuse of discretion.......................31
b) New issues raised by Appellant-Defendant.33
c) Equal Protection...............................33
d) Motion to Reargue is not appealable ........34


IX)  Conclusion  ......................................................35

# II) Table of Citations

|  | Page |
|---|---|
| **1)** *Martin v Dierck Equip. Co., supra,* 43 NY2d, at 588 | 9 |
| 2) *Eisman v. State,* 70 N.Y 2d. 175, 187 (1987). | 13 |
| 3) Landa v. Dratch, 2007 NY Slip Op 8998; 2007 N.Y. App. Div. Lexis 11858 | 13 |
| 4) CGS 52-576 | 15, 21 |
| 5) National Bank & Trust Co. v. Banco De Vizcaya, 72 NY2d 1005,1007 | 19 |
| 6) Islamic Republic v. Pahlavi, 62 NY2d 474, 478-479. | 20 |
| 7) Martin v. Julius Dierck Equip. Co., 43 N.Y.2d 583 | 21 |
| 8) Doctors Council v. New York City Employees Retirement System, 71 NY2d 669 | 22 |
| 9) Uniformed Firefighters Association Local 94 v. Beekman, 52 NY2d 463. | 22 |
| 10) Stafford v. Inernational Harvester, 668 F2d 152, 153 | 22 |
| 11) Central Vermont R. Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 867, 59 L.Ed. 1433 | 23 |
| 12) Education Resources Inst., Inc. v. Piazza, 17 AD3d 513, 513, 794 N.Y.S.2d 65 [2d Dept 2005] | 23 |
| 13) New York State Association of Nurses v. Novello, 753 NYS2d 615,617 (3rd Dept). | 24 |
| 14) Citibank (S.D), N.A. v. Martin, 2005 NY Slip Op 25536 | 24 |
| 15) Johnson v. Lutz, 253 NY 124, 170 N.E. 517 | 25 |
| 16) Andrew C. Imbrie, v. Schlicht Combustion Process Company, . 130 A.D. 675; 115 N.Y.S. 333; 1909 N.Y. App. Div. LEXIS 278............ | 26 |
| 17) *Zuckerman v City of New York,* A.D.2d 791 | 26 |

4

18) *Romano v St. Vincent's Medical Center of Richmond*, 178 AD2d 467, 470, 577 N.Y.S.2d 311 [2d Dept 1991]; ...................................................................................................26

19)*Tessier v New York City Health & Hospitals Corp.*, 177 AD2d 626, 576 N.Y.S.2d 331 [2d Dept 1991]).      26

20)     Chase Manhattan Bank v. John Hobbs, 94 Mis. 2d 780; 450 N.Y.S. 967.      25

21)  G.W. White & Son v Gossier, 219 A.D. 2d 866 (4th Dept 1995)      27

22) Fink, Weinberger, Fridman, Berman & Lowell P.C., v Peterrides      27
     80  A.D. 2d 781 (1st Dept 1981, appeal dismissed, 53 N.Y.2d 102

23)  Shea & Gould v. Burr, 194 A.D.2d 369 (1st Dept 1993)      28

24)Feder v. Fortunoff, Inc et al., 123 Misc.2d  857 (Sup Ct Nassau County 1984). 28

25) Foley v. Roche, 68 A.D. 2d 588, 418 N.Y.S. 2d 588, (1st Dep't 1979).      29

26) Barclays Bank of New York v. Sokol, 128 A.D. 2d 492, 512 N.Y.S. 2d 419 (2nd Dept. 1987).      31

27) Lefcourt v. Sea Crest Hotel and Motor Inn, 54 Misc. 376; 282 NYS 2d 896      33

28)  Men's World Outlet v. Steinberg, 101 A.D. 2d 854; 476 N.Y.S. 2d 173.      34

29) People v. Lynch, 195 Misc. 2d 814.............................................................................35

30) Mayer v. National Arts Club, 192 AD 2d 863      35

STATE OF NEW YORK
COURT OF APPEALS

---

PORTFOLIO RECOVERY ASSOCIATES, LLC.

Plaintiff-Respondent,

-against-

JARED KING,

Defendant-Appellant

---

## BRIEF FOR RESPONDENT

---

## III) Preliminary Statement

Defendant-Appellant Jared King defaulted on a revolving credit agreement with Discover Card. Plaintiff-Respondent has produced sufficient evidence to establish an account stated and a breach of contract. Defendant-Appellant has asserted a defense based upon the Statute of Limitations. However, Defendant-Appellant has not provided an accurate assessment of the facts in either his answer in the underlying action or in his opposition to the Plaintiff-Respondent's motion for Summary Judgment. Defendant-Appellant's primary defense is that the action is barred by the Statute of Limitations. Defendant-Appellant

claims at different times in his appeal that the Connecticut Statute of Limitations is applicable (R. 23) and/or that the Delaware Statute of Limitations is applicable (R. 23). The claim that the Connecticut Statute of Limitations should be applied is irrelevant as Connecticut and New York both have the same Statute of Limitations period for a breach of contract and Defendant-Appellant was served within the six year limitations period. Defendant-Apellant has provided no evidence to the contrary. Defendant does not point to another entity who claims ownership of the account. The Delaware Statute of Limitations does not apply since New York law applies as the forum state.   Defendant-Appellant made a payment on this account on April 19, 1999 in the amount of $35.17. Defendant-Appellant was served on April 11, 2005 within the applicable six years pursuant to the New York Statute of Limitations.

Defendant-Appellant at no time after receiving the account statements objected to any portion of the amount due and owing or any of the charges listed. Defendant-Appellant was then afforded the opportunity to submit an answer to the action. Defendant-Appellant has attempted to evade payment on the account (which he admits having) based upon his

misapplication of the law and the facts. Additionally, Defendant-Appellant has delayed the action with a series of denials. Plaintiff-Respondent submitted evidence of a revolving credit card agreement. Defendant-Appellant denies the account was assigned despite the fact that Plaintiff-Respondent annexed an affidavit of assignment (R.27) which included defendant's name and account number. Plaintiff-Respondent has provided prima facie evidence of ownership. Defendant-Appellant failed to rebut this with any evidence that another entity owns this account.

However, there are numerous omissions from Defendant-Appellant's statement of facts. For instance, the mailing address listed on Defendant-Appellant's statements was correct at the time of mailing. Defendant admits he resided at this address. Therefore, Plaintiff-Respondent has established prima facie presumption of receipt and retention of statements. Defendant-Appellant himself even confirms in his answer (R.23) that he resided at the address that the statements were mailed to. Defendant admits having a credit card with Discover Card. Defendant received monthly billing statements. At no point did the Defendant-Appellant dispute the bills as required by Federal Law. Defendant then makes conclusory allegations regarding standing.

8

Plaintiff has produced business records showing the account was assigned to the Plaintifff-Respondent. Defendant failed to rebut this presumption.

Moreover, the action was commenced within the Six Year Statute of Limitations required in New York. Under common law rules the law of the forum governs matters of procedure, while matters of substantive law fall within the course charted by choice of law analysis. In New York, Statutes of Limitation are generally considered procedural because they are "[v]iewed as pertaining to the remedy rather than the right".[1]

# IV) STATEMENT OF FACTS

Defendant-Appellant opened a credit card account with Discover Bank in April of 1989. (R.37)   Defendant-Appellant defaulted on a revolving credit agreement in March of 1999   with the Plaintiff-Respondent's Assignor, Discover Bank.   Defendant-Appellant only disputed the account when he submitted an answer  after he learned that an action had been commenced with the Court. Defendant-Appellant has at no time disputed the address at which

---

[1] ( *Martin v Dierck Equip. Co., supra,* 43 NY2d, at 588

statements were mailed. Defendant-Appellant admits living at that address. Defendant-Appellant admits the fact that he had an account with Discover Bank. Defendant Appellant's only dispute as to the amount owed is that part of the debt constitutes "late fees" and other non-interest fees (presumably referring to the over-limit fees charged).   (R.20) Defendant-Appellant was properly served at his address on April 11, 2005. (R. 18-19).

Upon being served with the summons and complaint, Defendant-Appellant submitted an answer with numerous fictional affirmative defenses and three frivolous counterclaims. (R. 20-26). Plaintiff-Respondent submitted a motion for summary judgment and motion to dismiss Defendant-Respondent's Counterclaim (R.27-38). The Supreme Court granted Plaintiff-Respondent's motion after opposition and a reply was submitted. (R.68). The Court deemed that there were "no material issues of fact requiring a trial". Defendant-Appellant had an opportunity to oppose the motion. There was no abuse of discretion by Judge George Pulver nor did Defendant-Appellant even claim such in this appeal at the Appellate Division.

In March of 2006, Plaintiff-Respondent followed up with the Court and was advised that the motion was granted and that Plaintiff-Respondent would receive a copy. Plaintiff-Respondent did not receive a copy of the Court's

10

decision until January, 2007 therefore delaying the Plaintiff's ability to enter the judgment.

Plaintiff-Respondent attempted to file the Order and serve a Notice of Entry as per the Court's Order. (R.68). Plaintiff-Respondent was advised that the Court would not accept it as there was "white-out" on the decision. Plaintiff-Respondent submitted another copy of the decision dated January 22, 2007 for the Court without any "white-out". In the interim, Defendant-Appellant had submitted an Appeal to the Appellate Division of the Third Department to Re-argue the motion returnable on February 16, 2007 (R.78-86). Plaintiff-Respondent's opposition (which Defendant-Appellant neglected to include in the copy of the record) and Defendant-Appellant's reply (R.93-97) were submitted for the motion to reargue. The Court denied Defendant-Appellant's motion. (R.98-101).

Pursuant to Plaintiff-Respondent's communications in March, 2007 with the Court, Plaintiff-Respondent was advised to submit a New Proposed Order with the changes requested by the Court. Plaintiff-Respondent thereafter received a signed order from the Judge dated April 24, 2007. (A copy of this was served on Defendant-Appellant, but Defendant-Appellant neglected to include this document in his "copy of the record"). As such, to complete the Court's record, please find a copy hereto annexed as Exhibit "A". Plaintiff-

Respondent additionally filed a copy of the Court's stamped decision and filed a Notice of Entry on Defendant-Appellant. (Defendant-Appellant failed to include a copy of this to his incomplete "copy of the record"). Additionally to complete the record please find a copy of the Notice of Entry annexed hereto as Exhibit "B". Plaintiff-Respondent understands there was some confusion with the entry of the Court's Order. In any case Defendant-Appellant's appeal was not perfected until April 2008, a year after the amended order was signed.

## V) The Standard of Review

Pursuant to CPLR 5501(b), the Court of Appeals reviews questions of law and questions of fact only where the Appellate Division reversed or modified a decision. In this case, the Appellate Division did not reverse or modify the trial court's decision. Defendant-Appellant in this action continues to rely upon his invalid affirmative defenses raised before the Supreme Court Justice. In the process of deciding an appeal, appellate courts must review the claims of the appellant that the court from which the appeal was taken made certain errors affecting the order or judgment on appeal. A *trial de novo* or new trial is usually ordered by an appellate court when the original trial court failed to make a

determination in a manner dictated by law.[2] Defendant-Appellant fails to state clearly what errors the Supreme Court Justice and the Appellate Court Justice made other than disagreeing with the Appellant-Defendant. In this case, there is no question that the trial court decided in a manner dictated by law. Plaintiff-Respondent had properly provided prima facie evidence of an account stated. Defendant-Appellant failed to raise any valid defenses to the underlying action that would merit denial of Plaintiff-Respondent's motion for summary judgment.

In an action similar to this case, wherein an attorney had sought legal fees by sending billing invoices to the Defendant, the Court held that Plaintiff had made a prima facie entitlement to Summary Judgment. The Court in *Landa v. Dratch*[3] held that

"the plaintiff established his prima facie entitlement to summary judgment on his first cause of action for an account stated in the sum of $28,275.00 by tendering invoices for services rendered .., setting forth the rate and billable hours and by establishing that the defendant duly approved such invoices and made a partial payment thereon. In opposition, the defendant failed to raise a triable issue of fact."

In this case, Plaintiff-Respondent has provided evidence of billing statements sent to the Defendant-Appellant's correct address. Defendant-Appellant never disputed the account statements until a legal action was

---

[2] See *Eisman v. State*, 70 N.Y 2d. 175, 187 (1987).
[3] 2007 NY Slip Op 8998; 2007 N.Y. App. Div. Lexis 11858

13

commenced some five years after the billing statements and collection attempts had proved fruitless. Defendant-Appellant had the credit agreement with Discover Bank for over ten years, receiving statements and making payments in accordance with the terms of the card member agreement. Defendant-Appellant has failed to raise one triable issue that would merit reversal of the Supreme Court and the Appellate Division.

## VI) QUESTIONS PRESENTED ON APPEAL

**Did the Supreme Court correctly grant Plaintiff-Respondent's motion for summary judgment where Defendant-Appellant failed to establish a statute of limitations defense?**

Yes, Defendant-Appellant claims to have established a Statute of Limitations defense. Defendant-Appellant's claim is that Discover Card is incorporated in Delaware and that therefore the Delaware Statute of Limitations should apply. However, Discover Card Bank did not own the account at the inception of this action and Plaintiff, Portfolio Recovery Associates, LLC. is licensed to do business in New York. Defendant-Appellant admits that he is a resident of the State of New York at the commencement of this action. The Statute of Limitations is a procedural statute. There is no basis for this action to be commenced in Delaware or for the Delaware Statute of Limitations to apply.

14

Even if the Court were to determine that the Connecticut Statute of Limitations is applied as Defendant-Appellant was at the time of last payment a Connecticut resident, the action would not be barred by the six year limitations period in Connecticut.[4]

Defendant-Appellant fails to establish any basis in fact or law as to how the Delaware Statute of Limitations would be applicable to this action.

### 2. Did the Supreme Court and the Appellate Division correctly find that Plaintiff-Respondent has standing to sue?

**Yes,** Plaintiff-Respondent in the underlying cause of action has standing to sue; Plaintiff-Respondent provided a signed affidavit from the original creditor Discover Bank which clearly stated that the account had been sold to Portfolio Recovery Associates, LLC. (R.38). Thus satisfying, Plaintiff's prima facie evidence of it's standing to sue. Defendant has failed to come forward with any evidence to rebut the Plaintiff's standing.

### 3. Did the Trial Judge Correctly Correct Grant Summary        Judgment where Defendant-Appellant admitted to default on a revolving credit

---

[4] Written contact, or on a simple or implied contract: 6 years, (CGS 52-576)

15

agreement and Plaintiff-Respondent provided sufficient evidence to award judgment?

Yes, Plaintiff-Respondent provided sufficient evidence to establish an account stated and assignment of the account. Defendant-Appellant does not deny owing a debt to the Plaintiff-Respondent herein. Defendant-Appellant did not dispute the amount owed on the underlying account. Defendant-Appellant has failed to establish a material fact that would merit a trial in this case.

## 4. Was there an abuse of discretion?

No, Defendant did not address this issue until the Appeal at the Appellate Division was decided in favor of Plaintiff-Respondent. This issue was first addressed in Defendant-Appellant's motion to reargue the appeal which was similarly denied by the Appellate Court.  Moreover, Defendant was afforded due process as he has had numerous opportunities to be heard and on each occasion has failed to provide a genuine issue of law or fact that would have defeated the Motion for Summary Judgment.

## VII) PROCEDURAL HISTORY OF THE ACTION

16

Defendant-Appellant was properly served in this action with a summons and complaint pursuant to CPLR 308(4). Defendant-Appellant thereafter submitted an answer with numerous affirmative defenses and counterclaims. Plaintiff-Respondent submitted a motion for summary judgment, thereafter opposition and a reply were additionally submitted with the Court. Defendant-Appellant had a full and fair opportunity to be heard by the Court and present a valid defense to the action. Defendant-Appellant failed to do so and the motion was granted against Defendant-Appellant in the sum of $8,514.77. Now, more than a year after Defendant-Appellant was served with a Notice of Entry, Defendant-Appellant submits another appeal. Defendant-Appellant does not deny having the underlying account, defaulting on said account or receiving monthly billing statements. Defendant-Appellant's contentions to summary judgment rely upon a defense of Statute of Limitations and Lack of Standing.

## VIII) DISCUSSION OF QUESTIONS PRESENTED ON APPEAL

**1) Did the Supreme Court erroneously grant Plaintiff-Respondent's motion for summary judgment where Defendant-Appellant failed to establish a statute of limitation defense?**

17

### a) Plaintiff-Respondent's action is not barred by the Statute of Limitations period.

i) Defendant-Appellant made a voluntary payment on the account on 4/19/99. The payment issued on behalf of Defendant was clearly stated in communications sent to the debtor. A payment on an account is an acknowledgment of the debt which would be the date that the six year statute of limitations period begins to run. Defendant-Appellant was served on April 11, 2005, within the applicable limitations period. The last payment on the account is the date that triggers the statute of limitations period. Plaintiff-Respondent provided Defendant-Appellant with a copy of this statement on December 1, 2005(R. 48), Defendant-Appellant did not dispute the statement which clearly detailed this credit transaction. (R.48).

ii) *The Doctrine of Forum Non-Conveniens*

Defendant-Appellant incorrectly has maintained that the Delaware Statute of Limitations be applied because the credit agreement states that it would be "governed by the laws of the State of Delaware and applicable Federal Laws". (R.43). However, the Doctrine of Forum Non-Conveniens "permits a court to dismiss an action when, although, it may have jurisdiction over a

claim, the court determines that "in the interest of substantial justice the action should be heard in another forum".[5] In this case, there was no basis for a suit to be commenced in Delaware. Defendant-Appellant throughout making payments and charges the credit card account resided in Connecticut and New York after moving in 1999. Upon information and belief, Defendant-Appellant was never a resident of Delaware. As jurisdiction over the Defendant-Appellant could only be obtained in New York at the time the action was commenced, the forum selection clause is outweighed by "the potential for hardship to the defendant, the availability of an alternative forum, the residency of the parties and the jurisdiction in which the cause of action arose."[6] Defendant-Appellant resides in New York and Plaintiff-Respondent is authorized to do business. As such in the interests of substantial justice, there is no other appropriate jurisdiction but New York. As such, the laws of New York (including the applicable Statute of Limitations period) are applicable.

### iii) Delaware law is not applicable to this action

Defendant-Appellant incorrectly maintains his reliance upon Delaware statutes. As stated above Delaware law has no application to this action as

---

[5] National Bank & Trust Co. v. Banco De Vizcaya, 72 NY2d 1005,1007.
[6] Islamic Republic v. Pahlavi, 62 NY2d 474, 478-479.

19

there is no basis for jurisdiction in Delaware. The New York Statute of Limitations is applicable as this action was commenced in New York State, where Defendant-Appellant resides and where the cause of action arose.

iv) **The Statute of Limitations is a procedural law and New York law governs**

The Statute of limitations is a procedural law. Since under common-law rules matters of procedure are governed by the law of the forum, it has generally been held that the Statute of Limitations of the forum rather than that of the jurisdiction where the cause of action accrued governs the timeliness of a cause of action.[7] In New York, choice of law provisions only govern substantive issues.

v) **Connecticut Statute of Limitations**

Defendant claims that the injury accrued in Connecticut and that Connecticut's Statute of Limitations is applicable. At the time this action was commenced Defendant no longer resided in Connecticut. The Connecticut Statute of Limitations for a breach of a written contract is six

---

[7] Martin v. Julius Dierck Equip. Co., 43 N.Y.2d 583

years. [8] As the Connecticut statute is the same as New York's limitations period, this claim has no merit. Defendant was served within the applicable limitations of New York and Connecticut. It is of no consequence which is applied.

### vi) CPLR 202 does not bar this claim

The Third Party movant appearing amicus curiae claims that NY CPLR 202 would require that Delaware's Statute of Limitations is applicable. New York's borrowing statute CPLR 202, does not require a Court to borrow the shorter limitation period where Plaintiff could not have filed suit. [9] In this case, Plaintiff had no basis to file suit in Delaware County. Defendant was a resident of Connecticut and New York. At the time the action was commenced, Defendant was a resident of New York. Neither Appellant-Defendant nor Discover Card had elected to resolve the matter by arbitration. Subsequently, the account was assigned to the Plaintiff herein. New York's borrowing statute was for the purpose of preventing forum shopping, Plaintiff was not "forum shopping" but rather commencing the action where Defendant resides and where the action accrued. " A cause of

---

[8] Connecticut General Statute 52-576
[9] Doctors Council v. New York City Employees Retirement System, 71 NY2d 669; Uniformed Firefighters Association Local 94 v. Beekman, 52 NY2d 463.

21

action cannot accrue for purposes of New York's borrowing statute in a state which could not exercise jurisdiction over the cause of action". [10]

This action accrued in Connecticut when Defaulted on the underlying ageeement. Defendant moved to New York State sometime thereafter. Both states have a six year limitations period.

The Statute of Limitations is a procedural law. As long as the question involves a mere matter of procedure as to the time when and the order in which evidence should be submitted the state court can, in those and similar instances, follow their own practice even in the trial of suits arising under the Federal law. [11]

New York courts apply contractual choice of law clauses only to substantive issues. The law of the forum normally determines for itself whether a given question is one of substance or procedure. In New York, statutes of limitation are generally considered procedural because they are viewed as pertaining to the remedy rather than the right.[12]

---

[10] Stafford v. Inernational Harvester, 668 F2d 152, 153
[11] Central Vernont R. Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 867, 59 L.Ed. 1433
[12] (Education Resources Inst., Inc. v. Piazza, 17 AD3d 513, 513, 794 N.Y.S.2d 65 [2d Dept 2005])

**2)    Did the Supreme Court and the Appellate Division correctly find that Plaintiff-Respondent had standing to sue?**

**a) Yes, *Plaintiff-Respondent provided a clear chain of title and has established standing.***

Defendant-Appellant contends that he did not have a business or financial relationship with Plaintiff-Respondent herein. There is no dispute as to this fact. Plaintiff-Respondent purchased the account from Discover Bank, Plaintiff-Respondent had provided the Court and the Defendant-Appellant with a copy of the affidavit of assignment in the motion for summary judgment. (R. 38) Defendant-Appellant cites a case with no bearing on this matter. The case of *New York Association of Nurses v. Novello*[13], which refers to "standing to challenge an administrative action". It is completely irrelevant to the case at hand. With respect to the assignment of a credit card account, the Courts have held that "an assignee must tender proof of assignment of a particular account".[14] In this case, Plaintiff-Respondent tendered proof of the assignment by a signed affidavit from Discover Bank showing the Defendant-Appellant's particular credit card number and even including the Defendant-Appellant's name. The affidavit of assignment additionally states the

---

[13] 753 NYS2d 615, 617 (3d Dept, 2003)
[14] Citibank (S.D), N.A. v. Martin, 2005 NY Slip Op 25536.

amount due and owing when the account was assigned to Plaintiff-Respondent. (R. 38). The affidavit of assignment is a business record issued in the ordinary course of business when accounts are assigned. For a business record to be admissible, it must be imparted by persons who were under a duty to impart such information. Business records are deemed reliable because they are based on reports by persons whose routine business duty is to perceive the facts and to transmit information concerning them to others engaged in the business.[15] In this case, the affiant is an employee of the original creditor, clearly there is a duty to impart the information contained in the affidavit. The business record showing the assignment to the Plaintiff-Respondent herein is reliable as it is issued in the regular course of business by a person who was performing a routine business duty. Plaintiff has provided prima facie evidence that was signed by an officer of the orginal creditor. Where the seal of a corporation is affixed to a contract or written instrument, to which such corporation is a party, and it is signed by the president and secretary or other proper officers, it will be presumed that such officers did not exceed their powers, as the seal is prima facie proof that it was

---

[15] Johnson v. Lutz, 253 NY 124, 170 N.E. 517, Chase Manhattan Bank v. John Hobbs, 94 Mis. 2d 780; 450 N.Y.S. 967.

attached by proper authority, and it lies with the party objecting to its execution to show that it was affixed surreptitiously or improperly.[16]

Plaintiff established prima facie evidence to sue on the account. Defendant failed to rebut such evidence with any issue of fact. Defendant did not provide evidence of ownership by any other party. Defendant has failed to rebut Plaintiff's ownership of the account. Once the movant has established his or her *prima facie* case, the party opposing a motion for summary judgment bears the burden of "produc[ing] evidentiary proof in admissible form sufficient to require a trial of material questions of fact . . . mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient".[17]

**3) Did the Trial Judge Correctly Grant Summary Judgment, where Defendant-Appellant admitted he defaulted on a revolving credit agreement and Plaintiff-Respondent provided sufficient evidence to award summary judgment? Yes**

---

[16] Andrew C. Imbrie, v. Schlicht Combustion Process Company, . 130 A.D. 675; 115 N.Y.S. 333; 1909 N.Y. App. Div. LEXIS 278

[17] (*Zuckerman v City of New York, supra* at 562; *see also Romano v St. Vincent's Medical Center of Richmond,* 178 AD2d 467, 470, 577 N.Y.S.2d 311 [2d Dept 1991]; *Tessier v New York City Health & Hospitals Corp.,* 177 AD2d 626, 576 N.Y.S.2d 331 [2d Dept 1991]).

25

### a) *Plaintiff-Respondent established an account stated*

Plaintiff-Respondent provided additional copies of account statements to Defendant-Appellant in the motion for Summary judgment (R. 27-38). The account statements were originally mailed to Defendant-Appellant in the normal course of business with a credit card. There is no dispute that an account stated is established. Defendant-Appellant does not deny having an account with the originator, Discover Card Bank. Defendant-Appellant does not deny receiving monthly account statements. Defendant-Appellant at no time submitted a dispute as to the amount due and owing or a notice of billing error.

In G.W. White & Son v Gossier,[18] the Court specifically held that the Plaintiff could obtain relief on the account stated cause of action without showing the specific goods included in the account statement or even showing the goods were conforming in accordance with the underlying contract. Likewise in Fink, Weinberger, Fridman, Berman &

---

[18] 219 A.D. 2d 866 (4th Dept 1995)

26

Lowell P.C., v Peterrides[19], the Court found that even though a law firm's bill for services was not itemized, the client's receipt and retention of the billing without objection within a reasonable time gave rise to an account stated independent of the obligations on which a claim could have been made for the services themselves.  The same holding was made in Shea & Gould v. Burr, 194 A.D.2d 369 (1st Dept 1993)[20]. The Court held the client's failure to show objection to account statements rendered gave rise to an account stated even though no itemization of the services rendered were presented or included. [21]

**b) *Defendant-Appellant incorrectly claims that the Court refused to address his arguments. This claim has no merit.***

Defendant-Appellant alleges that the Court refused to address his arguments. This is simply incorrect. Plaintiff-Respondent's counsel addressed the court by referring to the statements that have been sent to the defendant for several years and that there is no issue of fact. (R.28). Defendant-Appellant in his opposition papers had primarily based his opposition on "various statute of Limitations"

---

[19]  80  A.D. 2d 781 (1st Dept 1981, appeal dismissed, 53 N.Y.2d 102
[20] 194 A.D.2d 369 (1st Dept 1993)
[21] See also Feder v. Fortunoff, Inc et al., 123 Misc.2d 857 (Sup Ct Nassau County 1984).

defenses, a lack of standing and overcharges in interest . (R. 39-42) The Court considered Plaintiff-Respondent's motion, Defendant-Appellant's opposition and Plaintiff-Respondent's reply in making a decision. The Court granted the motion finding "no material issues of fact requiring a trial in this matter". (R.68).

The Defendant-Appellant claims that Justice Pulver failed to address his defenses based upon Statute of Limitations and/or Standing. Justice Pulver signed the Proposed Order submitted by Plaintiff-Respondent, a "short form order". The Defendant-Appellant could have attempted to "resettle" the order to have the Judge's decision clarified. "Resettlement of an order is a procedure designed to correct errors and omissions as to form, or for clarification. It may not be used to effect a substantive change". [22]

The Appellate Division addressed each and every issue raised by Defendant and found that Plaintiff-Respondent had provided sufficient evidence to warrant a motion for summary judgment.

---

[22] Foley v. Roche, 68 A.D. 2d 588, 418 N.Y.S. 2d 588, (1st Dep't 1979).

**c)** *Plaintiff-Respondent has provided evidence that the account was assigned by the Originator Discover Card.*

The affidavit of assignment (R. 38) provided by the Plaintiff-Respondent establishes the fact that the affiant is an employee of the originator Discover Card and that the account was assigned to the Plaintiff-Respondent herein. The affiant's knowledge is based upon books and records maintained in the ordinary course of business that are within her control and supervision. Defendant-Appellant has no basis to dispute these claims and is merely attempting to delay and hinder the action with frivolous assertions to the contrary. The Appellate Division correctly stated that Defendant's argument was based only on "surmise".

**D)** *Defendant-Appellant has failed to establish that there are genuine issues of fact*

Defendant-Appellant herein has objected to Plaintiff-Respondent's affidavit of claim submitted in the action. Defendant-Appellant has upheld this action with numerous motions and opposition in a manner to delay this action. Defendant-Appellant bases his entire action upon mere speculation and conclusory

allegations regarding the documents submitted to date. Defendant-Appellant does not dispute the address on the account statements or that a balance was due and owing. Defendant-Appellant raises numerous frivolous arguments with regard to the affidavit of assignment. However, defendant-appellant has failed to establish one genuine issue of fact to preclude Plaintiff-Respondent's motion for summary judgment. On a motion for summary judgment the court must determine whether the factual issues presented are genuine or unsubstantiated. Moreover, if the issue claimed to exist is not genuine but feigned and there is, in truth, nothing to be tried, summary judgment is properly granted. Conclusory assertions will not suffice to defeat a motion for summary judgment. It is a general rule, that the signer of a written agreement is conclusively bound by its terms unless there is a showing of fraud, duress, or some other wrongful act on the part of the other party to the contract.[23] In this case Defendant-Appellant has failed to establish any wrongful act either by the original creditor Discover Bank or the assignee Portfolio Recovery Associates, LLC. The factual issues raised by Defendant-Appellant are not genuine issues that would preclude summary judgment.

**4) Was there an abuse of discretion?**

---

[23] Barclays Bank of New York v. Sokol, 128 A.D. 2d 492, 512 N.Y.S. 2d 419 (2nd Dept. 1987).

**A)** *New Issues Not Previously Raised Before the Supreme Court.*

Defendant-Appellant has failed to raise this issue before the Supreme Court and thus is barred from doing so on Appeal. Defendant-Appellant for the first time stated there was an abuse of "judicial discretion". Of course Defendant's assertion is based on his incorrect understanding of the law. This argument was never raised by the Defendant-Appellant in the Supreme Court action and should be deemed waived. The Court in *Kolmer-Marcus, Inc. v. Winer* 32, A.D. 2d 763, 300 N.Y.S. 2d 952 (1st Dept) (1969) aff'd 26 NY 2d 795, 309 N.Y.S 2d 220, 257 N.E. 2d 664 (1970) held that:

"There is a broad and general rule that the Court will not review an appeal on any points not raised in the lower Court, this provision is designed to avoid waste."

As a general matter, appellate courts are reluctant to review legal arguments raised for the first time on appeal. Several policy reasons underlie this rule, such as avoiding unfairness to the other party, giving deference to the lower courts and encouraging the proper administration of justice by demanding an end to litigation and requiring the parties and trial courts to focus the issues before they reach the Court of Appeals (*Bingham v New York City Trans. Auth.*,

99 NY2d 355, 359 [2003]). Defendant-Appellant had many opportunities to raise this argument. Defendant-Appellant has had his day in Court on numerous occasions. Defendant-Appellant submitted a motion to dismiss, an answer with affirmative defenses, counterclaims and opposition to Plaintiff-Respondent's motion for summary Judgment. Summary Judgment was granted after oral argument; Defendant-Appellant did not address this issue at that time either. If the Appellate Court is to review the Supreme Court's decision, it is not proper for the Defendant-Appellant to raise issues that the Supreme Court had no opportunity to address. An appeal authorizes the appellate division to stand in the place of the nisi prius judge and do whatever he or she should have done. Defendant-Appellant did not raise this issue before the Supreme Court Judge or the Appellate Judge.  Defendant did not allege a due process or equal protection violation until he submitted a motion to reargue to the Appellate Division.

## B) Due Process

Defendant claims there was a due process violation by the Court. Due Process requires "an adequate and realistic opportunity to appear and to be heard in defense."[24] In this action, Defendant has had his day (many days) in Court. Defendant admits he was served in the action. Defendant submitted an answer

---

[24] Lefcourt v. Sea Crest Hotel and Motor Inn, 54 Misc. 376; 282 NYS 2d 896

32

with numerous affirmative defenses. Defendant was served with the Motion for Summary Judgment and submitted his opposition. Defendant has had many opportunities to raise an issue of fact or law. On each occasion, Defendant has failed to raise an issue that would preclude summary judgment.

C) Equal Protection

The **Equal Protection Clause**, part of the Fourteenth Amendment to the United States Constitution, provides that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws"

This argument is without merit as Defendant has not been treated any differently than any other resident Defendant who is subject to in personam jurisdiction in New York State.

D) **The Denial of a Motion to reargue can not be appealed**

Defendant-Appellant first raised the issue of equal protection and due process when he submitted a motion to reargue to the Appellate Division. Defendant's motion to reargue was denied. "No appeal lies from the denial of a motion to reargue. [25]The Appellate Court properly denied Defendant's motion to reargue

---

[25] Men's World Outlet v. Steinberg, 101 A.D. 2d 854; 476 N.Y.S. 2d 173.

33

as a motion to reargue can be made "only when a court allegedly has overlooked or misapprehended a fact or legal principle". [26]

Defendant in this case was seeking only to reargue the same arguments that have been repeated by Defendant on numerous occasions. The Courts have held that "a Motion to reargue is not a vehicle to permit an unsuccessful party to again raise the same questions previously decided, or raise legal arguments different from those raised in the original application.[27]

---

[26] People v. Lynch, 195 Misc. 2d 814
[27] Mayer v. National Arts Club, 192 AD 2d 863.

34

## X) CONCLUSION

Defendant-Appellant was served at the correct address and received account statements and made payments on the account for ten years. Defendant-Appellant failed to raise any genuine issues of fact that would warrant a reversal of the Supreme Court and Appellate Court's findings.

Timothy J. Murtha

Attorney for Plaintiff/Respondent

Malen & Associates, p.c.

**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF GREEN
————————————————————————X

PORTFOLIO RECOVERY ASSOCIATES, LLC.,
                                    Plaintiff,

        -against-

JARED KING,
                            Defendant.
————————————————————————X

INDEX NO.: 323-05
OUR FILE NO.: 109650

ORDER + Decision

Plaintiff having moved before this Court for a decision to award Summary Judgment in favor of the Plaintiff and against the Defendant;

Now, after due deliberation on the Notice of Motion returnable on December 5, 2005 and Affirmation by Timothy Murtha, dated November 15, 2005 with Exhibits annexed; Affidavit in Opposition of Jared King dated November 25, 2005 with Exhibits annexed; Reply Affirmation of Timothy Murtha dated December 1, 2005; and this Court' : finding no material issue of fact requiring trial on this matter, it is hereby:

**ORDERED**: that Plaintiff's Motion for Summary Judgment is granted without costs against Defendant, Jared King to the extent that it is:

**ORDERED AND ADJUDGED**: that the Clerk is direct to Enter Judgment against the Defendant Jared King in favor of Plaintiff, Portfolio Recovery Associates, LLC., in the amount of $8,517.77.

This constitutes the Decision and Order of the Court which Plaintiff shall enter and serve a copy thereof, with notice of entry on Defendant.

Dated/Entered: 1/5/06
ReDated   4/24/07

Honorable: George A Pulver, JR
Acting Justice of Supreme Court.

**Exhibit B**

INDEX NO: 323-05
File No: 109650

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF GREENE
————————————————————————x
PORTFOLIO RECOVERY ASSOCIATES, LLC.,
                                    Plaintiff,

   -against-

JARED KING
                        Defendant,
————————————————————————x
                        NOTICE OF ENTRY

MALEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
123 Frost Street
Westbury NY 11590
(516) 334-3500

Notice of Entry:

Please take notice that the within is a true copy of a DECISION/ORDER dated April 24, 2007 and duly entered in the office of the Clerk of the within named Court on or about MAY 9, 2007.

NOTE: This is an attempt to collect a debt, any information obtained shall be used for that purpose. We are Debt Collectors.

**Affidavit of Service**

STATE OF NEW YORK)
COUNTY OF NASSAU )ss:

I, Kellyann Ferraro, being duly sworn, say: I am not a party to this action, am over 18 years of age and reside at 123 Frost Street, Westbury, New York 11590.

On MAY  17 , 2007 I served the within Notice of Entry by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State addressed to each of the following persons at the last known address set forth after each name:

TO:   JARED KING
      PRO SE DEFENDANT
      156 S. RIVER STREET
      COXSACKIE, NY  12051

Sworn to me this 17
day of MAY, 2007.

_____
Notary Public

Kellyann Ferraro

ERIC W. SANGER
Notary Public, State of New York
No. 01SA...
Qualified in Suffolk County
Commission Expires February 10, 2011

**Certification of Compliance**

This Brief was prepared with Microsoft Word 2003, using Times New Roman,

size 14 print. This brief was prepared with double spacing except with regards

to Quotes from Court case citations where single spaced type is used. The Word

Count of this Document is 5,011.

**Affidavit of Service**

State of NY

County of Nassau

I, Timothy J. Murtha, being duly sworn, say: I am not a party to this action, am over 18 years of age and reside at 123 Frost Street, Westbury, NY 11590.

On August $\frac{31}{}$ 2009, I served three copies of the Respondent's Brief, by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after each name:

To: JARED KING
156 S. River Street
Coxsackie, NY 1205?

Timothy J. Murtha

Sworn to before me this _____ Day

Of August. 2009

Notary Public

JEFFREY WOLSTEIN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02WO6142277
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES MARCH 13, 2010

39

## DISCLOSURE STATEMENT

Portfolio Recovery ,the Plaintiff's subsidiaries are IGS National Skip Tracing

Specialists, RDS (Revenue Discovery Systems) and Muni Services.

# EXHIBIT 4

Case No. 503411
Greene County Clerk's Index No. 323/05

# Court of Appeals

*of the*

# State of New York

---•---

PORTFOLIO RECOVERY ASSOCIATES, LLC,

*Plaintiff-Respondent,*

– against –

JARED KING,

*Defendant-Appellant.*

## JOINT BRIEF FOR *AMICI CURIAE* NEW YORK CITY BAR ASSOCIATION AND THE NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS

GINA CALABRESE
CAROLYN E. COFFEY
JANET RAY KALSON
ANAMARIA SEGURA
CLAUDIA WILNER
MEMBERS, CONSUMER AFFAIRS
   AND CIVIL COURT COMMITTEES
42 West 44th Street
New York, New York 10036
Tel.: (212) 382-6600
Fax: (212) 587-0744

MARLA TEPPER
GENERAL COUNSEL
NEW YORK CITY DEPARTMENT OF
   CONSUMER AFFAIRS
42 Broadway, 8th Floor
New York, New York 10004
Tel.: (212) 487-4406
Fax: (212) 487-4197

Date Completed: December 22, 2009

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................iii

PRELIMINARY STATEMENT .................................................................1

STATEMENT OF INTEREST...................................................................2

    A.  THE ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK ..........2

    B.  THE NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS.........3

STATEMENT OF FACTS .........................................................................5

BACKGROUND ........................................................................................8

ARGUMENT ...........................................................................................11

    POINT I ..............................................................................................11

    SUMMARY JUDGMENT IN THIS CASE WAS IMPROPER BECAUSE THE
    LOWER COURTS FAILED TO APPLY CPLR § 202 IN DETERMINING
    WHETHER THE STATUTE OF LIMITATIONS HAD RUN. ...........................11

    POINT II .............................................................................................15

    EVEN IF THE COURT FINDS THAT CPLR § 202 DOES NOT APPLY IN
    THIS CASE, THE APPELLATE DIVISION ERRED IN FINDING THAT
    PLAINTIFF TIMELY FILED THE INSTANT ACTION UNDER NEW
    YORK'S SIX-YEAR STATUTE OF LIMITATIONS. .......................................15

        A.  BREACH OF CONTRACT..................................................16

        B.  ACCOUNT STATED .......................................................19

    POINT III............................................................................................22

    SUMMARY JUDGMENT WAS IMPROPER IN THIS CASE BECAUSE
    PLAINTIFF FAILED TO PROVE STANDING. ....................................22

        A.  DEBT BUYERS GENERALLY FAIL TO ADEQUATELY PROVE
        THEIR *PRIMA FACIE* CASE .............................................22

        B.  AS A THIRD-PARTY DEBT BUYER SEEKING SUMMARY
        JUDGMENT, PLAINTIFF FAILED TO ESTABLISH STANDING
        TO BRING ITS CASE.......................................................24

            1.  PLAINTIFF FAILED TO SUBMIT AN AFFIDAVIT FROM
            AN INDIVIDAL WITH PERSONAL KNOWLEDGE OF THE
            FACTS .................................................................25

            2.  PLAINTIFF FAILED TO COMPLY WITH THE BEST
            EVIDENCE RULE...................................................29

            3.  THE BUSINESS RECORDS EXCEPTION IS
            INAPPLICABLE.....................................................31

i

CONCLUSION...........................................................................................................34

TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*Aetna Life & Cas. Co. v. Nelson*,
    67 N.Y.2d 169 (1986) .................................................................................................... 16

*Bank of New York v. Dell-Webster*,
    23 Misc.3d 1107(A) (Sup. Ct. Bronx Co. 2008)................................................................ 29

*Bank of New York-Delaware v. Santarelli*,
    128 Misc. 2d 1003 (Civ. Ct. Greene Co. 1985) .............................................................. 20

*Barraillier v. City of New York*,
    12 A.D.3d 168 (1st Dep't 2004) ...................................................................................... 26

*CACH, LLC v. Cummings*,
    Index No. 22747/07 (Civ. Ct. N.Y. Co. 11/10/08) .......................................................... 22

*CACV of Colorado Capital Investments v. Pierog*,
    Index No. 64449/05 (Civ. Ct. N.Y. Co. 9/2/08) .............................................................. 22

*CACV of Colorado v. Ramona Santiago*,
    10/29/09 NYLJ 25:1 (Civ. Ct. N.Y. Co.).......................................................................... 22

*Citibank (S.D.), N.A. v. Martin*,
    11 Misc.3d 219 (Civ. Ct. N.Y. Co. 2005) ....................................................... 17, 22, 24, 31

*Colorado Capital Investments, Inc. v. Villar*,
    6/18/09 N.Y.L.J. 27: 2 (Civ. Ct. N.Y. Co.)...................................................................... 22

*Colorado, LLC v. Chowdhury*,
    Index No. 94642/07 (Civ. Ct. Bronx Co. 2/19/09) .......................................................... 22

*Copelco Capital v. Packaging Plus Servs.*,
    243 A.D.2d 534 (2d Dep't 1997).................................................................................... 24

*Dempsey v. Intercontinental Hotel Corp.*,
    126 A.D.2d 477 (1st Dep't 1987).................................................................................... 27

*Dickerson v. Health Mgt. Corp. of Am.*,
    21 A.D.3d 326 (1st Dep't 2005) .................................................................................... 26

*Donahue-Halverson, Inc. v. Wissing Construction & Building Services Corp.*,
    95 A.D.2d 953 (3d Dep't 1983)......................................................................20

iii

*Educ. Res. Inst., Inc. v. Piazza,*
 17 A.D.3d 513 (2d Dep't 2005) ............................................................................. 19

*Gaier v. Iveli,*
 287 A.D.2d 375 (1ˢᵗ Dep't 2001) .......................................................................... 20

*Global Fin. Corp., v. Triarc Corp.,*
 93 N.Y.2d 525 (1999) ..................................................................................... 12, 16

*GML, Inc. v. Cinque & Cinque,*
 9 N.Y.3d 949 (2008) ......................................................................................... 14

*GTF Mktg. v. Colonial Alumium Sales,*
 66 NY2d  965 (1985)……………………………………………………………….25

*Green v. Disbrow,*
 79 N.Y. 1 (1879) ............................................................................................. 15

*Grullon v. City of New York,*
 297 A.D.2d 261 (1st Dep't 2002) .......................................................................... 27

*Insurance Co. of N. Am. v. ABB Power Generation,*
 91 N.Y.2d 180 (1997) ....................................................................................... 14

*JMD Holding Corp. v. Congress Fin. Corp.,*
 4 N.Y.3d 373 (2005) ......................................................................................... 25

*Lew Morris Demolition Co. v. Board of Educ.,*
 40 N.Y.2d 516 (1976) ....................................................................................... 18

*Mastan Co. v. Weil,*
 84 A.D.2d 657 (3d Dep't 1981) ............................................................................ 30

*Matter of Gregory M.,*
 184 A.D.2d 252 (1ˢᵗ Dep't 1992), *aff'd* 82 N.Y.2d 588 (1993) ......................................... 33

*Matter of the Arbitration between Zurich-American Ins. Co.,*
 89 A.D.2d 542 (1ˢᵗ Dep't 1982) ............................................................................ 29

*MBNA Am. Bank, N.A. v. Nelson,*
 15 Misc.3d 1148(A) (Civ. Ct. Richmond Co. 5/24/07) ............................................ 23, 24

*Midborough Acupuncture, P.C. v. New York Cent. Mut. Fire Ins. Co.,*
 13 Misc.3d 132(A) (App. Term 2d & 11th Jud Dists 2006)............................................ 33

*National States Elec. Corp. v. LFO Constr. Corp.,*

203 A.D.2d 49 (1st Dep't 1994) ........................................................................................ 32

*Palisades Collection, LLC v. Haque,*
4/13/06 N.Y.L.J. 20 (Civ. Ct. Queens Co.).......................................................................... 23

*Palisades Collection, LLC v. Gonzalez,*
10 Misc.3d 1058(A) (Civ. Ct. N.Y. Co. Dec. 12, 2005)........................................... 23, 26, 31

*People v. Kennedy,*
68 N.Y.2d 569 (1986) ...................................................................................................... 32

*People v. Mertz,*
68 N.Y.2d 136 (1986) ...................................................................................................... 33

*Pfau v. Forster & Garbus,* Index No. 8236/09 (Sup. Ct. Erie Co.)............................ ....10

*PRA III, LLC v. Gonzalez,*
54 A.D.3d 917 (2008) ................................................................................................. 22, 31

*PRA III, LLC v. Mac Dowell,*
15 Misc.3d 1135(A) (Civ. Ct. Richmond Co. Mar. 16, 2007).............................................. 30, 31

*Rukaj v. Roth,*
237 A.D.2d 503 (2d Dep't 1997)........................................................................................ 29

*Rushmore Recoveries X, LLC v. Skolnick,*
15 Misc.3d 1139(A) (Dist. Ct. Nassau Co. Mar. 16, 2007)................................................ 23

*Schozer v. William Penn Life Ins. Co.,*
84 N.Y.2d 639 (1994)................................................................................................. 29, 30

*Simpson v. Mutual of Omaha Insurance Co.,*
2000 WL 322780 (S.D.N.Y. Mar. 28, 2000) ...................................................................... 15

*Standard Textile Co. v. Nat'l Equip. Rental, Ltd.,*
80 A.D.2d 911 (2d Dep't 1981)........................................................................................ 33

*Stewart v. Stuart,*
262 A.D.2d 396 (2d Dep't 1999)........................................................................................ 20

*Tahini Invs. v. Bobrowsky,*
99 A.D.2d 489 ( 2d Dep't 1984)........................................................................................ 26

*TPZ Corp. v. Dabbs,*
25 A.D.3d 787 (2d Dep't 2006) ................................................................................... 13, 24

*Vermette v. Kenworth Truck Co.,*
 68 N.Y.2d 714 (1986)..............................................................................................25

*Victorson v. Bock Laundry Mach. Co.,*
 37 N.Y. 2d 395 (1975) ...........................................................................................16

*V.W. Credit, Inc. v. Alexandrescu,*
 13 Misc.3d 1207(A) .................................................................................................31

## STATUTES

10 DEL. C. 8106 .............................................................................................................13

CPLR § 202..................................................................................................... <u>passim</u>

CPLR § 203(A) ..............................................................................................................16

CPLR § 203(C) ..............................................................................................................16

CPLR § 206(D) ..............................................................................................................15

CPLR § 213....................................................................................................................16

CPLR § 213(2)...............................................................................................................20

CPLR § 304....................................................................................................................16

CPLR § 3018(B) ............................................................................................................17

CPLR § 3212..................................................................................................................27

CPLR § 3212(B) ............................................................................................................25

CPLR § 3215(A) ............................................................................................................10

N.Y. General Obligations Law § 17-101 .....................................................................18


## COURT RULES AND DIRECTIVES

Civil Court of the City of New York, DRP-182, Category GP-20, titled "Default Judgments on Purchased Debt," Effective Date May 13, 2009.......................................................10

SECONDARY SOURCES

Federal Trade Commission, Collecting Consumer Debts: The Challenges of Change, A
    Workshop Report  (February 2009)................................................................. 8, 9

MFY Legal Services, Justice Disserved: A Preliminary Analysis of the Exceptionally Low
    Appearance Rate by Defendants in Lawsuits Filed in the Civil Court of the City of New
    York 4 (June 2008) ......................................................................................... 9

Report of the Civil Court of the City of New York, January 1, 1997–December 31, 2006, *A
    Decade of Change and Challenge in "The People's Court"* 1997–2006 .......................... 8

Urban Justice Center, *Debt Weight: The Consumer Credit Crisis in New York City and its Impact
    on the Working Poor* (Oct. 2007) ............................................................ 8, 9, 10

Weinstein, Korn & Miller, New York Civil Practice ¶ 202.00..................................... 12

## PRELIMINARY STATEMENT

The Association of the Bar of the City of New York ("Association") and the New York City Department of Consumer Affairs  submit this brief to urge reversal of *Portfolio Recovery Associates, LLC v. King,* 55 A.D.3d 1074, 866 N.Y.S.2d 395 (3d Dep't 2008), in which the Appellate Division, Third Department affirmed summary judgment granted in favor of Plaintiff-Respondent ("Plaintiff") and dismissal of Defendant-Appellant's ("Defendant's") statute of limitations defense. This brief will address the failure of the Appellate Division to apply New York's "borrowing statute," CPLR § 202, and to follow prior decisions of this Court in determining the timeliness of this collection action brought by a debt buyer. In addition, the brief will address the failure of the courts below to articulate and follow proper evidentiary standards in granting summary judgment to the plaintiff despite genuine issues of fact concerning its standing to initiate the lawsuit under an alleged assignment.

The issues before the Court in this appeal bear tremendous significance for the residents of New York. The case against the defendant is one of hundreds of thousands of such consumer credit matters filed in this state every year, most of which, lamentably, result in a default judgment against the consumer.

1

## STATEMENT OF INTEREST

### A. The Association of the Bar of the City of New York

The Association is comprised of attorneys, predominantly based in New York City, who represent clients in both the public and private sectors across a range of law office settings. The Association's Civil Court and Consumer Affairs Committees are comprised of practitioners in the New York City Civil Court, current and former attorneys from federal, state and city consumer protection agencies, including the Federal Trade Commission, the New York State Attorney General's Office and the New York City Department of Consumer Affairs; legal services attorneys; consumer advocates; attorneys from private firms that represent businesses in actions brought by consumer protection agencies; class action attorneys representing consumers and businesses; judges; attorneys affiliated with local law schools and clinics operated by law schools; and others who have expertise in litigation and debt collection matters and in consumer protection issues generally that affect businesses and the public.

The Association has an interest in this appeal arising from its longstanding commitment to fairness and justice in the adjudication of claims involving members of the public, and to the efficient operation of our court system. It is no secret that in recent years the number of collection cases in consumer credit

matters – many of them brought by "debt buyers" – has mushroomed. The volume has flooded the Civil Courts. It is also apparent in many of these cases that the defendants, who are predominantly *pro se*, may have valid statute of limitations defenses, and that the plaintiffs may not possess the evidence that would entitle them to prevail. The Association has expressed its opinion in various forums on the need for measures to ensure that a basic level of fairness is maintained in the adjudication of debt collection claims.

The instant appeal provides an opportunity for the Court to render clarity on these issues, so that debt collector plaintiffs can pursue valid claims and refrain from instituting legal actions that are not sustainable, and to ensure that defendants are aware of their legal rights. This appeal also has important ramifications for an overburdened court system, and for many members of the public, who may no longer be subjected to debt collection lawsuits that cannot withstand scrutiny if this Court reverses the Appellate Division decision.

Given the expertise and experience of the Consumer Affairs and Civil Courts Committees, the Association believes this *amicus curiae* brief will be of special assistance to the Court.

### B. The New York City Department of Consumer Affairs

The New York City Department of Consumer Affairs ("DCA") enforces the City's Consumer Protection Law and other business regulations, and through

3

its Office of Financial Empowerment ("OFE"), spearheads an array of financial empowerment efforts including public education campaigns, asset-building strategies, and free one-on-one financial counseling and coaching.

The Department currently licenses over 1500 debt collection agencies. Consumer complaints concerning debt collection top DCA's list of consumer complaints; in the past three years, DCA received nearly 3000 debt collection complaints and obtained cancellation of almost 4 million dollars in debt allegedly owed by NYC consumers.  In addition to mediating complaints, the Department pursues unlicensed businesses engaged in collecting debts from New York City consumers.

To strengthen the Department's oversight of debt collectors and to better protect consumers, the Department's Licensing Law was amended effective July 2009 to require all debt buyers—whether active or passive—to be licensed by the Department.  Prior to the enactment of the amendment, so-called "passive" buyers of delinquent debt exploited a gap in the law to escape DCA's oversight.  In the absence of licensing and strict controls, debt buyers avoided responsibility for abusive practices by their agents.  Among other abusive practices, debt buyers bought and sought to collect on discharged, invalid and time-barred debts and filed scores of groundless lawsuits to collect on debts without factual substantiation. The amendments address areas of concern, including a prohibition on a debt

4

collection agency seeking to collect a debt from a consumer on an expired debt unless the agency provides the consumer with information on the statute of limitations.

Given the Department's oversight of the debt collection industry and its mission to protect consumers, the Department has a strong interest in ensuring that the courts in New York City are provided with clear guidance on how to adjudicate the scores of cases brought by debt collection agencies against alleged debtors.

## STATEMENT OF FACTS

In the instant appeal, Plaintiff seeks to collect from Defendant Jared King a debt he allegedly owes on a Discover credit card account, which Plaintiff Portfolio Recovery Associates, LLC alleges was assigned to it. In 1989, Defendant entered into a credit card agreement with Greenwood Trust Company ("Greenwood Trust"), a community bank incorporated in and with its primary place of business in Delaware, which was renamed Discover Bank in 2000. (R. 26, 64.) At the time, Defendant, who admits to having had a credit card with Discover Bank, lived in Connecticut. (R. 7.) Greenwood Trust received Defendant's last payment on the Discover Card account in December 1998. (R. 7.) Defendant made no further payments thereafter. (R. 7.) On January 18, 1999, Defendant made his last

purchase with this Discover Card. (R. 30, 34-39.) On or about January 27, 1999, Defendant cancelled his card by mailing it back, cut in half, with a letter requesting that his account be canceled. (R. 41.) According to Defendant, on or about February 24, 1999, he received a credit card bill and called customer service to complain about fees incurred on a card he had cancelled. (R. 9.) On or about April 18, 1999, Discover credited Defendant's account with a "cashback bonus award" of $35.17. (R. 38.) On or about August 31, 1999, Discover charged off the account. (R. 48.)

Discover subsequently sold Defendant's account, allegedly to Portfolio Recovery Associates. (R. 6.) On or about April 1, 2005, Plaintiff Portfolio Recovery Associates commenced suit against Defendant Jared King in Greene County Supreme Court by filing a Summons and Complaint alleging breach of contract and account stated. (R. 5-6.) Defendant answered the complaint and asserted the following defenses: no relationship with Plaintiff; lack of standing, statute of limitations, and dispute the amount. (R. 7.) Plaintiff filed a motion for summary judgment (R. 19), which Defendant opposed, raising issues of material fact regarding the expiration of the statute of limitations and standing. As part of its motion for summary judgment, Plaintiff included two affidavits to prove ownership of the debt in question. One affidavit, titled "Affidavit of Claim," is dated October 2004 (the day is illegible) and the affiant (whose name is illegible),

6

states that she[1] is a "Team Leader" at Discover Financial Services. (R. 27.) The affidavit states that, "pursuant to the terms and conditions of the Credit Card Accounts Sale Agreement between Discover Bank and Portfolio Recovery Associates, LLC dated 28 August 2000, all right, title and interest in and to the aforementioned Accounts [sic] and sums due thereto were transferred by Discover Bank to Portfolio Recovery Associates, LLC." (R. 27.) The Credit Card Accounts Sale Agreement was not annexed to the affidavit. The other affidavit Plaintiff submitted to the court is dated May 20, 2005 and is titled an "Affidavit of Facts," by Elaine F. Lark, who identifies herself as a "Legal Specialist" of Portfolio Recovery Associates. (R. 28.) The affiant states, "DISCOVER BANK (the Assignor) assigned account to PORTFOLIO RECOVERY ASSOCIATES, LLC" and also claims that, "I have read the attached affirmation and concur with same." (R. 28.) The only affirmation included with the Affidavit of Facts is the affirmation in support of summary judgment submitted by Plaintiff's attorney which is dated November 15, 2005, nearly six months after the date of the Lark affidavit. (R. 17-22.)

The Court granted Plaintiff's motion for summary judgment. (R. 29.) Defendant appealed the Court's decision to the Appellate Division, Third

---

[1] The pronoun "she" is used to refer to this affiant because Respondent's brief uses the word "her" when discussing this affiant in its brief. *See* Respondent's Brief at 29.

7

Department, which affirmed the lower court's finding by decision dated October 23, 2008.  (R. 56.)  This appeal followed.

## BACKGROUND

The case presently before the Court is only one of hundreds of thousands of cases brought by debt buyers in New York State every year.  Urban Justice Center, *Debt Weight: The Consumer Credit Crisis in New York City and its Impact on the Working Poor* (Oct. 2007), at 1 ("*Debt Weight*") (noting that in 2006, approximately 320,000 consumer debt cases were filed in the five counties of the New York City Civil Court).  In a 2006 report, the Civil Court for the City of New York observed that the number of general civil filings had exploded over the past five years, having increased 300 percent from 2002 to 2006.  Report of the Civil Court of the City of New York, January 1, 1997–December 31, 2006, *A Decade of Change and Challenge in "The People's Court"* 1997–2006 at 11–12.  "Most of the filings involve consumer credit transactions . . . ."  *Id.* at 12.

The surge in consumer debt cases in New York's courts can be explained, in part, by the growth of the debt buying industry.  In modern collection practice, debts are typically charged off by an original creditor and sold in bulk to debt buyers, including Plaintiff, who then attempt to collect the debts.  Federal Trade Commission, Collecting Consumer Debts: The Challenges of Change, A

Workshop Report 3 (February 2009), *available at*

www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf ("FTC Report").

Over 89 percent of the consumer credit cases reviewed in the *Debt Weight* study were initiated by debt buyers, not original creditors. *Debt Weight* at 13. A debt buyer usually pays 5 percent or less of the value of the debts it purchases. *FTC Report* at 3. Once it buys a portfolio of debt, a debt buyer may collect on or sell all or part of the portfolio. *Id.* The Federal Trade Commission has observed that "[m]any accounts are purchased and resold by a number of different debt buyers over a period of years before all collection efforts finally cease." *Id.* at 22–23.

The debt buyer often cannot or does not obtain the underlying proof of the individual debts it purchases. *Id.* at 22–24. The lack of evidence, however, poses little impediment to a debt buyer's ability to obtain a money judgment against a consumer debtor. At least 75 percent of consumer credit cases result in default judgments. *See, e.g., Debt Weight* at 17-18 (finding 80 percent of consumer debt cases brought in New York City resulted in default judgments in favor of the plaintiff); MFY Legal Services, Justice Disserved: A Preliminary Analysis of the Exceptionally Low Appearance Rate by Defendants in Lawsuits Filed in the Civil Court of the City of New York 4 (June 2008), *available at* http://www.mfy.org/Justice_Disserved.pdf (finding that only 10 percent of

defendants in consumer debt cases filed answers in 2007).[2] Because of the high default rate in consumer debt cases, a debt buyer such as Plaintiff rarely needs to present evidence of the debt and its entitlement to a judgment. Significantly, although a default motion must be supported by an affidavit of fact supporting the claim, this evidence is not reviewed by a judge.[3]

Even when a defendant does appear in a consumer debt case, the debt buyer does not anticipate a meaningful challenge because it is highly unlikely the defendant will be represented by an attorney. The plaintiff debt buyer, on the other hand, is always represented. *Debt Weight* at 16–17 (estimating that 0 to 4 percent of defendants in consumer debt cases are represented by counsel, while 100 percent of plaintiffs have attorneys). A consumer debtor without legal training is rarely in a position to meaningfully oppose a debt buyer's lawsuit. For example, as reflected in this appeal, there are complex legal issues involved in determining the applicable statute of limitations. Also, a *pro se* litigant lacks the skill to mount adequate evidentiary challenges in opposition to a motion for summary judgment,

---

[2] This report raised numerous concerns about whether defendants in consumer debt cases are properly served with a summons and complaint and supports the view that lack of proper service is a major reason for the high default rate. This view is further reflected in the recent lawsuit commenced by Judge Pfau: *Pfau v. Forster & Garbus,* Index No. 8236/09 (Sup Ct. Erie Co.), which seeks to vacate 100,000 default judgments entered because of questionable service of process.

[3] The New York City Civil Court treats consumer debt cases as proceedings "for a sum certain," which allows defaults to be entered by the clerk, without evaluation of the evidence by a judge. CPLR 3215 (a). *See* Civil Court of the City of New York, DRP-182, Category GP-20, titled "Default Judgments on Purchased Debt," Effective Date May 13, 2009.

and in rare instances, at trial.   Indeed, it is not unusual for a *pro se* consumer to be

so confused by the court process that she does not even oppose a motion for

summary judgment, because of a mistaken belief that because she has a trial date in

the future, there will be an opportunity to assert her defenses at a later time.   In

sum, debt buyer plaintiffs are rarely subject to meaningful challenge or review of

their claims and have successfully utilized the New York courts as an effective

extension of their debt collection practice, an alarming trend that runs counter to

basic principles of fairness.

## ARGUMENT

### POINT I

**SUMMARY JUDGMENT IN THIS CASE WAS IMPROPER BECAUSE THE LOWER COURTS FAILED TO APPLY CPLR § 202 IN DETERMINING WHETHER THE STATUTE OF LIMITATIONS HAD RUN.**

The trial court and the Third Department failed to apply or even mention

CPLR § 202 in deciding and affirming summary judgment in Plaintiff's favor,

which was improper as a matter of law because the statute of limitations had long

since run on Plaintiff's claims. In pertinent part, New York State's "borrowing

statute" states: "[a]n action based upon a cause of action accruing without the state

cannot be commenced after the expiration of the time limited by the laws of either

the state or the place without the state where the cause of action accrued."

Therefore, when an out-of-state plaintiff sues in New York on a cause of action

11

that accrued outside of the state, "CPLR 202 requires the cause of action to be timely under the limitations periods of both New York and the jurisdiction where the cause of action accrued." *Global Fin. Corp., v. Triarc Corp.*, 93 N.Y.2d 525, 528, 693 N.Y.S.2d 479, 480 (1999). Two elements must be met for CPLR § 202 to apply: (1) the cause of action must have accrued outside the state, and (2) it must have accrued to a nonresident. Weinstein, Korn & Miller, New York Civil Practice ¶ 202.00, at 2-50. When an action is commenced in New York on a cause of action that accrued in another state, "the New York courts will apply either the statute of the state where the cause of action accrued or the New York statute, whichever is shorter." *Id.*

In analyzing where a cause of action accrues, this Court has held that it means "the place of the injury." *Triarc*, 93 N.Y.2d at 529, 693 N.Y.S.2d at 481. When an injury is "purely economic," this Court has held that the place of injury "usually is where the plaintiff resides and sustains the economic impact of the loss." 93 N.Y.2d at 529-30, 693 N.Y.S.2d at 482. *See also* Weinstein, Korn & Miller, New York Civil Practice ¶ 202.00, at 2-63 ("Where the economic injury is suffered by a corporation, a trust or an investment fund, the place of injury is ordinarily the principal place of business of the entity; it is that place in which the economic harm is most directly felt."). Importantly, in debt buyer cases, the residency of the original creditor at the time of the injury is what controls in

12

deciding which state's statute of limitations applies to a cause of action because an assignee assumes all defenses and counterclaims that can be asserted against the assignor. *TPZ Corp. v. Dabbs*, 25 A.D.3d 787, 789, 808 N.Y.S.2d 746, 749 (2d Dep't 2006) ("[A]n assignee never stands in any better position than his assignor... and takes an assignment subject to any pre-existing liabilities . . . .") (internal quotations and citations omitted).

Plaintiff's cause of action in the instant case accrued when Defendant breached his credit card contract with Greenwood Trust by defaulting on his Discover Card agreement. The breach of contract caused an economic injury to Greenwood Trust, which was incorporated in and had its principal place of business in Delaware. (R. 64.) Thus, Greenwood Trust was injured and sustained the economic impact of the loss in Delaware, and therefore, it was in Delaware that the cause of action accrued.

Delaware's statute of limitations on contract actions is three years. 10 DEL. C. § 8106. Defendant breached his contract with Greenwood Trust/Discover in or about January 1999, therefore, Plaintiff should have commenced this action by January 2002. Instead, Plaintiff did not commence this action until 2005, and thus its claims are time-barred.

Plaintiff argues that CPLR § 202 does not apply because it could not obtain personal jurisdiction over Defendant in Delaware at the time it commenced its suit,

13

because Defendant lived in New York State.  (Plaintiff Brief at 19.)  However,

personal jurisdiction in the foreign state has no bearing on the analysis.  CPLR §

202 simply requires that when a court is presented with a cause of action accruing

outside New York, it should apply the statute of limitations of the foreign state if it

bars the claim.  Further:

> It matters not that jurisdiction is unobtainable over a defendant in the foreign
> jurisdiction or that the parties have contracted to be venued in this State.
> There is no inconsistency in applying [CPLR 202] in either of these
> circumstances.

*Insurance Co. of N. Am. v. ABB Power Generation*, 91 N.Y.2d 180, 188, 668

N.Y.S.2d 143, 147 (1997); *see also GML, Inc. v. Cinque & Cinque*, 9 N.Y.3d 949,

951 (2008) ("[T]he plain and literal meaning of a cause of action accruing without

the state means when the cause of action comes into existence, not that a defendant

is subject to suit in that other state.").

The Appellate Division erred in finding that the statute of limitations had not

run, and never addressed the issues raised under CPLR § 202.  It affirmed the

erroneous trial court decision which granted summary judgment in favor of

Plaintiff without explanation despite the fact that Plaintiff's claims had long since

run and Defendant had raised the statute of limitations as an affirmative defense.

For the above reasons, amicus urges the court to apply CPLR § 202 to the instant

case and to reverse the Appellate Division decision.

14

## POINT II

**EVEN IF THE COURT FINDS THAT CPLR § 202 DOES NOT APPLY IN THIS CASE, THE APPELLATE DIVISION ERRED IN FINDING THAT PLAINTIFF TIMELY FILED THE INSTANT ACTION UNDER NEW YORK'S SIX-YEAR STATUTE OF LIMITATIONS.**

Even if the Court were to find that Plaintiff's claims were not time-barred under Delaware's statute of limitations pursuant to New York's borrowing statute, it should find that the trial court erred in granting summary judgment and finding that Plaintiff's claims were timely under New York's statute of limitations.[4]

---

[4] Neither the Supreme Court nor the Third Department specified on which of Plaintiff's two causes of action – breach of contract or account stated – it entered and upheld summary judgment against Defendant. Under either cause of action, summary judgment was improper in this case because Plaintiff's claims were time-barred by New York's statute of limitations.

If the trial court granted summary judgment because the cause of action was timely under a theory that the account was a "mutual, open and current account" pursuant to CPLR § 206(d), that finding is an error of law. CPLR § 206(d) provides that "[i]n an action based on a mutual, open and current account, where there have been reciprocal demands between the parties, the time within which the action must be commenced shall be computed from the time of the last transaction in the account on either side."

This Court defined a "mutual, open and current account" for purposes of CPLR § 206(d) in *Green v. Disbrow*, 79 N.Y. 1 (1879), stating that "there must be an account of mutual dealings -- not an account of items only upon one side, or an account of items upon one side upon which there had been simply payments not within six years upon the other side." In *Simpson v. Mutual of Omaha Insurance Company*, the court noted that an open, mutual and current account exists when "the parties regard the items as constituting one account and as capable of being set off one against the other so that it is only the balance that constitutes the claim," and further stated that such an account exists only "where there is an express or implied agreement between two parties to set off their mutual debts against each other." 2000 U.S. Dist. LEXIS 3814 at *17, 2000 WL 322780, at *6 (S.D.N.Y. Mar. 28, 2000) (citations omitted). The court in *Simpson* found that where the plaintiff admitted that he received monthly account statements, the account between the parties was "a monthly account and it was not therefore mutual, open and current within the meaning of 206(d)." *Id.* Therefore, where there is a revolving credit agreement in which, pursuant to the contract, there is a regular account statement sent to the customer stating an

15

The statute of limitations on a claim begins to run when the cause of action accrues. CPLR § 203(a). Pursuant to CPLR § 203(a), to determine whether an action has been commenced within the applicable statute of limitations, a court must determine the period of time between the date the cause of action accrued and the date on which the plaintiff interposed the claim. A cause of action accrues when all the facts necessary to allege the cause of action have occurred so that the plaintiff would be entitled to obtain relief in court. *Aetna Life & Cas. Co. v. Nelson*, 67 N.Y.2d 169, 175, 501 N.Y.S.2d 313, 316 (1986); *see also Triarc Corp.*, 93 N.Y.2d at 528, 693 N.Y.S.2d at 484 (finding that the cause of action accrues at the time when . . . plaintiff first had the right to bring the cause of action . . ."). Pursuant to CPLR §§ 203(c) and 304, a claim filed in the Supreme Court of New York State is interposed on the date of the filing of the summons and complaint.

## A. Breach of Contract

Under CPLR § 213, a breach of contract action must be commenced within six years. The six year statute of limitations begins to run on a contract case when a breach occurs, entitling the plaintiff to relief. *See Victorson v. Bock Laundry Mach. Co.*, 37 N.Y. 2d 395, 373 N.Y.S.2d 39 (1975). Generally, to establish a *prima facie* case of breach of a credit card contract, a plaintiff must establish the existence of a contract and any revisions; that the card was issued to the defendant

---

amount owed, that agreement cannot be considered an open, mutual and current account pursuant to CPLR § 206(d).

at his or her address; that the defendant used the card to purchase goods and services; and that the defendant breached that agreement by failing to pay what was owed. *See Citibank (S.D.), N.A. v. Martin*, 11 Misc.3d 219, 223, 807 N.Y.S.2d 284, 289 (Civ. Ct. N.Y. Co. 2005). A defendant to a breach of contract action may raise the expiration of the statute of limitations as an affirmative defense under CPLR § 3018(b).

In this case, the court erred by concluding, based on the record before it, that Plaintiff interposed its breach of contract claim prior to the running of New York's six year statute of limitations. Plaintiff's cause of action for breach of contract accrued on or about January 18, 1999, when Defendant failed to pay his credit card bill, which would mean that Plaintiff's filing of its summons and complaint on April 1, 2005 was more than six years from the date of Defendant's breach, and thus outside of New York's statute of limitations for breach of contract claims.

Plaintiff argued in its motion for summary judgment that its cause of action accrued on August 31, 1999, which is the charge-off date, not the default date.[5] The charge-off date is the wrong date to start the running of a statute of limitations because it is not the default date, but a date approximately six months after the

---

[5] A charge-off is an accounting mechanism used to remove a defaulted debt from the creditor's books, although the debt is still owed.

default date, and if the court used the charge-off date to determine that Plaintiff's claims were timely, it did so in error. [6]

In the alternative, Plaintiff also argues that the statute of limitations began to run in April 1999 when Discover Bank issued a unilateral "cashback bonus" credit to Defendant's account. (R. 19, 44.) It claims that the cashback bonus credit is "an acknowledgment of the debt which would be the date that the six-year statute of limitations period begins," and that the date of the last payment on the account "is the date that triggers the statute of limitations period." (Plaintiff Brief at 18.) There is no question that the cashback "bonus" was *not* a payment.

Under N.Y. General Obligations Law § 17-101, a debtor may, by a specific written promise, or by partial payment made in a manner consistent with acknowledging the debt, create a new or continuing contract, thus starting the running of the statute of limitations anew. However, this Court has found that partial payments only toll a statute of limitations in cases where the payment was an unqualified acknowledgment by the debtor of an amount due and a promise to pay. *Lew Morris Demolition Co. v. Board of Educ.*, 40 N.Y.2d 516, 521, 387 N.Y.S.2d 409, 411 (1976). Where there is no admissible evidence that payments came either from the alleged debtor or his or her authorized agent, or that the

---

[6] It is particularly inappropriate to use a charge off date for statute of limitation purposes because this date is peculiarly within the creditor's control, and could be set unfairly to manipulate litigation.

18

payments came from an account under the debtor's custody and control under circumstances from which an intent to pay may be inferred, courts have found the statute of limitations was not tolled by a partial payment. *See, e.g., Educ. Res. Inst., Inc. v. Piazza*, 17 A.D.3d 513, 514-15, 794 N.Y.S.2d 65, 67 (2d Dep't 2005) (citations omitted).

Accordingly, the Court cannot find that a unilateral credit issued by Discover could amount to evidence of an unqualified acknowledgment of the debt or an express promise to pay which would have tolled the statute of limitations on Plaintiff's breach of contract claim. Discover's unilateral credit to Defendant's account by no means constituted a partial payment or acknowledgment of the debt. Not only had Defendant stopped using the card months before and ceased making payments, he had cancelled the card and sent it back to Discover cut in half. If Plaintiff's position were deemed valid, then any creditor could extend a statute of limitations indefinitely by simply issuing a credit to the debtor once every six years after a missed payment.

## B. Account Stated

If the trial court granted summary judgment based on an account stated theory, this was also improper. To establish a *prima facie* case of account stated, a plaintiff must prove three elements: (1) the account was presented, (2) by mutual

19

agreement it was accepted as correct, and (3) the debtor promised to pay the amount stated. *See, e.g., Bank of New York-Delaware v. Santarelli*, 128 Misc. 2d 1003, 1004-1005, 491 N.Y.S.2d 980, 982 (Civ. Ct. Greene Co. 1985).[7] An account stated claim is governed by CPLR § 213(2) and is also subject to a six-year statute of limitations. *Stewart v. Stuart*, 262 A.D.2d 396, 397, 690 N.Y.S.2d 745, 746 (2d Dep't 1999) (citing *Donahue-Halverson, Inc. v. Wissing Construction & Building Services Corp.*, 95 A.D.2d 953, 464 N.Y.S.2d 268 (3d Dep't 1983)). To calculate the date on which the statute of limitations will run on an account stated claim, it is necessary to identify the date on which an account was stated, if at all. When the cause of action for account stated has accrued and the statute of limitations has begun to run, "it is not within the power of the creditor to extend the running of the Statute of Limitations merely by rendering the same account over again from time to time." *Id*; *see also Gaier v. Iveli*, 287 A.D.2d 375, 731 N.Y.S.2d 692, 692-93 (1st Dep't 2001).

A review of the record indicates that the statute of limitations on an account stated claim had already run when the action was commenced. The record indicates that Defendant received account statements in the mail, although it omits the account statements from December 1998 and January 1999, including only

---

[7] Granting summary judgment on an account stated claim here also was improper because Plaintiff did not submit any proof of mailing of account statements to Defendant by the original creditor.

photocopies of account statements with closing dates from February 17, 1999 to August 31, 1999, when the account was charged off. (R. 34-40.) The record also indicates that on January 27, 1999, Defendant mailed a letter to Discover Card asking that his credit card account be canceled and enclosed in the letter the credit card cut in half. According to Defendant he also telephoned Discover's Customer Service Department on or about February 24, 1999 to dispute additional fees listed in an account statement. (R. 9.) Therefore, according to Defendant, he disputed the balance set forth in the account statement that he received following his January 27, 1999 letter to Discover, and thus no account stated claim could exist as to that or any subsequent account statements. Further, any account statement Defendant received thereafter should have been deemed disputed, because the balance amount would have included the same additional fees that Defendant specifically disputed during his February 24, 1999 phone conversation with Discover. Given that any account stated claim that may have accrued in favor of Plaintiff would have started the applicable statute of limitations running in or about January 1999, Plaintiff's filing of its account stated cause of action on April 1, 2005 was time-barred by the six-year statute of limitations.

It is clear from the record that the statute of limitations had expired at the time the case was commenced, requiring the granting of summary judgment in Defendant's favor.

21

# POINT III

## SUMMARY JUDGMENT WAS IMPROPER IN THIS CASE BECAUSE PLAINTIFF FAILED TO PROVE STANDING.

### A. Debt Buyers Generally Fail to Adequately Prove Their *Prima Facie* Case

The New York trial courts that have issued written opinions in consumer debt cases have almost uniformly expressed concerns about the quality of evidence produced by debt buyers in actions to collect consumer debts. As one court memorably observed, "With great frequency, courts are presented with summary judgment motions by credit card issuers seeking a balance due from credit card holders which motions fail to meet essential standards of proof and form in one or more particulars." *Martin*, 11 Misc.3d at 220, 807 N.Y.S.2d at 287. While each case stands on its own merits, most of the decisions rendered in this area demonstrate that entities seeking to collect purchased consumer debt rarely possess the basic legal documentation required to make out a *prima facie* case. *See, e.g.*, *PRA III, LLC v. Gonzalez*, 54 A.D.3d 917, 864 N.Y.S.2d 140 (2nd Dep't 2008); *CACV of Colorado v. Ramona Santiago* 10/29/09 NYLJ 25:1 (Civ. Ct. N.Y. Co.); *Colorado Capital Investments, Inc. v. Villar*, 6/18/09 N.Y.L.J. 27: 2 (Civ. Ct. N.Y. Co.); *CACV of Colorado Capital Investments v. Pierog*, Index No. 64449/05 (Civ. Ct. N.Y. Co. 9/2/08); *Colorado, LLC v. Chowdhury*, Index No. 94642/07 (Civ. Ct. Bronx Co. 2/19/09); *CACH, LLC v. Cummings*, Index No. 22747/07 (Civ. Ct. N.Y.

Co. 11/10/08 ); *Rushmore Recoveries X, LLC v. Skolnick*, 15 Misc.3d 1139(A), 841

N.Y.S.2d 823, No. 21161/05, 2007 WL 1501643 (Dist. Ct. Nassau Co); *Palisades*

*Collection, LLC v. Haque*, 4/13/06 N.Y.L.J. 20 (Civ. Ct. Queens Co.); *Palisades*

*Collection, LLC v. Gonzalez*, 10 Misc.3d 1058(A), 809 N.Y.S.2d 482, No.

58564/04, 2005 WL 3372971 (Civ. Ct. N.Y. Co.).

Adequate proof is especially important in debt buyer cases because of

problems with accurate record-keeping. Viewed in the best light, the frequent sale

and resale of debt creates much room for error. As observed by one court: "The

Court is aware of how the market for the sale of debt currently works, where large

sums of defaulted debt are purchased, by a small number of firms, for between .04

and .06 cents on the dollar. . . . However, during this process mistakes are made,

mistakes that may seriously impact consumers and their credit." *MBNA Am.*

*Bank, N.A. v. Nelson*, 15 Misc.3d 1148(A), 841 N.Y.S.2d 826, No. 13777/06, 2007

WL 1704618, *2 (Civ. Ct. Richmond Co.). The same court, specifically

addressing issues of assignment, stated:

> Because multiple creditors may make collection efforts for the same
> underlying debt even after assignment, for any variety of reasons (i.e.
> mis-communication or clerical error) failure to give notice of an
> assignment may result in the debtor having to pay the same debt more
> than once or ignoring a notice because the debtor believes he or she
> has previously settled the claim. Further, debtors are often left
> befuddled as they get the run-around from a panoply of potential
> creditors when inquiring about their defaulted accounts, during which
> time they lose the ability to negotiate payments with the current debt

owner (whoever that may be at the time) and therefore incur
additional fees and penalties.

15 Misc.3d 1148(A), 841 N.Y.S.2d 826, 2007 WL 1704618, *5 -6.

As discussed above, there has been an explosion of consumer debt litigation
in New York's courts. Given the current economic climate, this trend can be
expected to continue. The trial courts, which hear a large volume of consumer
debt cases every day, have made sound decisions on matters pertaining to evidence
offered in support of debt buyers' cases. Amicus urges the Court to adopt the
approach taken by the majority of the trial courts in this state, which holds debt
buyers to the same basic evidentiary standards required in other types of civil cases
filed in New York State courts.

### B. As A Third-Party Debt Buyer Seeking Summary Judgment, Plaintiff Failed to Establish Standing to Bring Its Case

Because Plaintiff Portfolio Recovery Associates is an assignee, it must prove
as part of its *prima facie* case that it actually owns the debt sued upon and therefore
has standing to sue Defendant. Where a plaintiff fails to provide competent
evidence that it owns a debt, it cannot prevail on summary judgment. *Dabbs*, 25
A.D.3d 787, 789, 808 N.Y.S.2d 746, 749. It is the assignee's burden to prove the
assignment, and failure to do so renders the litigation a nullity. *Martin*, 11 Misc.3d
at 226, 807 N.Y.S.2d at 291; *see also Copelco Capital v. Packaging Plus Servs.*,
243 A.D.2d 534, 535, 663 N.Y.S.2d 104 (2d Dep't 1997).

24

In this case, Plaintiff failed to provide the actual assignment and failed to provide sufficient evidence of its alleged assignment or ownership of Defendant's debt with Discover and, therefore, failed to prove that it had standing to sue. As such, summary judgment should not have been granted in its favor and the lower court's affirmance should be reversed.

*1.    Plaintiff Failed to Submit an Affidavit from an Individual with Personal Knowledge of the Facts*

The standards for evidence submitted in support of summary judgment are well established. CPLR § 3212(b) requires that, among other things, a party support its motion with an affidavit from "a person having knowledge of the facts." As this Court has explained:

> The proponent of a motion for summary judgment "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. . . . In this regard, CPLR 3212 [b] provides that a summary judgment motion "shall be supported by affidavit" of a person "having knowledge of the facts" as well as other admissible evidence (see *GTF Mktg. v Colonial Aluminum Sales*, 66 N.Y.2d 965, 967, 489 N.E.2d 755, 498 N.Y.S.2d 786 [1985]). A conclusory affidavit or an affidavit by an individual without personal knowledge of the facts does not establish the proponent's prima facie burden (see e.g. *Vermette v Kenworth Truck Co.*, 68 N.Y.2d 714, 497 N.E.2d 680, 506 N.Y.S.2d 313 [1986]).

*JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 385, 795 N.Y.S.2d 502, 510 (2005).

25

In determining whether an affiant has personal knowledge, New York courts require that the affiant make some showing of how she came to know the facts stated.   An affidavit lacks probative value if it "fail[s] to assert facts from which personal knowledge . . . may be inferred." *Dickerson v. Health Mgt. Corp. of Am.*, 21 A.D.3d 326, 328-29, 800 N.Y.S.2d 391, 394 (1st Dep't 2005).  Thus, where the movant's executive vice president submitted an affidavit that "did not indicate the sources (e.g., documents he may have searched or reviewed, or persons he consulted) of his familiarity with the [matter] at issue," the movant did not show entitlement to summary judgment. *Barraillier v. City of New York,* 12 A.D.3d 168, 169, 784 N.Y.S.2d 55, 56 (1st Dep't 2004).  Conversely, courts have upheld affidavits that explained the basis of the affiant's knowledge. *See, e..g., Tahini Invs. v. Bobrowsky,* 99 A.D.2d 489, 490, 470 N.Y.S.2d 431, 433 (2d Dep't 1984) (finding affidavit sufficient where "affiant states that she is an agent of plaintiff corporation and that she participated in the negotiations for the [transaction].").

Further, "[w]hen the affiant relies on documents, the documents relied upon must be annexed . . . and the affiant must establish an adequate evidentiary basis for them." *Gonzalez*, 10 Misc.3d 1058(A), 2005 WL at \*1 (citations omitted). Where a corporate officer's affidavit stated that he caused a search of the company's records to be conducted, but failed to identify the employees who conducted the search and failed to produce the records themselves, the affidavit

26

lacked probative value and did not meet CPLR § 3212's requirement that the affiant have knowledge of the facts. *Dempsey v. Intercontinental Hotel Corp.*, 126 A.D.2d 477, 479, 511 N.Y.S.2d 10, 12 (1st Dep't 1987). In short, an affidavit must contain the evidentiary basis for its assertions; if it does not, it lacks foundation. *See Grullon v. City of New York*, 297 A.D.2d 261, 263, 747 N.Y.S.2d 426 (1st Dep't 2002).

Here, Plaintiff offers two affidavits, described above in the Statement of Facts, to support its claim that it is an assignee of the alleged debt that Defendant incurred to the original creditor, Discover: an "Affidavit of Claim" and an "Affidavit of Facts." Both contain serious foundational deficiencies, and do not support Plaintiff's claim of assignment.

The Affidavit of Claim (which contains a date that is only partly legible) is deficient for two reasons. First, the affiant fails to set forth the basis for her knowledge. She does not claim to have personal knowledge of the assignment transaction. Although she states her job title, "Team Leader," she does not provide a description of her employment duties from which the Court could infer that she would be in a position to know whether Defendant's account was assigned. There is nothing about the title "Team Leader" from which one could infer that the affiant participated in the assignment or in the maintenance of records of the assignment. Second, the affiant relies on a document, the August 2000 Sale

27

Agreement, to assert the facts in her affidavit, but she does not annex this document.

The May 20, 2005 "Affidavit of Facts" by Elaine F. Lark, who identifies herself as a "Legal Specialist" of the Plaintiff, is deficient for three reasons. First, while Ms. Lark blithely asserts that she has "personal knowledge of the facts of this account," she does not set forth any basis for her knowledge. She provides no description of her job duties or any other explanation that would establish the basis of her knowledge. Second, the information she provides does not prove that Defendant's account was assigned to Plaintiff. While Ms. Lark states, "DISCOVER BANK (the Assignor) assigned account to PORTFOLIO RECOVERY ASSOCIATES, LLC." (R. 28.), she does not provide the date, does not refer to a written agreement, and provides no indication, other than her say so, that Defendant's account was actually assigned to Plaintiff. Third, Ms. Lark seems to be adopting some other, unnamed person's affirmation as her own testimony. She states, "I have read the attached affirmation and concur with same." The only affirmation included with the Affidavit of Facts is the affirmation in support of summary judgment submitted by Plaintiff's attorney. This affirmation is dated November 15, 2005, nearly six months after the date of the Lark Affidavit. (R. 17-22, 28.)

28

Accordingly, both affidavits fail to establish that either affiant has personal knowledge of the assignment, and should not have been relied on by the trial court in granting summary judgment.

### 2.   Plaintiff Failed to Comply with the Best Evidence Rule

Plaintiff claims that Discover assigned Defendant's account to Plaintiff through a sale agreement dated August 28, 2000. (R. 27). However, Plaintiff failed to provide the actual assignment and instead argued that the Court should accept derivative proof of the assignment in the form of an "Affidavit of Claim." (Plaintiff Brief at 23.) Plaintiff offered no explanation for the absence of the assignment. Accordingly, allowing Plaintiff to rely on the "Affidavit of Claim" as proof of assignment contravenes the best evidence rule.

An assignment agreement is a contract (*see, e.g., Bank of New York v. Dell-Webster*, 23 Misc.3d 1107(A), 2008 WL 5869117, *2 (Sup. Ct. Bronx Co. 2008)) and the best evidence of a contract is the contract itself. *Matter of the Arbitration between Zurich-American Ins. Co.*, 89 A.D.2d 542, 452 N.Y.S.2d 633 (1st Dep't 1982); *Rukaj v. Roth*, 237 A.D.2d 503, 656 N.Y.S.2d 889 (2d Dep't 1997). To comply with the best evidence rule, an assignee must produce the actual contract of assignment or provide a suitable explanation for the absence of the original document. *See Schozer v. William Penn Life Ins. Co.*, 84 N.Y.2d 639, 620 N.Y.S.2d 797 (1994). "Where the contents of a writing are in issue, the original

document, unless otherwise excused, must be produced." *Mastan Co. v. Weil*, 84 A.D.2d 657, 659, 444 N.Y.S.2d 315, 318 (3d Dep't 1981).

This Court has held that the proponent of secondary evidence of the contents of an unproduced original must sufficiently explain the unavailability of the primary evidence. *Schozer*, 84 N.Y.2d at 644, 620 N.Y.S.2d at 799. The proponent must also establish that it "has not procured [the original writing's] loss or destruction in bad faith." *Id.* The proponent's burden may include "a showing of a diligent search in the location where the document was last known to have been kept . . . and testimony of the person who last had custody of the original." *Id.* This Court has also provided the following guidance for the exception to the best evidence rule:

> Indeed, the more important the document to the resolution of the ultimate issue in the case, "the stricter becomes the requirement of the evidentiary foundation [establishing loss] for the admission of secondary evidence." In other words, the court should give careful consideration to the possible motivation for the nonproduction of the original in determining whether the foundational proof of loss was sufficient.

*Id.* (internal citations omitted).

In this case, Plaintiff failed to produce the actual assignment and failed to offer an explanation for its absence. Under these circumstances, the affidavit submitted instead of the contract cannot legitimately serve as a substitute for the actual contract. In *PRA III, LLC v. Mac Dowell*, 15 Misc.3d 1135(A), 841

30

N.Y.S.2d 822, No. 40841/04, 2007 WL 1429026 (Civ. Ct. Richmond Co.), the court had before it an "affidavit of ownership and sale of claim" from an officer of Portfolio Recoveries Associates and PRA III that stated that Sears National Bank had sold the debt to PRA III. The court ruled: "This conclusory affidavit fails to demonstrate any evidence of consideration paid or delivery of the assignment." *Id. See Martin,* 11 Misc.3d 219, 226, 807 N.Y.S.2d 284, 291; *PRA III, LLC v. Gonzalez,* 54 A.D.3d 917, 864 N.Y.S.2d 140; *V.W. Credit, Inc. v. Alexandrescu,* 13 Misc.3d 1207(A), 824 N.Y.S.2d 759. *See also Gonzalez,* 10 Misc.3d 1058(A), 2005 WL at *1 ("[w]hen the affiant relies on documents, the documents relied upon must be annexed . . . and the affiant must establish an adequate evidentiary basis for them.") As Plaintiff failed to comply with the best evidence rule, the lower court erred in awarding summary judgment.

### 3. *The Business Records Exception is Inapplicable*

Plaintiff argues that the lower court did not err in granting summary judgment in this case because the Affidavit of Claim was properly admitted as a business record to prove its ownership of the debt. (Plaintiff's Brief at 23.) However, the Affidavit of Claim is not a business record and cannot be used to prove that Plaintiff is the assignee of Defendant's debt.

31

Plaintiff fails to meet any of the foundational requirements for the business records exception. This Court has articulated the business records exception to the hearsay rule as follows:

> These concepts appear as the foundation requirements of CPLR 4518 (a): first, that the record be made in the regular course of business -- essentially, that it reflect a routine, regularly conducted business activity, and that it be needed and relied on in the performance of functions of the business; second, that it be the regular course of such business to make the record (a double requirement of regularity) -- essentially, that the record be made pursuant to established procedures for the routine, habitual, systematic making of such a record; and third, that the record be made at or about the time of the event being recorded -- essentially, that recollection be fairly accurate and the habit or routine of making the entries assured.

*People v. Kennedy*, 68 N.Y.2d 569, 579-80, 510 N.Y.S.2d 853, 859-60 (1986).

The Affidavit of Claim fails the first requirement because it is plainly a document prepared in anticipation of litigation, and not in the ordinary course of business. *See, e.g., National States Elec. Corp. v. LFO Constr. Corp.*, 203 A.D.2d 49, 50, 609 N.Y.S.2d 900, 901 (1st Dep't 1994).

Similarly, the Affidavit of Claim fails the second prong of the business record rule, as the record is devoid of evidence that it is in the ordinary course of Discover's business to make records such as the "Affidavit of Claim." Although Plaintiff's brief states, "the affiant's knowledge is based upon books and records maintained in the ordinary course of business that are within her control and supervision," no such words are stated by a witness or affiant anywhere in the

32

record. (Plaintiff's Brief at 29.) An attorney lacking personal knowledge of her client's practices for maintaining business records cannot lay a foundation for the client's business records, even by affirmation. *Midborough Acupuncture, P.C. v. New York Cent. Mut. Fire Ins. Co.*, 13 Misc.3d 132(A), 2006 WL 2829993 (App. Term 2d & 11th Jud Dists 2006) (finding affirmation by an attorney who lacked personal knowledge was insufficient to lay a foundation for a determination that his clients' documents were admissible as business records).

The third criterion – that the record be made at or about the time of the event being recorded – is flatly contradicted by the affidavit itself. The affidavit is dated October 2004, but states that the account was assigned as part of a Sale Agreement dated August 28, 2000 – more than four years before the affiant made the affidavit. Because the affidavit was not made contemporaneously with the assignment, it cannot be admitted as a business record. *People v. Mertz*, 68 N.Y.2d 136, 506 N.Y.S.2d 290 (1986). Indeed, records made eight months after a business transaction have been found to fail this foundational requirement of the business records rule. *Standard Textile Co. v. Nat'l Equip. Rental, Ltd.*, 80 A.D.2d 911, 437 N.Y.S.2d 398 (2d Dep't 1981). *See also Matter of Gregory M.*, 184 A.D.2d 252, 585 N.Y.S.2d 193 (1st Dep't 1992), *aff'd* 82 N.Y.2d 588, 606 N.Y.S.2d 579 (1993). Surely, four years is well beyond the scope required.

33

In sum, Plaintiff's evidence that it is the actual assignee of Defendant's alleged debt to Discover Bank fails to meet basic evidentiary standards for summary judgment for three reasons: (1) the affidavits submitted in support of Plaintiff's motion lack foundation; (2) Plaintiff's proof of assignment does not comply with the best evidence rule; and (3) Plaintiff's proof of assignment does not qualify as a business records exception to the hearsay rule. For these reasons, the Court should reverse the Appellate Division's affirmance of the Supreme Court's order granting summary judgment in favor of Plaintiff.

## CONCLUSION

The Appellate Division decision affirming the trial court's grant of summary judgment to Plaintiff should be reversed for the following reasons:

(1)     Pursuant to CPLR § 202, the action was time-barred, because the trial court should have applied Delaware's three-year statute of limitations;

(2)     Under New York State's six-year statute of limitations, the lawsuit was untimely, because Discover Bank's unilateral "cashback bonus" issued to Defendant after he had cancelled the card did not extend the time in which to commence the action;

(3)     Plaintiff failed to establish standing to commence the lawsuit because it failed to prove that it owns the debt on which it sued.

34

For these reasons, the decision of the Appellate Division affirming the trial

court should be reversed.


Respectfully submitted,

ASSOCIATION OF THE BAR
OF THE CITY OF NEW YORK
42 West 44th Street
New York, NY 10036-6690
(212) 382-6600

CIVIL COURT COMMITTEE
CONSUMER AFFAIRS COMMIITEE

By: / Janet Ray Kalson


NEW YORK CITY DEPARTMENT OF
CONSUMER AFFAIRS

By: Marla Tepper




Dated: December 22, 2009

35

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | **AFFIDAVIT OF SERVICE** |
| | )    ss.: | **BY MAIL** |
| COUNTY OF NEW YORK | ) | |

BARRY BARON
354 VAN NAME AVE.
STATEN ISLAND, NY 10303, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

On    DEC 2 0 2009    DEC 2 3 2009

deponent served the within: **Joint Brief for *Amici Curiae* New York City Bar Association and The New York City Department of Consumer Affairs**

**upon:**

**Jared King**
**Defendant-Appellant**
**156 S. Riber Street**
**Coxsackie, New York  12051**

**Timothy Murtha**
**Malen & Associates**
**Attorneys for Plaintiff-Respondent**
**123 Frost Street**
**Wesbury, New York  11590**
**(516) 479-5952**

**Carolyn E. Coffey**
**Staff Attorney**
**MFY Legal Services**
**299 Broadway, 4th Floor**
**New York, New York  10007**
**(212) 417-3701**

the address(es) designated by said attorney(s) for that purpose by depositing  3 true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

Sworn to before me on    DEC 2 3 2009

**MARIA MAISONET**
Notary Public State of New York
No. 01MA6204360
Qualified in Bronx County
Commission Expires Apr. 20, 2013

Job # 226602