**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

MICHAEL DIAZ,

Plaintiff,

-against-

PORTFOLIO RECOVERY ASSOCIATES, LLC

AND

MALEN & ASSOCIATES, P.C.

Defendants.

---

**INDEX No.:10-CV-3920 (MKB)(CLP)**

**Hon. Margo K. Brodie**
**Hon. Cheryl L. Pollak**

**MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT MALEN & ASSOCIATES, P.C.'s OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION**

April 26, 2012

BY: SCHLANGER & SCHLANGER, LLP

s/ Daniel A. Schlanger, Esq
Daniel A. Schlanger, Esq. (ds-9330)
Schlanger & Schlanger, LLP
Attorneys for Plaintiff
343 Manville Road
Pleasantville, NY 10570

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** 1

**ARGUMENT** 5

I. The Magistrate's Report Exhaustively And Correctly Analyzed The Applicability Of CPLR 202 To Cases Such As The State Court Action, As Well As Whether *Portfolio Recovery Assoc., LLC v. King*, 14 N.Y. 3d 410 (2010) Reversed Existing Law. 5

II. The Magistrate's Reference To The Fact That No Discovery Has Been Conducted Was Entirely Proper, As It Merely Explained Why The Level Of Detail Provided In The Complaint Regarding Lack Of Meaningful Review Was Sufficient At This Early Stage. 10

III. Defendant's Contention That *Miller* Applies Only To Dunning Letters Is Incorrect; Defendant's Contention That A State Court Complaint Is "Not A Communication" Under The FDCPA Is Both Incorrect And Improperly Raised For The First Time. 11

IV. The R&R Did Not Improperly Rely Upon "Sources Not Part Of The Record" When It Considered An *Amicus* Brief Filed In King By The Civil Court And Consumer Law Committees Of The New York City Bar. 18

V. The R&R Did Not "Improperly Expand The Allegations In The Complaint" By Using The Term "Robosigning" Or By Including A Simple Mathematical Calculation Based On The Numerical Data Provided In The Complaint. 19

VI. Defendant's Other Arguments Regarding Application of Judiciary Law 487 Lack Merit: The Magistrate Correctly Found That The Complaint Alleges Intentional Conduct And A Deceptive Pattern And Practice. 22

**CONCLUSION** 24

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

MICHAEL DIAZ,

Plaintiff,

-against-

PORTFOLIO RECOVERY ASSOCIATES, LLC

AND

MALEN & ASSOCIATES, P.C.

Defendants.

---

**MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT MALEN & ASSOCIATES, P.C.'s OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION**

**INDEX NUMBER: 10-CV-3920 (MKB)(CLP)**

**Hon. Margo K. Brodie**
**Hon. Cheryl L. Pollak**

Michael Diaz, Plaintiff in this action, by and through his counsel, Schlanger & Schlanger, LLP, respectfully submits this Memorandum of Law in Response to Defendant Malen & Associates, PC's Objection to Magistrate Pollak's Report and Recommendation. Specifically, as set forth below, Defendant's submission mischaracterizes the Magistrate's thorough and thoughtful analysis, the relevant case law and the allegations set forth in the complaint. Defendant's Objection is wholly without merit and should be denied in its entirety. [1]

## PRELIMINARY STATEMENT

Plaintiff asserts claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*; New York General Business Law §349, and Judiciary Law §487. The core of Mr. Diaz's claims is that Defendant Malen & Associates, PC ("Malen" or "Defendant") filed a consumer collection action against him in New York Civil Court (Kings County) that was time-barred pursuant to New York's borrowing statute, CPLR §202[2]; and also that Malen falsely represented

---

[1] Defendant Portfolio Recovery Associates, LLC and Mr. Diaz settled in November 2010, leaving Malen & Associates, P.C. as the only remaining Defendant in the action.
[2] See Kimber v. Federal Financial Corporation, 668 F.Supp. 1480 (M.D.Ala. 1987) and progeny, e.g. Goins v. JBC & Associates, P.C., 352 F.Supp.2d 262 (D.Conn. 2005); Baptist v. Global Holding and Inv. Co., L.L.C., (E.D.N.Y. 2007).

that its attorneys had meaningfully reviewed the pleadings in that lawsuit when they had not.[3] Mr. Diaz alleges that these actions were willful and are part of Defendant's business model of routinely and intentionally filing large numbers of time-barred claims and claims that no attorney has meaningfully reviewed in New York's state courts, secure in the knowledge that the vast and overwhelming majority of the tens of thousands of consumers that Defendant sues in New York will lose by default or, in the rare instances where the state court defendants answer, they will appear *pro se* and lack the knowledge and resources to challenge Defendant's deceptive and unfair practices.

In a detailed, 30-page Report and Recommendation ("R&R"), Magistrate Pollak painstakingly analyzed the allegations of the complaint and Defendant's arguments regarding their supposed deficiencies and found all of Defendant's arguments lacking. Specifically, Magistrate Pollak held that, if Plaintiff's allegations proved true, Defendant had filed a time-barred collection lawsuit against Plaintiff. R&R at 23. The R&R correctly held that pursuant to New York's borrowing statute, CPLR § 202, New Hampshire's 3-year statute of limitations rather than New York's 6-year statute of limitations applied to the state court collection action. Id. at 9-12, 17-22. The R&R correctly rejected Defendant's contention that the New York Court of Appeals decision in Portfolio Recovery Associates v. King, 14 N.Y 3d 410 (2010)("King") had reversed existing precedent when King applied CPLR § 202 to shorten the statute of limitations in a consumer collection action from 6 to 3 years. Because King did not reverse existing precedent or create a "new rule", the Magistrate held that a finding that the collection suit filed by Defendant was time-barred did not constitute impermissible, "retroactive" application of new law. Id. at 12-16.

[3] See Miller v. Upton, Cohen & Slamowitz, 687 F. Supp.2d 86 (E.D.N.Y. 2009)("Miller III") following remand from Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2nd Cir. 2003)(J. Sotomayor)("Miller I").

With regard to Plaintiff's claims involving Defendant's failure to meaningfully review the state court complaint, the Magistrate correctly found that Plaintiff's allegation of failure to meaningfully review the complaint filed against Mr. Diaz, coupled with the allegation that Malen filed over 13,000 state court complaints in 2009 (the year in question); that Malen Attorney Wolstein signed more than one-third of the 10,904 state court complaints Malen filed that year in New York Civil Courts, and that these filings were "based on an alleged broad pattern of deceptive filings that plaintiff claims were 'robosigned' without meaningful review and which were time-barred on their face" (R&R at 29), were sufficient to allege claims under the FDCPA (id. at 24-26), as well as Judiciary Law Section 487 (id. at 28-29) and New York General Business Law Section 349 (id. at 27).

In response, Defendant objects on the following grounds:

1. Defendant contends that the R&R "fails to address the applicability of CPLR § 202 to cases such as the State Court Action". Objection at p. 2. This is simply false, as the Magistrate's Report exhaustively analyzed this very question and held that there was no basis for Defendant's contention that, pre-King, CPLR § 202 was limited to commercial contract disputes involving choice of law clauses. Id., e.g. at 9-10. Likewise, Defendant's contention that the R&R "fails to consider" that King constituted a reversal of existing precedent (Objection at 2-3) is frivolous, as the R&R examined this question in detail and found Defendant's position lacking on the merits, after careful review of the statute, the Court of Appeals decision, prior Court of Appeals decisions and the cases cited by Defendant. R&R at 11-16.
2. Defendant contends that the Magistrate's reference to the fact that no discovery has been conducted was improper. Objection at 1, 5-6. To the contrary, it is well established that the standard on a motion to dismiss is lenient precisely because it is a pre-discovery motion and the Magistrate's reference to this fact in her assessment of legal sufficiency of the allegations was entirely unremarkable. E.g. Felix-Torres v. Graham, 521 F. Supp. 2d 157, 162 (N.D.N.Y 2007).
3. Defendant contends that Plaintiff's FDCPA claim regarding Defendant's lack of meaningful review of the state court complaint are insufficient because (a) "*Miller I*

and *Miller III*. . . addressed only form collection letters not litigation and pleadings" (Objection at 2); and (b) because pleadings and other litigation documents are not "communications" under the FDCPA. Id. With regard to the *Miller* cases, *Miller III* expressly extends to state court pleadings, a fact of which opposing counsel is aware, given his failed attempt, as counsel to the *Miller* defendants, to have the *Miller III* court amend its decision on this point. The contention that a pleading is not a "communication" is equally unavailing. Even if this Court were to consider this issue, raised for the first time in Defendant's Objection, Defendant is wrong. Not only has the 2nd Circuit held that pleadings are communications (Goldman v. Cohen, 445 F.3d 152, 155-157 (2d Cir. N.Y. 2006), but the 2006 amendments to the FDCPA and subsequent case law place the issue beyond cavil.

4. Defendant contends that the R&R improperly relied upon "sources not part of the record" when it considered "amicus briefs filed by [the Civil Court and Consumer Law Committees] of the New York City Bar" in King. Objection at 2. This contention is frivolous. The Magistrate cited to the Committees' amicus filings in King, *in determining that Defendant had mischaracterized the Committees' position in its own submission.*

5. Defendant contends that R&R "improperly expands the allegations in the Complaint" because it refers to "robosigning", a term not found in the Complaint, and because, the Magistrate -- in a footnote – calculates the mean number of state court collection complaints filed daily by Malen attorney Jeffrey Wolstein, Esq. (based on data contained in the Amended Complaint) and suggests that the figure bolsters the allegation of lack of meaningful review. Objection at 6. Defendant is, again, grasping at straws. The complaint, although it does not use the term "robosigning" clearly describes the phenomenon, and the simple arithmetic and common sense observation contained in the purportedly objectionable footnote is, at most, an unremarkable example of Court drawing "drawing all reasonable inferences" in favor of the non-moving party.

6. Finally, Defendant contends that the Magistrate erred with regard to her analysis of Judiciary Law 487 because "the state of the law at the time the State Court Action was filed 'negates any allegation of 'intent'" and because Plaintiff did not allege a "mass scheme" to deceive. Objection at 14. Both arguments are incorrect, the former being nothing more than a recycling of Defendant's meritless arguments

regarding King and CPLR § 202, and the latter being flatly contradicted by Plaintiff's Amended Complaint, to which the Magistrate amply cited.

## ARGUMENT

### I. The Magistrate's Report Exhaustively And Correctly Analyzed The Applicability Of CPLR § 202 To Cases Such As The State Court Action, As Well As Whether *Portfolio Recovery Associates, LLC v. King*, 14 N.Y. 410 (2010) Reversed Existing Law.

Defendant claims that the R&R "fails to address the applicability of CPLR § 202 to cases such as the State Court Action", and "failed to consider" whether King constituted a reversal of existing precedent. Objection at p. 2-3. This is simply false, as it is precisely this discussion that makes up the bulk of the R&R, including the viability of Defendant's assertion that "Prior to King, the New York state courts only applied [CPLR] CPLR § 202 to commercial transactions wherein it was alleged that there was a breach of contract and the contract contained a choice of law provision in favor of a foreign jurisdiction" as Defendant claimed in its motion. Defendant's MOL In Support of Motion to Dismiss ("Def's Memo") at p. 4, n.1.

Rather, the Magistrate systematically addressed every argument raised by Defendant, e.g. regarding the supposed limitation on CPLR § 202 pre-King, the supposed reversal of existing caselaw regarding the scope of CPLR § 202 rendered by King, etc. and found each to be lacking. The Magistrate noted that "defendant concedes that the 'Court of Appeals stated that it was not changing the law'" (R&R at 8, quoting Def.'s Memo at 7) and then observed that:

> [T]he text of Section 202 has not changed since 1963, and nothing in the statutory language suggests that this provision was intended to be limited to "commercial or not apply to actions such as this one where an attempt is made to collect a debt. (See PI. 's Mem.' at 8, II)[4]. Indeed, cases prior to King have applied this provision in suits that have not involved commercial transactions, See. e.g . *Antone v General Motors Com., Buick Motor Div.*, 64 N.Y.2d 20, 1984, 473 N.E.2d 742,

[4] "Pl.'s Mem:' refer to the Memorandum of Law in Opposition to Defendant Malen & Associates, P.C.'s Motion to Dismiss, filed January 7, 2011.

> 484 N.Y.S.2d 514 (1984) (applying CPLR § 202 in a products liability case involving a defective vehicle).
>
> Similarly, to the extent that defendant premises its argument that matters of procedure are governed by the laws of the state of New York" on cases involving contractual choice of law clauses (Def.'s Mem. at 6 (citing *Sears Roebuck & Co. v. Enco Assoc.*, 43 N.Y.2d 389, 372 N.E.2d 555, 401 N.Y.S.2d 767 (1977). . .

R&R at 9.

The R&R then correctly noted that "there is nothing in the statute that mentions contractual choice of law provisions. Nor does defendant cite any case authority for the proposition that Section 202 was intended to be specific to contract claims" Id. at 10, citing multiple cases applying CPLR § 202 to non-contract disputes. Id. at 10.

The Magistrate then turned to the Court of Appeals's analysis in King, noting that the Court "makes clear that the Court was not stating a new rule of law or clarifying any ambiguity in the statute" Id., and discussing King for some two pages. Id. at 10-12.

Magistrate Pollak next methodically proceeded to Defendant's unavailing contention that liability in the instant case would constitute a "retroactive" application of King, because "the King decision changed the applicability of Section 202 and that this interpretation was not the state of the law in 2009 when the State Action was filed." Id. at 12. In a detailed, four page analysis, the R&R found that "defendant fails not only to meet the threshold requirement set forth in Chevron [Oil Co. v. Hudson, 404 US 97 (1971)] – namely that King enunciated a new principle of law – but defendant also fails to satisfy the balancing test of Chevron". R&R at 13. On the first point, the Magistrate correctly noted that the statutory language "does not support defendant's claim of a 'debt buyer exemption" to the borrowing statute"; that "the Court of Appeals in King cited its own precedent in holding that the Appellate Division should have applied CPLR § 202 to plaintiff's claims; and that the "Court of Appeals did not suggest that it

was in any way overruling established precedent or enunciating a new interpretation of law". Id.[5]

In rejecting Defendant's contention, repeated in its Objection that courts "universally" held that CPLR § 202 was inapplicable to collection actions, the Court correctly noted that Defendant had failed to cite a single case that even mentioned CPLR § 202. Id. at 14-15. Rather, the Magistrate saw the proffered cases for what they were, a hodgepodge mostly unpublished and/or involving *pro se* consumers, which fail to "make any reference to Section 202" and, instead, "simply recite the six-year statute for breach contract". Id. at 15. The Magistrate correctly concluded that the supposition that these cases constitute a sub-silencio "debt-buyer's exemption" is simply untenable, inasmuch as there is no indication that CPLR § 202 was ever raised by any party.

Defendant's citation to the lower courts' decisions in King itself (prior to reversal of that decision by the Court of Appeals) is equally unavailing. The Trial Court's unpublished decision is entirely entirely pro forma, and contains no discussion of the statute of limitations (or any other claim or defense), much less the borrowing statute. Order and Decision, Portfolio Recovery Associates, LLC v. King, Index 323-05, previously attached at p. 35 of Exhibit 4 to Pl's Opp to MTD. The Third Department considered and discussed only the issue of whether to apply a credit card agreement's choice of law provision to statute of limitations questions, and failed to refer to, much less discuss, CPLR § 202.[6]. Opposing counsel's suggestion that these decisions created binding precedent with regard to the applicability of CPLR § 202, limiting the

[5] With regard to the Chevron balancing issue, Defendant does not raise any objection to Magistrate Pollak's thorough and persuasive analysis and, for this reason, the issue is not addressed herein. As Defendant has noted, the district court's review of the R&R extends "only as to those portions of the report and recommendation to which the party objects." Objection at 3, citing, *inter alia*, FRCP Rule 72(a)("A party may not assign as error a defect in the order not timely objected to").

[6] Indeed, opposing counsel argued unsuccessfully before the Court of Appeals that because the issue had never been raised before the state trial court or the Third Department, it should not be considered by the Court of Appeals. Portfolio Recovery Associates, PLLC v Jared King, Index No.: 05/323, Respondent's Brief In Response To Amicus Curiae Briefs, pp. 3-9, attached to Plaintiff's MOL in Opposition to Defendant's Motion to Dismiss (Pl's Opp.) as Exhibit 2. See Pl's Opp. to MTD at p. 9.

borrowing statute to commercial transactions (notwithstanding Court of Appeals decisions to the contrary) has no merit, and the R&R cannot be attacked on this basis.

Finally, the R&R closely examined Defendant's contention that it is improper to apply CPLR § 202 to claims in which the consumer could not, as a matter of law, have been sued in the state whose statute limitations is borrowed and correctly found it lacking, noting that each of the cases relied upon by Defendant had been issued prior to the Court of Appeals decision in Insurance Co. of North America, which held that '"it matters not that jurisdiction is unobtainable over a defendant in the foreign jurisdiction or that the parties have contracted to be venued in this State"' R&R at 18-19, quoting Insurance Company of North America v. ABB Power Generation, 91 N.Y. 2d 180, 185 (1997). See also, R&R at 19, quoting GML, Inc. v. Cinque & Cinque, P.C., 9 N.Y. 3d 949 (2007) for the proposition that '"[i]t is irrelevant whether defendants are. .. subject to suit in Tennessee and unnecessary to determine whether defendants were subject to personal jurisdiction in Tennessee."'[7]

Faced with an unambiguous statute; an absence of any case discussing and adopting the so-called "debt buyer's exemption" to CPLR § 202; prior non-commercial cases applying CPLR §202; and a Court of Appeals decision regarding a consumer collection matter in which, Defendant concedes the Court "stated that it was not changing the law", Defendant lamely contends that the R&R erred in finding a plausible FDCPA claim because same would nonetheless constitute a "retroactive" application of King, absent citation to a pre-King *debt buyer* case in which CPLR § 202 was applied.

---

[7] Defendant's obstinate re-assertion of this argument in its objection, without reference to the Court of Appeals' decisions in Insurance Company of North America is particularly baseless given that King explicitly re-affirmed Insurance Company, notwithstanding Malen and opposing counsel's urging to the contrary in King. 14 NY 3d at 417. ("Contrary to Portfolio's contention, it is of no moment that Portfolio was unable to obtain personal jurisdiction over King in Delaware; this Court has held that it is not inconsistent to apply CPLR 202 in such a situation.")

Because Defendant does not renew in its Objection the assertion that New Hampshire's statute of limitations was tolled, Plaintiff does not address it herein. The R&R thoroughly analyzed and correctly rejected Defendant's argument on this point at p. 20-22.

Defendant's argument would create, in effect, a "law of the horse"[8] regarding debt buyer claims, exempting them from generally applicable legal principles.  Instead of providing some basis as to why general principles regarding statutory construction, interpretation of prior Court of Appeals cases involving analysis of CPLR § 202, principles of retroactivity, etc. would not apply to the particular type of claim at issue here, Defendant turns the law on its head and demands explicit authority for the proposition that the particular variety of case it brought would be covered by the general principles already well established.  The defendant's argument is the equivalent of a defendant in a criminal proceeding attempting to argue that his conviction raised novel issues of law because no person with red hair had previously been convicted under the statute in question.  One might as well ask why, absent explicit discussion of the topic, the statute and Court of Appeals precedent would be thought to apply to cases brought on Tuesdays or during a leap year.   There is no reason why credit collection actions should be singled out as a subset of contract actions in general in examining CPLR §202.

---

[8] The mythical "law of the horse"  is  explained in some detail by Judge Frank H. Easterbrook, in arguing  that positing a separate "law of cyberspace" is illogical:

> [T]he best way to learn the law applicable to specialized endeavors is to study general rules. Lots of cases deal with sales of horses; others deal with people kicked by horses; still more deal with the licensing and racing of horses, or with the care veterinarians give to horses, or with prizes at horse shows. Any effort to collect these strands into a course on "The Law of the Horse" is doomed to be shallow and to miss unifying principles. Teaching 100  percent of the cases on people kicked by horses will not convey the law of torts very well. Far better for most students--better, even, for those who plan to go into the horse trade--to take courses in property, torts, commercial transactions, and the like, adding to the diet of horse cases a smattering of transactions in cucumbers, cats, coal, and cribs. Only by putting the law of the horse in the context of broader rules about commercial endeavors could one really understand the law about horses.

Easterbrook,  CYBERSPACE AND THE LAW OF THE HORSE, 1996 U Chi Legal F 207,see also, Hy Cite Corp. v. Badbusinessbureau.com.LLC., 297 F. Supp. 2d 1154 (W.D. Wis. 2004)." The best way to learn the law applicable to specialized endeavors is to study general rules," citing to Judge Easterbrook's article.

**II. The Magistrate's Reference To The Fact That No Discovery Had Been Conducted Was Entirely Proper, As It Merely Explained Why The Level Of Detail Provided In The Complaint Regarding Lack Of Meaningful Review Was Sufficient At This Early Stage.**

Defendant contends that the Magistrate's reference to the fact that "the parties have not engaged in any discovery whatsoever" (R&R at 25) was improper because "[a]ny reference to or requirement that 'discovery' be had is inapplicable in ruling on a Rule 12(b)(6) motion and for this reason alone, the Report & Recommendation should be rejected." Objection at p. 6.

The Magistrate stated as follows:

> Plaintiff contends that here, even though there has been no discovery in this case, he has collected enough data to suggest that defendant engaged in "precisely the sort of mass robo-filing of thousands of boilerplate collection complaints by a law firm with a small number of lawyers" that the Miller III court "found problematic" (Pl.'s Mem. at 17). Specifically, plaintiff claims that the Malen firm, which is comprised of no more than three attorneys, filed over 13,000 complaints in 2009 and that Wolstein signed more than one-third (1/3) of the 10,904 complaints the firm filed in New York City Civil Courts in 2009, not including the 2,000 or more complaints filed outside of New York City.
>
> Given that the parties have not at this time engaged in discovery whatsoever, the Court respectfully recommends that plaintiff's FDCPA claims not be dismissed for failure to state a claim.

R&R at 25-26 (footnote, discussed infra) ommitted. See Amended Complaint at ¶¶ 22-31, 50, excerpted *infra*.

Defendant's argument misreads the Magistrate's comment which, in context, clearly suggests nothing more than the unremarkable observation that the relatively low level of detail required in order to survive a 12(b)(6) motion, even post-*Iqbal/Twombly*,[9] is dictated by the fact that the plaintiff has not yet had the benefit of discovery. Felix-Torres v. Graham, 521 F. Supp. 2d 157, 162 (N.D.N.Y 2007) (When a motion to dismiss is brought prior to an answer and discovery, a court is loath to grant the motion.); Singleton v. Chevron United States, Inc., 2011 U.S. Dist. LEXIS 79424 (E.D. La. July 21, 2011)(acknowledging that, "[a]t the pleading stage, a

---

[9] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

plaintiff is not expected, nor in most cases is he able, to articulate a claim's precise factual contours that may only later be elicited through discovery.); Buenaventura v. Champion Drywall, Inc., 2012 U.S. Dist. LEXIS 41390, 32-33 (D. Nev. Mar. 27, 2012)(motions to dismiss and other determinations made pre-discovery are decided based upon "a lenient standard" because the issues are "raised prior to discovery").

**III.** Defendant's Contention That *Miller* Applies Only To Dunning Letters And Not To Court Actions Is Incorrect; Defendant's Contention That A State Court Complaint Is "Not A Communication" Under The FDCPA, Is Both Incorrect And Improperly Raised For The First Time.

Defendant claims for the first time in its Objection that Plaintiff's meaningful review claim (brought, inter alia, pursuant to 1692e(3)) fails because *Miller III* was limited to dunning letters and allegations regarding lack of meaningful review of state court pleadings would thus constitute an unwarranted expansion of that court's holding. Objection at 2; 10.

Opposing counsel – who litigated *Miller I-III* through appeal and trial, over the course of some seven years, cannot plausibly limit *Miller* in this fashion. Indeed, *Miller III* explicitly states to the contrary, holding that a state court complaint filed without attorney review is misleading and violates the FDCPA:

> The credible evidence presented at trial has yielded no facts to demonstrate the exercise of independent attorney judgment in connection with Miller's file; indeed, this Court now concludes that, with respect to Miller's case, UCS's attorney review practices prior to both the issuance of the debt-collection letter signed by Slamowitz *and the commencement of legal action were inadequate for FDCPA purposes, thus rendering misleading these communications with Miller.*

*Miller III* at 95-6; See also, Id. at 100 (finding FDCPA liability where "[t]he volume of business at [the collection law firm], coupled with practices followed in the Miller matter, supports the conclusion that debt collection letters *and litigation documents* were regularly mass-produced at UCS by non-lawyers at the push of a button.")(emphasis added).

Magistrate Pollak was thus entirely correct in stating that "In *Miller III*, the court examined the volume of accounts handled by the collection firm in that case and whether there were procedures in place to allow for meaningful attorney review prior to the issuance of the state case." R&R at 25.

With regard to Defendant's more general contention that state court pleadings are not "communications" under the FDCPA (Objection at 2, 10) this contention is not properly before the Court because it was not raised before the Magistrate. FRCP 72(a)("A party may not assign as error a defect in the order not timely objected to."). For example, in Fisher v. O'Brien, 2010 U.S. Dist. LEXIS 31047, 2-4 (E.D.N.Y. Mar. 30, 2010), a defendant in an FDCPA case argued for the first time in its Objection to a Magistrate's Report that "plaintiff has no claim under the FDCPA because plaintiff's complaint should not be treated as an "initial communication" for purposes of 15 U.S.C. § 1692g(a)". Fisher rejected the attempt to raise this new argument, reviewing the caselaw and stating:

> In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851, 2006 U.S. Dist. LEXIS 61872, 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006).
>
> Defendants never argued before Magistrate Judge Bloom that plaintiff's complaint should fail as a matter of law because defendants were not required to comply with § 1692g. Their argument was rather that the plaintiff was not a consumer within the meaning of the FDCPA. Defendants may not now raise new arguments that the magistrate judge did not have an opportunity to consider when drafting her R&R. See, e.g., *Green v. City of New York*, No. 05 Civ. 429, 2010 U.S. Dist. LEXIS 2946, 2010 WL 148128, at *4, 14 (E.D.N.Y., Jan. 14, 2010) (declining to consider an entirely new argument not raised before the magistrate judge, and alternatively rejecting the argument as meritless); *Gonzalez v. Garvin*, No. 99 Civ. 11062, 2002 U.S. Dist. LEXIS 7069, 2002 WL 655164, at *2 (S.D.N.Y. Apr. 22, 2002) (dismissing a petitioner's objection "because it offer[ed] a new legal argument that was not presented in his original [habeas] petition [before the magistrate judge], nor in the accompanying Memorandum of Law"); *Abu-Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906, 1994 U.S. Dist. LEXIS 11470, 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (construing plaintiff's arguments in his objections as "untimely" because they were not raised

> before the magistrate judge, and refusing to consider them because consideration of such claims would "undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments").

Id. See, Green v. LaClair, 2012 U.S. Dist. LEXIS 42591, 6-9 (N.D.N.Y Mar. 28, 2012); See also, Walker v. Stinson, 2000 U.S. App. LEXIS 895 (2nd Cir. 2000).

Even if the Court were to consider Defendant's new argument, it fails. Indeed, Defendant's citations to cases from other jurisdictions issued prior to the amendment of the FDCPA in 2006, as well as Defendant's attempt to conflate FDCPA provisions governing "initial communications" versus "communications" (e.g. by editing the term "initial" out of all materials it excerpts) is at best incorrect and misleading and, at worst, sanctionable.

To understand just how off-target Defendant's discussion is, some background is necessary: The FDCPA is generally applicable to "communications," which the statute defines broadly as "the conveying of information regarding a debt directly or indirectly to any person through any medium". 1692a(2). The FDCPA has particular, additional requirements that apply only to *initial* communications. In 1996, one such requirement regarding initial communications, obligating the debt collector to disclose in its initial communication "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose", was amended to explicitly exclude "a formal pleading made in connection with a legal action." 15 USC 1692e(11) amended by Pub. L. No. 104-208 Sec. 2305, 110 Stat. 3009 (Sep. 30 1996). Prior to 2006, Courts were split on the issue of whether a state court collection complaint constituted an "*initial* communication" for purposes of another such requirement, found in 1692g(a), which requires that various disclosures (regarding the amount of the debt, the consumer's right to dispute the debt, etc.) be given to the consumer within 5 days of the debt collector's first contact (i.e. "initial communication") with a consumer.

In 2006, 1692g was amended to state that "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication *for purposes of*

*subsection(a) of this section.*" 1692g(d). Pub. L. No. 109-351, tit. VIII, Sec. 802(a)-(c), 120 Stat. 2006 (Oct. 13, 2006)(emphasis added).

In support of its contention that pleadings are not "communications", Defendant relies upon a single pre-2006 case from the 11th Circuit addressing whether or not a pleading was an *initial* communication for purposes of 1692g. Specifically, in Vega v. McKay, 351 F.3d 1334, 1337 (11th Cir. 2003), the defendant argued that "because its complaint package did not constitute an 'initial communication' necessitating a notice of debt under 15 U.S.C. § 1692g, the sufficiency of the FDCPA notice contained in the package was irrelevant." The Eleventh Circuit agreed, holding that "the district court did not err by finding that [the state court] complaint and summons package did not constitute an 'initial communication' within the meaning of the FDCPA." Id.

The citation to McKay is disingenuous, as the Second Circuit explicitly cited and rejected the 11th Circuit's approach in Goldman v. Cohen, 445 F.3d 152, 155-157 (2d Cir. N.Y. 2006), decided just prior to the 2006 Amendment. In Goldman, the Second Circuit held that pleadings were not only communications as defined by 1692a, but also initial communications subject to the requirements of 1692g:

> Upon our review of the record, we hold that a consumer debt collector's initiation of a lawsuit in state court seeking recovery of unpaid consumer debts is an "initial communication" within the meaning of the FDCPA. Our conclusion is based on several considerations. First, the plain language of the FDCPA broadly defines "[t]he term 'communication' [as] the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2) (emphasis added). "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce [**7] a result demonstrably at odds with the intentions of its drafters." United States v. Ron Pair Enters., Inc. 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (internal quotation marks and brackets omitted). Here, the plain meaning of the FDCPA is entirely consistent with Congress's goal of preventing what it characterized as "serious and widespread" debt collection abuses. See *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) (citing S. Rep. No. 95-382, 95th Cong., 1st Sess. 1977, reprinted in 1977 U.S.C.C.A.N. 1695, 1697). Indeed, any construction of the FDCPA that exempted state legal proceedings from the definition of "initial communication" would permit debt collectors to avoid the

> validation notice requirements of the statute simply by collecting debts through the medium of litigation.
>
> Second, the Supreme Court held in *Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995), that the term "debt collector," as defined in the FDCPA, 15 U.S.C. § 1692a(6), encompasses "lawyer[s] who regularly tr[y] to obtain payment of consumer debts through legal proceedings." *Id.* at 294 (emphasis added). The Court thus concluded that "the [FDCPA] applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Id. at 299 (emphasis added). Although Congress has since amended another section of the FDCPA to clarify that certain disclosure requirements (other than those specified in § 1692g(a)) do not apply "to a formal legal pleading made in connection with a legal action." 15 U.S.C. § 1692e(11), n3 we agree with the District Court's assessment that HN8"[t]his section's express exclusion of a legal pleading from the scope of the term 'communication' implies the drafters' understanding that the term 'communication' would otherwise include legal pleadings," Goldman, 2004 U.S. Dist. LEXIS 25517, at *9. See also Alger v. Ganick, O'Brien, & Sarin, 35 F. Supp. 2d 148, 158 n.18 (D. Mass 1999) (noting that Congress's 1996 amendment to § 1692e(11) "evidences an intent and an awareness that the FDCPA otherwise encompasses litigation activity"). . . .
> For the foregoing reasons, we hold that the District Court did not err in concluding that Cohen's initiation of a lawsuit in state court seeking recovery of back rent and attorneys' fees was an "initial communication" within the meaning of § 1692g(a). . . .But see Vega v. McKay, 351 F.3d 1334 (11th Cir. 2003) (holding that initiation of a lawsuit does not constitute an "initial communication"). n5

Goldman v. Cohen, 445 F.3d 152, 155-157 (2d Cir. N.Y. 2006)(footnotes omitted).

Goldman is no longer the law with regard to the requirements specific to initial communications under 1692g, due to Congress's amendment of the FDCPA.[10] Goldman remains the law of the Second Circuit, however, for the more general proposition that the state court pleadings are "communications" which can, if false or deceptive, subject a collection attorney to liability. Indeed, Goldman holds that an FDCPA claim may be based state court pleadings where a consumer relies on "those portions of the statute that mention 'communication' without expressly excluding legal pleadings." Id. at 156.

[10] Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 136 (2d Cir. Conn. 2010)("[T]he 2006 amendments to the FDCPA superseded Goldman's holding that the institution of a lawsuit constitutes an initial communication, see § 1692g(d)")

Following Goldman, other Courts have agreed that the explicit legislative carve-outs exempting pleadings from certain requirement applicable to initial communications only strengthens Congress's intent to include pleadings in areas not so exempted. For example, in Sayyed v. Wolpoff, 485 F.3d 226 (4th Cir. 2007), the Fourth Circuit analyzed the issue, noting that the specific exemption for pleadings found in 1692e(11)(exempting pleadings from the requirement that "initial communications" include a statement "that the debt collector is attempting to collect a debt", etc.) only strengthened the argument that pleadings were, absent a specific exception, correctly viewed as "communications" and citing Goldberg and Heintz as support for its holding that a state court complaint was a communication under the FDCPA, albeit not an initial communication.

> After *Heintz*, Congress passed an amendment to the statute that provides further confirmation that the FDCPA applies to conduct like that at issue here. It amended § 1692e(11), which prohibits communications that fail to disclose that they are from a debt collector, to state that the provision "shall not apply to a formal pleading made in connection with a legal action." 15 U.S.C. § 1692e(11), as amended Pub. L. 104-208, § 2305(a), 110 Stat. 3009, 3009-425 (1996). This provision expressly exempts formal pleadings from a sole, particularized requirement of the FDCPA: the requirement that all communications state that they come from a debt collector.
>
> If W&A were correct that conduct in the course of litigation, or even formal pleadings more specifically, were entirely exempt from the FDCPA, § 1692e(11)'s express exemption of formal pleadings would be unnecessary. "[C]ourts should disfavor interpretations of statutes that render language superfluous." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). The amendment by its terms in fact suggests that all litigation activities, including formal pleadings, are subject to the FDCPA, except to the limited extent that Congress exempted formal pleadings from the particular requirements of § 1692e(11). Furthermore, because Congress is presumed to act with awareness of a judicial interpretation of a statute, the fact that the amendment occurred after Heintz further indicates that Congress was aware of the Court's interpretation of the FDCPA and accepted it, except for the narrow exemption it provided for formal pleadings from the requirements of § 1692e(11). See, e.g., *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 381-82, 102 S. Ct. 1825, 72 L. Ed. 2d 182 (1982) (Congress presumed to be aware of prior judicial interpretation in amending statute). Thus, under multiple precepts of statutory interpretation, Congress' amendment of § 1692e(11) provides clear evidence that litigation activity is subject to the FDCPA, except to

> the limited extent that Congress exempted formal pleadings from the requirements of that particular subsection.

Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 231 (4th Cir. Md. 2007).

In Donohue v. Quick Collect, Inc., 592 F.3d 1027, 2010 U.S. App. LEXIS 772 (9th Cir. Wash. 2010), the Ninth Circuit likewise held that "a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f." The court noted:

> The Supreme Court in *Heintz* stated clearly that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation.". *To limit the litigation activities that may form the basis of FDCPA liability to exclude complaints served personally on consumers to facilitate debt collection, the very act that formally commences such a litigation, would require a nonsensical narrowing of the common understanding of the word "litigation" that we decline to adopt.*

Id. at 1032 (emphasis added).

Finally, Defendant's contention that 1692e(11) stands for the proposition that "the term 'communication' 'shall not apply to a formal pleading made in connection with a legal action'") Objection at 10, relies upon selective and intentionally misleading redaction designed to obscure both the distinction between initial communications and other communications, and the fact that, by its plain terms, the pleading exemption found in 1692e(11) applies only to the requirements found in that specific paragraph of the statute. 1692e(11) actually reads as follows:

> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

Such attempts to mislead are simply not within the bounds of zealous advocacy.

**IV.** The R&R Did Not Improperly Rely Upon "Sources Not Part Of The Record" When It Considered An *Amicus* Brief Filed In *King* By The Civil Court And Consumer Law Committees Of The New York City Bar.

Defendant contends that the R&R should be reversed based upon the Magistrate's reference to an amicus brief filed jointly by the Civil Court and Consumer Committees of the New York City Bar, claiming that the R&R thus "brought into the decision facts beyond the pleadings and from sources not part of the record or otherwise contained within the record". Objection at 2. This contention, like so many others in Defendant's most recent filing, is frivolous.

In its memorandum in support of the motion to dismiss, opposing counsel cited a legislative report issued by these two committees as supposed "evidence" that King constituted a reversal of existing law. In the report, the Committees mentioned that "[a]s a result of" King, "many of the debt collection lawsuits filed in New York are already subject to a three-year statute of limitations." Def's. MOL In Support of Motion To Dismiss at 7-8. The R&R expressed doubt that this one phrase accurately captured the views of the Committees, noting that the Committees' amicus brief in King, explicitly argued the contrary.

> The Court is not persuaded by defendant's reliance on a comment by the Consumer Affairs and Civil Court Committees of the New York City Bar, to the effect that "as a result" of King, the limitations period in certain cases is three years, not six, particularly in light of the fact that the two Committees filed amicus briefs in King, noting the failure of the Third Department and the defendant to consider CPLR CPLR § 202.

R&R at 15, n.7.

In short, Defendant attempted to rely on the supposed position of these bar committees in a Legislative Report as *legal authority* for its argument that King changed the law; Plaintiff proffered an amicus submission from King that indicated that Defendant was misstating the Committees' position, and the Magistrate found Plaintiff's argument persuasive on this point.

There is no authority or even logic to the suggestion that the Magistrate committed error in this regard.[11]

**V. The R&R Did Not "Improperly Expand[] The Allegations In The Complaint" By Using The Term "Robosigning" Or By Including A Simple Mathematical Calculation Based On The Numerical Data Provided In The Complaint.**

Defendant takes issue with the Magistrate's use of the term "robosigning", claiming that the Magistrate's use of the term constitutes an example of the Court having "improperly expand[ing] the allegations in the Complaint." Objection at 3, 6.

The R&R stated as follows:

> Defendant contends that plaintiff's allegation that Mr. Wolstein knowingly made a false representation that he conducted a meaningful review and made reasonable inquiry into the Diaz complaint "does not demonstrate a sufficient intent to deceive the court or a party, nor do they demonstrate a sufficiently chronic and extreme pattern of legal delinquency.
>
> However, as plaintiff notes, unlike the allegations in the cases cited by defendant, which relate to isolated instances of misconduct, plaintiff's claim is based on an alleged broad pattern of deceptive filings that plaintiff claims were " robosigned" without meaningful review and which were time-barred on their face. (See Am. Compl. 22, 31, 50).

R&R at 29.

Although the term "robosigned" did not appear in the complaint, the phenomenon of robosigning was clearly described. Specifically, "robosigning" refers to an individual signing hundreds or even thousands of legal documents without reviewing and confirming the information contained therein, i.e. "like a robot".[12]

---

[11] The R&R also referred to the Committees' Report in its discussion of the Chevron balancing test, noting that Defendant's citation to the statistics in the report for the proposition that a ruling in favor of Plaintiff would have "catastrophic" effect on the collection industry was undercut by other portions of the Report which described common debt buyer practices, including suing on time-barred debt as having catastrophic effects on the low and moderate income consumers. R&R at 16-17. Having introduced the report in support of its argument, it appears that Defendant now blames the Magistrate for having actually read it.

[12] The term has been most widely used in the foreclosure litigation context. See, e.g. HSBC Bank USA, N.A. v Abass, 2012 N.Y. Misc. LEXIS 1228 (N.Y. Sup. Ct. Mar. 20, 2012)("'Robosigning' refers to the fraudulent practice wherein an affiant signs, in a short time frame, numerous affidavits and legal documents asserting the lender's right

The Complaint more than adequately described this process in relation to Defendant, alleging, inter alia:

- Upon information and belief, PRA and Malen's filing of time-barred debt in the State Action against Diaz, far from being an isolated instance, is part of a policy and practice pursuant to which Defendants intentionally file time-barred claims knowing that the vast majority of claims filed will result in default judgments or will be contested by unsophisticated pro-se consumers who are unaware of CPLR § 202 and its impact upon the statute of limitations. (¶22)

- All pleadings in the state action were signed by Jeffrey Wolstein, Esq. of Malen. (¶23)

- Upon information and belief, this action was one of approximately 10,904 consumer collection actions filed by Malen in 2009 in the New York City's Civil Courts. (¶24)

- Mr. Wolstein's name is one of only three Malen attorneys listed on the signature block of the Complaint. (¶25)

- Upon information and belief, Mr. Wolstein signed thousands of Complaints filed in the New York City Civil Courts in 2009. Indeed, upon information and belief, Mr. Wolstein signed significantly more than 1/3 of the approximately 10,904 Complaints filed in New York City's Civil Courts by Malen in 2009. (¶26)

- In addition to its prodigious filings in the New York City Civil Courts, Malen filed at least approximately 2000 additional Complaints in other Civil Courts (and their analogs) throughout New York State. (¶27)

---

to foreclose, despite having no personal knowledge of the facts contained in them".); U.S. Bank, N.A. v Ramjit, 33 Misc. 3d 1232A (N.Y. Sup. Ct. 2011)(discussing the Office of Court Administration's recent heightening of requirements for attorney review of pleadings in order to combat "robosigning"; Ohio v. GMAC Mortg., LLC, 760 F. Supp. 2d 741, 743 (N.D. Ohio 2011)("Several national banks have been accused of using robosigners -- loosely defined as bank employees tasked with rapidly signing large numbers of affidavits and legal documents asserting the bank's right to foreclose without the employees actually checking the documents to ensure their accuracy -- to fraudulently foreclose on homeowners during the recent financial downturn."). The term is also now commonly applied in the consumer credit context, more generally, including with regard to lawsuits seeking payment on allegedly defaulted credit cards. See, e.g. Holland, THE ONE HUNDRED BILLION DOLLAR PROBLEM IN SMALL CLAIMS COURT: ROBO-SIGNING AND LACK OF PROOF IN DEBT BUYER CASES, 6 Journal of Business and Technology Law, No. 2, 2011, p. 110-113; "Former Employees Allege JP Morgan Chase Robo-Signed Credit Card Documents, Destroyed Borrower Records." available at http://thinkprogress.org/economy/2012/03/13/443466/chase-robo-signing-credit-cards/?mobile=nc

- Upon information and belief, Mr. Wolstein signed significantly more than 1/3 of these approximately 2,000 or more Complaints filed in New York State Civil Courts outside of New York City. (¶28)

- Indeed, because these figures do not include any filings in Nassau (state) District Court, the state court jurisdiction in which Malen's main office is located, nor any filings in the many Courts whose dockets are not listed on ECOURTS, the actual number of consumer collection filings by Malen in 2009 was, on information and belief, significantly higher than 13,000. (¶29)

- Upon information and belief, Mr. Wolstein did not meaningfully review the Complaint filed against Mr. Diaz, and the facts alleged therein, prior to signing same and causing it to be filed with the Kings County Civil Court. (¶30)

- Upon information and belief, Mr. Wolstein's failure to review Mr. Diaz' Complaint prior to filing it, far from an anomaly, is part of the business plan developed by Defendants, who have found that meaningful pre-filing review is not as profitable as submission of pleadings without review, in light of the fact that the overwhelming majority of consumer collection actions are won on default or against unsophisticated pro-se litigants who are, as a practical matter, incapable of meaningfully challenging even the most deficient, boilerplate consumer collection pleading. (¶31)

- . . . each of the four unfair and deceptive practices listed above in Paragraph 42 (a) through (d) [of the Complaint] is a recurring practice that Defendants have taken, not just against Mr. Diaz, but against large numbers of consumers as part of a policy and practice that is designed and has the effect of increasing Defendants' profits by increasing the number of consumer accounts handled, lowering the cost of handling each account, and increasing Defendants' success rate with regard to consumer accounts. (¶50)

The Magistrate's use of the term "robosigning" as shorthand for Defendant's alleged policy and practice of mass filing of tens of thousands of legal pleadings without meaningful review, clearly set forth in the Amended Complaint, is unremarkable.

Moreover, there is no legal basis (and Defendant cites no support) for the absurd proposition that Magistrate Pollak committed error when, in a footnote, she divided the number of

complaints Plaintiff alleged that Mr. Wolstein filed in 2009 by the number of days in the year and noted that this would constitute 12 complaints per day, 356 days per year.

Specifically, the footnote states:

> If correct, plaintiff's figures suggest that Mr. Wolstein reviewed and filed 12 complaints a day, assuming he worked 356 days a year. If so, it is difficult to understand how he then was able to undertake the work necessary to pursue these claims in court, file motions, and collect on the numerous default judgments that were awarded.

R&R at 25, n.8

Even assuming that Magistrate relied upon the observation contained in this footnote, this would merely be a routine example of the well established principle that a Court is to rely not only on the allegations in the complaint but "all reasonable inferences" that can be drawn from the Complaint. Papelino v. Albany College of Pharm. of Union Univ., 633 F.3d 81, 85 (2d Cir. N.Y. 2011); Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106 (2d Cir. N.Y. 2010). Surely, long division is, at most, a reasonable inference. Defendant is, again, grasping at straws.

**VI.** Defendant's Other Arguments Regarding Application of Judiciary Law 487 Lack Merit: The Magistrate Correctly Found That The Complaint Alleges Intentional Conduct And A Deceptive Pattern And Practice.

Defendant argues that the R&R fails to acknowledge that "Attorney Wolstein was operating under the state of the law at the time the State Court Action was filed." Plaintiff cannot, as a matter of law, show "intentional" misconduct as required by Judiciary Law 487. Objection at 14, 3.

Defendant's reference to the "state of the law at the time" is nothing more than a recycling of Defendant's failed attempt to argue that King altered the law regarding CPLR § 202, discussed *Supra*, at I.

Moreover, to the extent that Defendant is attempting to argue that although Attorney Wolstein analyzed the law incorrectly, his analysis was in good faith (and even assuming

arguendo, the viability of a defense of legal mistake in a Judiciary Law claim), Defendant has raised an issue that implicates issues well outside the scope of any motion to dismiss, e.g. whether Attorney Wolstein researched or considered this issue, at all; the nature of that research and analysis; whether he filed the claim against Mr. Diaz despite having concluded that the claim was time-barred, etc. Chambers v. Office of Chief Counsel, 494 F.3d 274, 278 (2d Cir. 2007)("The petitioner's knowledge at the time in question is a question of fact."); Locurto v. Giuliani, 447 F.3d 159, 177 n.6 (2d Cir. 2006) ("[T]he defendants' intent is a factual question . . . ."); John's Insulation, Inc. v. Siska Constr. Co., 774 F. Supp. 156 (S.D.N.Y. 1991)("intent is a question of fact not appropriately addressed on a motion to dismiss").

Finally, Defendant contends that Plaintiff's allegations regarding filing of the state court action without meaningful review cannot form the basis of a Judiciary Law claim because there is "no allegation of a mass 'scheme' in the plaintiff's complaint." Objection at 14.

The Magistrate correctly and explicitly put this argument to rest:

> [U]nlike the allegations in the cases cited by defendant, which relate to isolated instances of misconduct, plaintiff's claim is based on an alleged broad pattern of deceptive filings that plaintiff claims were robosigned without meaningful review and which were time-barred on their face. (See Am. Compl. Paras 22, 31, 50).

R&R at 29 (quotation marks omitted). [13]

In short, the allegations regarding the volume of Defendant's filings and the pattern and practice of misconduct were properly recognized by the Magistrate (and excerpted *supra* at V). Defendant's attempt find fault with the R&R's citation to Sykes v. Mel Harris & Assocs, LLC,

[13] In addition to the paragraphs correctly cited by Magistrate Pollak (and excerpted supra), which were, of course, incorporated by reference into Plaintiff's Judiciary Law claim, the Judiciary Law section of the amended complaint contained a separate allegation that "Malen's false representations" were "part of a larger, recurring policy and practice that is designed and has the effect of increasing Malen's profits by increasing the number of consumer accounts handled, and lowering the cost of handling each account." Amended Complaint at ¶ 61.

2010 WL 5395712 (SDNY 2010) – which also dealt with allegations of the high-volume filing of false court documents as part of a pattern and practice designed to increase a debt collector's profitability, is thus unavailing. R&R at 29; Objection at 13-14.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Magistrate's Report and Recommendation be adopted in its entirety.

Respectfully,

Daniel A. Schlanger, (DS-9330)
Schlanger & Schlanger, LPP
Attorneys for Plaintiff
343 Manville Road
Pleasantville, NY 10570

To:

Tom Leghorn, Esq.
Jill Alward, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639